MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By:    MATTHEW L. SCHWARTZ
          JOSEPH N. CORDARO
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-1945
Fax: (212) 637-2750
E-mail:  matthew.schwartz@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:

DELPHI CORPORATION, *et al.*,

Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DELPHI CORPORATION, DELPHI
AUTOMOTIVE SYSTEMS LLC, and DELPHI
AUTOMOTIVE SYSTEMS SERVICES LLC,

Plaintiffs,

- against -

THE UNITED STATES OF AMERICA,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. _____

Bankr. Case No. 05-44481 (RDD)
(Jointly Administered)

Adversary Proceeding
No. 08-01038

### DECLARATION OF MATTHEW L. SCHWARTZ

MATTHEW L. SCHWARTZ, pursuant to 28 U.S.C. § 1746, declares the

following under penalty of perjury:

1.    I am an Assistant United States Attorney in the office of Michael J.

Garcia, United States Attorney for the Southern District of New York, attorney for

defendant the United States of America in the above-captioned action.  I have been assigned to defend this matter, and am familiar with the proceedings herein.  I make this declaration in support of the Government's Motion For an Order Withdrawing the Reference.

2.      Attached hereto as Exhibit A is a true and correct copy of the summons and complaint in this adversary proceeding.

3.      Attached hereto as Exhibit B is a true and correct copy of the Government's Answer in this case.

4.      Attached hereto as Exhibit C is a true and correct copy of the Complaint in *Ford Motor Company v. United States*, No. 07-658-T (Ct. Fed. Claims filed Sept. 10, 2007).

5.      Attached hereto as Exhibit D are true and correct copies of the plaintiffs' first set of document requests and first interrogatories in the *Ford* action.

6.      Attached hereto as Exhibit E is a true and correct copy of the Complaint in *General Motors Corp. and Saturn Corp. v. United States*, No. 07-CV-14464-CAR-SDP (E.D. Mich. filed Oct. 19, 2007).

7.      Attached hereto as Exhibit F is a true and correct copy of the plaintiffs' first set of document requests in the *GM/Saturn* action.

8.      Attached hereto as Exhibit G is a true and correct copy of a letter, dated April 13, 2006, from Joan D. McClean of the IRS's Disclosure Office in response to a Freedom of Information Act request from Delphi's lawyers at Baker & McKenzie LLP for "background file documents for Revenue Ruling 2004-109."

2

Dated:     New York, New York
           May 13, 2008

          /s/ Matthew L. Schwartz

          MATTHEW L. SCHWARTZ
          Assistant United States Attorney

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

In re: Delphi Corporation

Bankruptcy Case No.: 05−44481−rdd

Delphi Corporation

Plaintiff,

−against−

United States Of America

Adversary Proceeding No. 08−01038−rdd

Defendant

## SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
## IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

| Address of Clerk: | |
|---|---|
| | **Clerk of the Court** <br> **United States Bankruptcy Court** <br> **Southern District of New York** <br> **One Bowling Green** <br> **New York, NY 10004−1408** |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of <br> Plaintiff's Attorney: | |
|---|---|
| | **John Wm. Butler Jr.** <br> **Skadden Arps Slate Meagher & Flom LLP** <br> **333 West Wacker Drive** <br> **Chicago, IL 60606−1285** |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| | |
|---|---|
| United States Bankruptcy Court <br> Southern District of New York <br> One Bowling Green <br> New York, NY 10004−1408 | Room: Courtroom 610 (RDD), One Bowling Green, New York, NY 10004−1408 <br><br> Date and Time: 3/11/08 10:00 AM |

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

Dated: 1/24/08

Kathleen Farrell−Willoughby

*Clerk of the Court*

By: /s/  Venice Leggett

*Deputy Clerk*



0544481080118000000000055

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

      – and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, D.C.  20006-4078
 (202) 452-7080
Mary B. Hevener
Thomas M. Cryan, Jr.

Attorneys for Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Automotive Systems Services LLC, Plaintiffs

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -  -  x

|  |  |
|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - -  - x

DELPHI CORPORATION,
DELPHI AUTOMOTIVE SYSTEMS LLC,
AND DELPHI AUTOMOTIVE SYSTEMS
SERVICES LLC,

        Plaintiffs,

    - against -

UNITED STATES OF AMERICA,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - -     x

:
:
:
:
:
:
:
:
::

Adversary Proceeding
No. 07-_____



<u>COMPLAINT TO RECOVER PROPERTY OF ESTATES</u>

Delphi Corporation , Delphi Automotive Systems LLC, and Delphi Automotive Systems Services LLC , debtors-in-possession, the plaintiffs herein (together, the "Plaintiffs"), by their undersigned counsel, as and for their complaint (the "Complaint) against the United States of America (the "Defendant"), allege the following on knowledge as to themselves and their own acts and otherwise upon information and belief:

<u>PRELIMINARY STATEMENT</u>

1.    Plaintiffs bring this adversary proceeding (the "Adversary Proceeding") under sections 105, 505, 541, and 542 of the Bankruptcy Code, Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), for an order and judgment of this Court directing the return of $26,058,130 in overpayments of Federal Insurance Contributions Act taxes ("FICA" or "employment taxes") and related interest, or such amount as is legally recoverable.  The employment taxes relate to payments made by Plaintiffs to certain union members upon ratification of collective bargaining agreements in 1999 and 2003.

<u>PARTIES</u>

2.    Plaintiff Delphi Corporation ("Delphi") (E.I.N. 38-3430473) is a Delaware corporation with a principal place of business in Troy, Michigan.

3.    Delco Electronics Corporation (E.I.N. 38-2633811) was a subsidiary of Delphi, with its principal place of business in Troy, Michigan.  Delco Electronics Corporation was converted to Delco Electronics LLC (together with Delco Electronics Corporation, "Delco") as of December 31, 2003 and was dissolved on September 30, 2005, with its assets and liabilities

transferring to its single member, Plaintiff Delphi Automotive Systems LLC, an entity

disregarded from Delphi Corporation for U.S. federal tax purposes.

       4.    Plaintiff Delphi Automotive Systems Services LLC ("DASS")

(E.I.N. 38-3568834) is a limited liability company whose members are all wholly owned by

Delphi, is a partnership for U.S. federal tax purposes, and has its principal place of business in

Troy, Michigan.

       5.    Defendant is the United States of America.

JURISDICTION AND VENUE

       6.    This Court has jurisdiction over this Adversary Proceeding in accordance

with 28 U.S.C. §§ 157(b)(1) and 1334(b) and 26 U.S.C.§§ 6532 and 7422.  This Adversary

Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).  To the extent the Court determines

that any claim asserted herein is not core, Plaintiffs hereby consent to the entry of a final order

and judgment by the Court.

       7.    Venue is proper under 28 U.S.C. §§ 1408 and 1409.

       8.    The statutory predicates for the relief requested herein are sections 105,

505, 541, and 542 of the Bankruptcy Code and Bankruptcy Rule 7001(1).

STATEMENT OF FACTS

<u>The Chapter 11 Cases</u>

       9.    On October 8 and 14, 2005, Delphi and other above-captioned debtors

filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The

Debtors continue to operate their businesses and manage their properties as debtors-in-

possession under sections 1107(a) and 1108 of the Bankruptcy Code.  This Court has ordered

joint administration of these cases.

3

10.    No trustee or examiner has been appointed in these cases.  On October 17,
2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official
committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official
committee of equity holders.

11.    On December 10, 2007, the Debtors filed the First Amended Joint Plan Of
Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In
Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement With
Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors
And Debtors-In Possession (Docket No. 11388) (the "Disclosure Statement") and this Court
entered an order approving the adequacy of the Disclosure Statement and granting a related
solicitation procedures motion (Docket No. 11389).  No order confirming the Plan has yet been
entered by this Court.

Plaintiffs' Overpayment Of FICA Taxes

Revenue Ruling 58-145

12.    Nearly 50 years ago, the Internal Revenue Service ("IRS") issued a ruling
that an employer's payment made to an individual solely for signing an employment contract,
and not conditioned on the performance of future services or continued employment, did not
constitute "wages."  Rev. Rul. 58-145, 1958-1 C.B. 360.  The IRS's rationale was that such a
payment did not constitute compensation for the individual's services rendered to the employer,
but instead constituted a payment for the promise made by the individual to be bound by the
contract.

13.    Revenue rulings such as Revenue Ruling 58-145 "are published to provide
precedents to be used in the disposition of other cases, and may be cited and relied upon for that

4

purpose." Rev. Proc. 89-14 at § 7.01(4). Taxpayers such as Plaintiffs were entitled to rely on the IRS's published position in Revenue Ruling 58-145.

<u>The 1999 Agreement</u>

14.    On September 16, 1999, representatives of the automaker industry and the UAW reached a tentative three-year national labor agreement (the "1999 Agreement"). The 1999 Agreement provided that if the 1999 Agreement was ratified by the union membership, Delphi and Delco would make an immediate lump-sum payment of $1,350 (the "1999 CBA Payments") to each union member who was classified in a specified status with Delphi or Delco as of the effective date of the 1999 Agreement, i.e., active status, protected status, temporary layoff status, or various forms of short-term leave of absence, including sick leave and vacation (a "specified status").

15.    Under the terms of the 1999 Agreement, Delphi and Delco made the lump-sum payment to each union member with such a specified status without regard to (a) whether the union member voted to ratify the 1999 Agreement (<u>i.e.,</u> payment was made to those who voted for ratification, those who voted against ratification, and those who did not vote at all), (b) how long or at what rate of pay the union member had performed services for the automaker, and (c) whether the union member continued in the future to perform services for Delphi and Delco (<u>i.e.</u>, a union member would receive the lump-sum payment if he or she were on short-term disability on the effective date of the 1999 Agreement and thereafter terminated employment with Delphi or Delco without performing any further services). The only conditions for a union member to receive the payment from Delphi or Delco were that (x) the 1999 Agreement be ratified and (y) the union member be classified as having one of the specified statuses with Delphi or Delco as of the effective date of the 1999 Agreement.

16.    The 1999 Agreement was ratified by the union membership on October 10, 1999.

17.    In accordance with the terms of the 1999 Agreement, as ratified, Delphi and Delco paid $1,350 to each union member with one of the specified statuses in the fourth quarter of 1999.

The 2003 Agreement

18.    On September 18, 2003, representatives of the automaker industry and the UAW reached a tentative three-year national labor agreement (the "2003 Agreement"). The 2003 Agreement provided that if the 2003 Agreement was ratified by the union membership, the Plaintiffs would make a lump-sum payment of $3,000 (the "2003 CBA Payments") to each union member who was classified in one of the specified statuses with the Plaintiffs as of the effective date of the 2003 Agreement.

19.    Under the terms of the 2003 Agreement, the Plaintiffs made the lump-sum payment to each union member with a specified status without regard to (a) whether the union member voted to ratify the 2003 Agreement (i.e., it was paid to those who voted for the ratification, those who voted against ratification, and those who did not vote at all), (b) how long or at what rate of pay the union member had performed services for the automaker, and (c) whether the union member continued in the future to perform services for the Plaintiffs (i.e., a union member would receive the lump-sum payment if he or she were on short-term disability on the effective date of the 2003 Agreement and thereafter terminated employment with Delphi and Delco without performing any further services). The only conditions for a union member to receive the payment from Plaintiffs were that (x) the 2003 Agreement be ratified and (y) the union member be classified as having one of the specified statuses with the Plaintiffs as of the effective date of the 2003 Agreement.

6

20.    The 2003 Agreement was ratified by the union membership on October 5, 2003.

21.    In accordance with the terms of the 2003 Agreement, as ratified, the Plaintiffs paid $3,000 to each union member having one of the specified statuses in the fourth quarter of 2003.

### Plaintiffs' Withholding And Payment Of FICA Taxes

22.    The Plaintiffs did not make the 1999 CBA Payments or the 2003 CBA Payments (collectively, the "CBA Payments") to union members for the performance of employment services. The union members were paid for their collective act as union members (and not as employees) in ratifying the 1999 Agreement and the 2003 Agreement, and not for any services performed or to be performed for the Plaintiffs as employees. Consistent with Revenue Ruling 58-145, the CBA Payments were not conditioned on continued employment with the Plaintiffs or the performance of future services for them. The ratification of the respective agreements was the only requirement for payment.

23.    Because the Plaintiffs faced potential secondary liability for any unpaid FICA tax liability owed by their employees and for which the Plaintiffs might have a duty to withhold, the Plaintiffs withheld and paid FICA taxes with respect to the CBA Payments.

### The 1999 Refund Claims

24.    On April 11, 2003, Delphi and Delco filed refund claims (the "1999 Refund Claims") for the FICA taxes paid with respect to the 1999 CBA Payments. The 1999 Refund Claims explained that Delphi and Delco did not make the 1999 CBA Payments for the performance of employment services by the union members and that the historic guidance published by the IRS in Revenue Ruling 58-145 established that such payments were not subject to employment taxes.

7

25.    While the 1999 Refund Claims were pending before the IRS, and with full knowledge of Delphi's and Delco's 1999 Refund Claims, the IRS revoked its longstanding Revenue Ruling 58-145.

26.    The revocation of Revenue Ruling 58-145 was announced in Revenue Ruling 2004-109, 2004-50 I.R.C. 958, published on November 23, 2004, in which the IRS set forth a previously unstated principle for analyzing the wage treatment of a "ratifying bonus pursuant to collective bargaining agreement."

27.    In Revenue Ruling 58-145, whether or not the payment was in respect of a new employee or a new contract, the only important consideration was whether the payment was "predicated on continued employment."  If not, the amount was not treated as wages and was therefore not subject to FICA withholding.  In contrast, the IRS took the unprecedented position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship."

28.    In Revenue Ruling 2004-109 (without the benefit of public notice and comment), the IRS announced a position that is contrary to both the statute and Treasury regulations which provide that for amounts an employer pays its employees to be subject to FICA taxes, the amounts must be wages paid for the performance of services as an employee. IRC § 3121(a)-(b); Treas. Regs. § 31.3121(a)-1(b).

29.    Revenue Ruling 2004-109 provides that the IRS will not apply the position taken in that ruling to any signing bonus, sign-on fee, or similar amount paid to an employee in connection with the employee's <u>initial</u> employment with the employer under a sign-on agreement nor other contract entered into before January 12, 2005, if the amount is paid

8

under facts and circumstances that are substantially the same as those in Revenue Ruling 58-145. By contrast, the IRS applies Revenue Ruling 2004-109 on a retroactive basis to any signing bonus, sign-on fee, or similar amount paid to an employee that is not incurred in connection with the employee's initial employment.

30.    On March 28, 2005, the Examiner auditing the 1999 Refund Claims proposed to disallow them.

31.    On May 19, 2005, Delphi and Delco filed a protest seeking administrative appeal of the Examiner's proposed denial of the Refund Claims filed in 2003 on the basis that the 1999 CBA Payments were not made for the performance of employment services by the union members and that the IRS's historical guidance in Revenue Ruling 58-145 provided that such payments were not subject to employment taxes.

32.    On May 30, 2006, the IRS disallowed in full Delphi's and Delco's 1999 Refund Claims for the FICA taxes paid with respect to the 1999 CBA Payments.

The 2003 Refund Claims

33.    On March 15, 2007, Delphi and Delco filed refund claims for the FICA taxes paid with respect to the 2003 CBA Payments. On April 16, 2007, DASS filed a refund claim for the FICA taxes paid with respect to the 2003 CBA Payments. (The March 15, 2007 refund claims and the April 16, 2007 refund claims are referred to herein collectively as the "2003 Refund Claims.") The 2003 Refund Claims explained that Delphi and Delco did not make the 2003 CBA Payments for the performance of employment services by the union members and that the historic guidance published by the IRS in Revenue Ruling 58-145 established that such payments were not subject to employment taxes.

34.     On November 6, 2007, the IRS disallowed in full Delco's and DASS's 2003 Refund Claims.  More than six months have passed since Delphi filed its 2003 Refund Claims and the IRS has failed to act on it.

COUNT I

(Delphi: Fourth Quarter 1999)

35.     Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

36.     On or before January 31, 2000, Delphi timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 1999.

37.     Delphi timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 1999.

38.     On April 11, 2003, Delphi filed a Form 843 in which it requested a refund of FICA taxes of $153,000, "or such other amount as finally determined," for the calendar quarter ending December 31, 1999.

39.     Delphi's 1999 CBA Payments do not constitute wages under FICA.

40.     Delphi's 1999 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

41.     The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

10

42.     The IRS abused its discretion in Revenue Ruling 2004-109 when determining that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

43.     Delphi has overpaid FICA taxes for the calendar quarter ending December 31, 1999 in connection with the 1999 CBA Payments, in the amount of $8,682,980. Delphi is entitled to a refund and abatement of those taxes and any penalties or interest as allowed by law.

44.     The IRS erroneously failed to allow Delphi's claim for a refund and failed to refund the overpayment of tax in the amount of $8,682,980 "or such other amount as finally determined."

## COUNT II
### (Delco: Fourth Quarter 1999)

45.     Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

46.     On or before January 31, 2000, Delco timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 1999.

47.     Delco timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 1999.

48.     On April 11, 2003, Delco filed a Form 843 in which it requested a refund of FICA taxes of $153,000, "or such other amount as finally determined," for the calendar quarter ending December 31, 1999.

49.     Delco's 1999 CBA Payments do not constitute wages under FICA.

11

50.    Delco's 1999 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

51.    The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

52.    The IRS abused its discretion in Revenue Ruling 2004-109 when determining that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

53.    Delco has overpaid FICA taxes for the calendar quarter ending December 31, 1999 in connection with the 1999 CBA Payments, in the amount of $1,141,224. Delco is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

54.    The IRS erroneously failed to allow Delco's claim for a refund and failed to refund the overpayment of tax in the amount of $1,141,224 "or such other amount as finally determined."

## COUNT III
### (Delphi: Fourth Quarter 2003)

55.    Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

56.    On or before January 31, 2004, Delphi timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 2003.

12

57.    Delphi timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 2003.

58.    On March 15, 2007, Delphi filed a Form 843 in which it requested a refund of FICA taxes of $7,453,028 "or such other amount as finally determined," for the calendar quarter ending December 31, 2003.

59.    Delphi's 2003 CBA Payments do not constitute wages under FICA.

60.    Delphi's 2003 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

61.    The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

62.    The IRS abused its discretion when determining in Revenue Ruling 2004-109 that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

63.    Delphi has overpaid FICA taxes for the calendar quarter ending December 31, 2003 in connection with the 2003 CBA Payments, in the amount of $4,479,982. Delphi is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

64.    The IRS erroneously failed to allow Delphi's claim for a refund and failed to refund the overpayment of tax in the amount of $4,479,982 "or such other amount as finally determined."

<u>COUNT IV</u>
(Delco: Fourth Quarter 2003)

65.    Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

66.    On or before January 31, 2004, Delco timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 2003.

67.    Delco timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 2003.

68.    On March 15, 2007, Delco filed a Form 843 in which it requested a refund of FICA taxes of $792,262, "or such other amount as finally determined," for the calendar quarter ending December 31, 2003.

69.    Delco's 2003 CBA Payments do not constitute wages under FICA.

70.    Delco's 2003 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

71.    The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

72.    The IRS abused its discretion when determining in Revenue Ruling 2004-109 that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

73.    Delco has overpaid FICA taxes for the calendar quarter ending December 31, 2003 in connection with the 2003 CBA Payments, in the amount of $362,968. Delco is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

74.    The IRS erroneously failed to allow Delco's claim for a refund and failed to refund the overpayment of tax in the amount of $362,968 "or such other amount as finally determined."

## COUNT V
(DASS: Fourth Quarter 2003)

75.    Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

76.    On or before January 31, 2004, DASS timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 2003.

77.    DASS timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 2003.

78.    On or about April 16, 2007, DASS filed a Form 843 in which it requested a refund of FICA taxes of $6,529,054, "or such other amount as finally determined," for the calendar quarter ending December 31, 2003.

79.    DASS's 2003 CBA Payments do not constitute wages under FICA.

80.    DASS's 2003 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

81.    The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration

15

for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

82.    The IRS abused its discretion when determining in Revenue Ruling 2004-109 that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

83.    DASS has overpaid FICA taxes for the calendar quarter ending December 31, 2003 in connection with the 2003 CBA Payments, in the amount of $11,390,976. DASS is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

84.    The IRS erroneously failed to allow DASS's claim for a refund and failed to refund the overpayment of tax in the amount of $11,390,976 "or such other amount as finally determined."

WHEREFORE, Plaintiffs respectfully request entry of judgment on their Complaint for each Plaintiff against the Defendant as to each count as follows:

a.    For Delphi Corporation and Delphi Automotive Systems LLC, as successor to Delco Electronics Corporation and Delco Electronics LLC:

On Count Two:  the amount of $1,141,224, or such other amounts as may be legally refundable, plus interest as provided by law;

On Count Four:  the amount of $362,968, or such other amounts as may be legally refundable, plus interest as provided by law;

b.    For Delphi Corporation:

On Count One:  the amount of $8,682,980, or such other amounts as may be legally refundable, plus interest as provided by law;

On Count Three: the amount of $4,479,982, or such other amounts as may be legally refundable, plus interest as provided by law;

    c.    For Delphi Automotive Systems Services LLC:

On Count Five: the amount of $11,390,976, or such other amounts as may be legally refundable, plus interest as provided by law; and

d.    <u>And As To All Counts</u>: attorneys' fees, costs and such other and further relief as is

just.

Dated:    New York, New York
         January 18, 2008

BAKER & MCKENZIE LLP


By:    */s/ Thomas M. Cryan, Jr.*
       Mary B. Hevener
       Thomas M. Cryan, Jr.
       815 Connecticut Avenue, N.W.
       Washington, D.C.  20006-4078
       (202) 452-7080

              – and –

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By:    */s/ John Wm. Butler, Jr.*
       John Wm. Butler, Jr. (JB 4711)
       Ron E. Meisler (RM 3026)
       333 West Wacker Drive, Suite 2100
       Chicago, Illinois 60606
       (312) 407-0700

              - and –


By:    */s/ Kayalyn A. Marafioti*
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
       Four Times Square
       New York, New York 10036
       (212) 735-3000


       Attorneys for Delphi Corporation, <u>et al.</u>,
          Debtors and Debtors-in-Possession

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By:     MATTHEW L. SCHWARTZ
          JOSEPH N. CORDARO
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-1945
Fax: (212) 637-2750
E-mail:  matthew.schwartz@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:

          DELPHI CORPORATION, *et al.*,

                              Debtors.

Chapter 11

Bankr. Case No. 05-44481 (RDD)
(Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DELPHI CORPORATION, DELPHI
AUTOMOTIVE SYSTEMS LLC, and DELPHI
AUTOMOTIVE SYSTEMS SERVICES LLC,

                              Plaintiffs,

          - against -

THE UNITED STATES OF AMERICA,

                              Defendant.

**ANSWER**

Adversary Proceeding
No. 08-01038 (RDD)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendant the United States of America (the "Government"), by its attorney

Michael J. Garcia, United States Attorney for the Southern District of New York,

answers the "Complaint to Recovery Property of Estates" on information and belief

as follows:

          1.     Neither admits nor denies the allegations in paragraph 1 of the

complaint because they constitute plaintiffs' characterization of this action.  To the extent a response is required, the Government denies the allegations contained in this paragraph.

2.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the complaint.

3.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the complaint.

4.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the complaint.

5.     Admits the allegations in paragraph 5 of the complaint.

6.     Neither admits nor denies the allegations in paragraph 6 of the complaint because they constitute an assertion of jurisdiction, to which no response is required.  To the extent a response is required, the Government denies the allegations contained in this paragraph.

7.     Neither admits nor denies the allegations in paragraph 7 of the complaint because they constitute an assertion of venue, to which no response is required.  To the extent a response is required, the Government denies the allegations contained in this paragraph.

8.     Neither admits nor denies the allegations in paragraph 8 of the complaint because they constitute plaintiffs' characterization of this action.  To the extent a response is required, the Government denies the allegations contained in this paragraph.

2

9.      Admits the allegations in paragraph 9 of the complaint.

10.     Admits the allegations in paragraph 10 of the complaint.

11.     Admits the allegations in paragraph 11 of the complaint, except further avers that, subsequent to the filing of this complaint, the Bankruptcy Court entered an order confirming the Plan.

12.     Neither admits nor denies the allegations in paragraph 12 of the complaint because they constitute plaintiffs' characterization of Revenue Ruling 58-145, and respectfully refers the Court to that Revenue Ruling for a true and accurate statement of its contents.  To the extent a response is required, the Government denies the allegations in this paragraph.

13.     Neither admits nor denies the allegations in paragraph 13 of the complaint because they constitute plaintiffs' characterization of Revenue Procedure 89-14, and respectfully refers the Court to that Revenue Procedure for a true and accurate statement of its contents.  To the extent a response is required, the Government denies the allegations in this paragraph.

14.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the complaint.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the complaint.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the complaint.

17.     Denies knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 17 of the complaint.

18.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the complaint.

19.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the complaint.

20.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the complaint.

21.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the complaint.

22.    Denies the allegations in paragraph 22 of the complaint.

23.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the complaint.

24.    Denies the allegations in paragraph 24 of the complaint, except admits that on or about April 11, 2003, Delphi and Delco[1] filed refund claims for the quarter ending December 31, 1999.

25.    Denies the allegations in paragraph 25 of the complaint, except admits that in November 2004, the IRS revoked Revenue Ruling 58-145.

26.    Neither admits nor denies the allegations in paragraph 26 of the complaint because they constitute plaintiffs' characterization of Revenue Ruling 2004-109, and respectfully refers the Court to that Revenue Ruling for a true and

---

[1]    "Delphi," "Delco," and "DASS" are defined terms that have the same meaning in this Answer as in plaintiffs' complaint.

accurate statement of its contents. To the extent a response is required, the Government denies the allegations in this paragraph.

27. Neither admits nor denies the allegations in paragraph 27 of the complaint because they constitute plaintiffs' characterization of Revenue Ruling 58-145 and Revenue Ruling 2004-109, and respectfully refers the Court to those Revenue Rulings for a true and accurate statement of their contents. To the extent a response is required, the Government denies the allegations in this paragraph.

28. Denies the allegations in paragraph 28 of the complaint.

29. Neither admits nor denies the allegations in paragraph 29 of the complaint because they constitute plaintiffs' characterization of Revenue Ruling 2004-109, and respectfully refers the Court to that Revenue Ruling for a true and accurate statement of its contents. To the extent a response is required, the Government denies the allegations in this paragraph.

30. Denies the allegations in paragraph 30 of the complaint, except admits that by letters dated March 25, 2006, the IRS proposed to disallow Delphi and Delco's refund claims for the quarter ending December 31, 1999.

31. Denies the allegations in paragraph 31 of the complaint, except admits that by letter dated May 19, 2005, Delphi and Delco indicated that they did "not agree with the disallowance."

32. Denies the allegations in paragraph 32 of the complaint, except admits that by letters dated May 30, 2006, the IRS "fully disallowed" Delphi and Delco's refund claims for the quarter ending December 31, 1999.

5

33.    Denies the allegations in paragraph 33 of the complaint, except admits that on or about March 15, 2007, Delphi and Delco filed refund claims for the quarter ending December 31, 2003, and that on or about April 16, 2007, DASS filed a refund claim for the quarter ending December 31, 2003.

34.    Denies the allegations in paragraph 34 of the complaint, except admits that Delco and DASS's refund claims for the quarter ending December 31, 2003, have been denied.

35.    Responds to the allegations in paragraph 35 of the complaint by realleging each and every answer and response contained in paragraphs numbered 1 through 34 as if fully set forth herein at length.

36.    Denies the allegations in paragraph 36 of the complaint, except admits that Delphi filed its Form 941 return for the quarter ending December 31, 1999, on or about January 31, 2000.

37.    Denies the allegations in paragraph 37 of the complaint, except admits that Delphi remitted taxes for the quarter ending December 31, 1999.

38.    Denies the allegations in paragraph 38 of the complaint, except admits that on or about April 11, 2003, Delphi filed a refund claim for the quarter ending December 31, 1999.

39.    Denies the allegations in paragraph 39 of the complaint.

40.    Denies the allegations in paragraph 40 of the complaint.

41.    Denies the allegations in paragraph 41 of the complaint.

42.    Denies the allegations in paragraph 42 of the complaint.

6

43.     Denies the allegations in paragraph 43 of the complaint.

44.     Denies the allegations in paragraph 44 of the complaint.

45.     Responds to the allegations in paragraph 45 of the complaint by realleging each and every answer and response contained in paragraphs numbered 1 through 34 as if fully set forth herein at length.

46.     Denies the allegations in paragraph 46 of the complaint, except admits that Delco filed its Form 941 return for the quarter ending December 31, 1999, on or about January 31, 2000.

47.     Denies the allegations in paragraph 47 of the complaint, except admits that Delco remitted taxes for the quarter ending December 31, 1999.

48.     Denies the allegations in paragraph 48 of the complaint, except admits that on or about April 11, 2003, Delco filed a refund claim for the quarter ending December 31, 1999.

49.     Denies the allegations in paragraph 49 of the complaint.

50.     Denies the allegations in paragraph 50 of the complaint.

51.     Denies the allegations in paragraph 51 of the complaint.

52.     Denies the allegations in paragraph 52 of the complaint.

53.     Denies the allegations in paragraph 53 of the complaint.

54.     Denies the allegations in paragraph 54 of the complaint.

55.     Responds to the allegations in paragraph 55 of the complaint by realleging each and every answer and response contained in paragraphs numbered 1 through 34 as if fully set forth herein at length.

56.     Denies the allegations in paragraph 56 of the complaint, except admits that Delphi filed its Form 941 return for the quarter ending December 31, 2003, on or about January 31, 2004.

57.     Denies the allegations in paragraph 57 of the complaint, except admits that Delphi remitted taxes for the quarter ending December 31, 2003.

58.     Denies the allegations in paragraph 58 of the complaint, except admits that on or about March 15, 2007, Delphi filed a refund claim for the quarter ending December 31, 2003.

59.     Denies the allegations in paragraph 59 of the complaint.

60.     Denies the allegations in paragraph 60 of the complaint.

61.     Denies the allegations in paragraph 61 of the complaint.

62.     Denies the allegations in paragraph 62 of the complaint.

63.     Denies the allegations in paragraph 63 of the complaint.

64.     Denies the allegations in paragraph 64 of the complaint.

65.     Responds to the allegations in paragraph 65 of the complaint by realleging each and every answer and response contained in paragraphs numbered 1 through 34 as if fully set forth herein at length.

66.     Denies the allegations in paragraph 66 of the complaint, except admits that Delco filed its Form 941 return for the quarter ending December 31, 2003, on or about January 31, 2004.

67.     Denies the allegations in paragraph 67 of the complaint, except admits that Delco remitted taxes for the quarter ending December 31, 2003.

68.     Denies the allegations in paragraph 68 of the complaint, except admits that on or about March 15, 2007, Delco filed a refund claim for the quarter ending December 31, 2003.

69.     Denies the allegations in paragraph 69 of the complaint.

70.     Denies the allegations in paragraph 70 of the complaint.

71.     Denies the allegations in paragraph 71 of the complaint.

72.     Denies the allegations in paragraph 72 of the complaint.

73.     Denies the allegations in paragraph 73 of the complaint.

74.     Denies the allegations in paragraph 74 of the complaint.

75.     Responds to the allegations in paragraph 75 of the complaint by realleging each and every answer and response contained in paragraphs numbered 1 through 34 as if fully set forth herein at length.

76.     Denies the allegations in paragraph 76 of the complaint, except admits that DASS filed its Form 941 return for the quarter ending December 31, 2003, on or about January 31, 2004.

77.     Denies the allegations in paragraph 77 of the complaint, except admits that DASS remitted taxes for the quarter ending December 31, 2003.

78.     Denies the allegations in paragraph 78 of the complaint, except admits that on or about April 16, 2007, DASS filed a refund claim for the quarter ending December 31, 2003.

79.     Denies the allegations in paragraph 79 of the complaint.

80.     Denies the allegations in paragraph 80 of the complaint.

9

81.     Denies the allegations in paragraph 81 of the complaint.

82.     Denies the allegations in paragraph 82 of the complaint.

83.     Denies the allegations in paragraph 83 of the complaint.

84.     Denies the allegations in paragraph 84 of the complaint.

85.     The last unnumbered paragraph in the complaint, including sub-paragraphs (a)-(c), contains plaintiffs' prayer for relief, to which no response is required.

## FIRST DEFENSE

86.     The complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

87.     This Court lacks subject matter jurisdiction over all or part of the complaint.

## THIRD DEFENSE

88.     This adversary proceeding is non-core, and the United States does not consent to the entry of a final order and judgment by the Bankruptcy Court.  *See* 28 U.S.C. § 157.

## FOURTH DEFENSE

89.     Revenue Ruling 2004-109 is a correct statement of the law, and fully controls the outcome of this case.

## FIFTH DEFENSE

90.     Revenue Ruling 2004-109 is entitled to conclusive judicial deference.

Dated:      New York, New York
            May 13, 2008

                      MICHAEL J. GARCIA
                      United States Attorney
                      Attorney for the United States of America

By:     /s/ Matthew L. Schwartz         
                      MATTHEW L. SCHWARTZ
                      JOSEPH N. CORDARO
                      Assistant United States Attorneys
                      Telephone: (212) 637-1945
                      Facsimile:  (212) 637-2750
                      E-mail: matthew.schwartz@usdoj.gov

# ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

SEP 1 0 2007

U.S. COURT OF
FEDERAL CLAIMS

# *# 067089*

|  |  |
|---|---|
| FORD MOTOR COMPANY, | ) |
| **Plaintiff,** | ) |
| v. | ) No. **07-658 T** |
| THE UNITED STATES of AMERICA, | ) |
| **Defendant.** | ) |

---

## COMPLAINT

Ford Motor Company, EIN 38-0549190 ("Ford") hereby institutes this suit for refund of internal revenue taxes erroneously or illegally assessed or collected by the defendant, United States of America. As the basis for its case Ford alleges as follows:

1. The Federal Insurance Contributions Act, 26 U.S.C. § 3101 *et. seq.* ("FICA"), imposes an excise tax on every employer who pays wages with respect to employment. FICA also imposes a tax on wages received by an individual with respect to his or her employment.

2. In the fourth quarters of 1996 and 1999, Ford made lump-sum payments as described in detail below ("Payments") to Ford's employees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (hereinafter, the "UAW").

3.     Ford paid to defendant United States FICA employer tax (section 3111 of the Internal Revenue Code of 1986, as amended ("Code")) with respect to the Payments. Ford also withheld FICA employee tax (section 3101 of the Code) from the Payments and paid the withheld amounts to the United States on the employees' behalf.

4.     Ford made the lump-sum Payments to induce Ford's employees to ratify new collective bargaining agreements ("CBAs"). As described in detail below, these ratification inducement Payments were not conditioned on the performance of services and had no relationship to any services or to any of the factors used to determine compensation for services such as seniority, job classification, or rate of pay.

5.     The Payments were not remuneration for services and thus were not wages for FICA purposes. FICA taxes did not apply to the Payments, and Ford is entitled to a refund of the FICA employer tax Ford paid to the defendant. Ford also is entitled to a refund, on behalf of its employees, of the FICA employee tax Ford withheld and paid to the defendant.

**Required Special Matters and Other Jurisdictional Facts**

6.     <u>Tax Years or Periods for which Refunds Are Sought</u>. The tax periods for which Ford seeks refunds are the quarters ending December 31, 1996 and December 31, 1999.

7.     <u>Amounts, Dates, and Places of Payments to Be Refunded</u>. The amounts, dates, and places of the tax payments to be refunded are:

| Payment Made for Quarter Ended | Amount of Payment— Employer Tax | Amount of Payment— Employee Tax | Date of Payment | Place of Payment |
|---|---|---|---|---|
| December 31, 1996 | $14,861,649 | $14,861,649 | January 28, 1997 | Payment made electronically |
| December 31, 1999 | $ 7,284,677 | $ 7,284,677 | January 24, 2000 | Payment made electronically |

2

8.    Dates and Places Returns Were Filed.  The Forms 941 (Employer's Quarterly Federal Tax Returns) reporting the FICA taxes Ford paid with respect to the Payments were filed on the following dates and at the following places:

| Return for Quarter Ended | Date Return Filed | Place Return Filed |
|---|---|---|
| December 31, 1996 | January 28, 1997 | Cincinnati, Ohio |
| December 31, 1999 | January 24, 2000 | Cincinnati, Ohio |

9.    Name, Address, and Identification Number of Taxpayer Appearing on the Returns.  The name, address, and identification number Ford used on the returns in issue was:

| Return for Quarter Ended | Name on Return | Address on Return | EIN on Return |
|---|---|---|---|
| December 31, 1996 | Ford Motor Company | The American Road Room 530 Dearborn, MI 48121 | EIN 38-0549190 |
| December 31, 1999 | Ford Motor Company | Tax Office, Room 612 WHQ American Road Dearborn, MI 48121 | EIN 38-0549190 |

10.    Ford is a Delaware corporation engaged in the manufacture, sale, and financing of motor vehicles.

11.    Dates and Places Claims for Refund Were Filed.  Ford timely filed claims for refund of the FICA taxes paid with respect to the Payments as set forth in the table below. True and correct copies of the refund claims as originally filed are attached as Exhibits A and B to this Complaint.  A true and correct copy of a supplemental protest of defendant's proposed disallowance of Ford's original refund claims, which protest supplemented those original refund claims by addressing defendant's issuance of Rev. Rul. 2004-109, 2004-2 C.B. 958 (November

23, 2004), is attached as Exhibit C to this Complaint. Ford's supplemental protest was dated

February 28, 2005 and was stamped received by the defendant on March 2, 2005.

| Original Refund Claim (Form 843) for Quarter Ended | Date Claim Filed | Place Claim Filed |
|---|---|---|
| December 31, 1996 | April 17, 2000 | Cincinnati, Ohio |
| December 31, 1999 | April 11, 2001 | Dearborn, Michigan |

    12.    <u>Actions on Claims Taken by Department or Agency of the United</u>

<u>States—Notices of Claim Disallowance</u>.  The Internal Revenue Service ("Service") considered

Ford's refund claims and issued notices of disallowance of those claims on the following dates:

| Refund Claim for Quarter Ended | Date of Notice of Claim Disallowance |
|---|---|
| December 31, 1996 | September 29, 2005 |
| December 31, 1999 | September 29, 2005 |

    13.    <u>Money Mandating Statutes</u>.  Code section 6413(b) provides in pertinent

part that any overpayment of FICA tax shall be refunded.  More generally, Code section 6402(a)

provides in pertinent part that the Secretary of the Treasury is authorized to credit the amount of

any overpayment of tax, including any interest allowed thereon, against any internal revenue tax

liability of the person who made the overpayment and shall refund any balance to such person.

**Statement of Grounds upon which the Court's Jurisdiction Depends**

    14.    This Complaint seeks refunds of internal revenue taxes erroneously or

illegally assessed or collected by the United States.  Ford has paid the full amount of FICA taxes

(both employer's and employees' portions) defendant has assessed for the quarters in issue in

this Complaint.  Ford filed the administrative claims for refund required by Code section 7422 as

prerequisites to the maintenance of this suit within the time limits imposed by Code section 6511 on the filing of such claims. In addition, this Complaint is being filed within the time limits imposed by Code section 6532 on the beginning of this suit. Finally, Ford owns the claim asserted in this suit and that claim has not been transferred or assigned. Accordingly, this Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1346(a)(1).

15.     Because this suit asserts a claim for judgment against the United States founded upon the Constitution, an Act of Congress, or a regulation of an executive department, this Court also has jurisdiction over this suit pursuant to 28 U.S.C. § 1491(a)(1).

16.     Treas. Reg. § 31.6402(a)-2(a)(2) provides that every claim filed by an employer for refund or credit of employee FICA tax collected from an employee shall include a statement that the employer has repaid the tax to such employee or has secured the written consent of such employee to allowance of the refund or credit. Treas. Reg. § 31.6402(a)-2(a)(2) further provides that every claim filed by an employer for refund or credit of employee FICA tax collected from an employee in a calendar year prior to the year in which the credit or refund is claimed also shall include a statement that the employer has obtained from the employee a written statement to the effect that (a) the employee has not claimed refund or credit of the amount of the overcollection, or if so, such claim has been rejected, and (b) the employee will not claim refund or credit of such amount. These requirements are not jurisdictional, and need not be complied with before this Court has considered the merits of the taxpayer's claim. *See Chicago Milwaukee Corp. v. United States*, 40 F.3d 373 (Fed. Cir. 1994). Ford will obtain the required statements from its employees at the appropriate time and will adjust the amounts of the refunds claimed in this suit accordingly.

**Statement of Ford's Claim for Relief and Grounds Entitling Ford to that Relief**

**Count One:  Ford Is Entitled to a Refund of FICA Taxes Paid with Respect to the Payments Because the Payments Were Not Wages**

17.    The FICA employer and employee taxes are imposed on "wages" paid or received with respect to "employment." *See* Code sections 3111 and 3101.  For this purpose, "wages" means all "remuneration for employment," and "employment" means "any service, of whatever nature, performed . . . by an employee for the person employing him . . . ," subject to certain exceptions not relevant to this case.  *See* Code sections 3121(a) and (b).  Taking the definitions of wages and employment together, FICA taxes apply to remuneration for services an employee performs for his employer.

18.    In 1996, Ford and its UAW-represented employees were bound by a CBA that expired on September 14, 1996.  Agreement on a new CBA was not reached by the expiration date and negotiations continued after that date.

19.    A new CBA satisfactory to union negotiators was proposed in early September 1996, but the negotiators and Ford were concerned that union employees might not approve the proposed new CBA.  Accordingly, on or about September 15, 1996, Ford and the UAW agreed that to induce UAW members to ratify the proposed new CBA Ford would make lump-sum payments to Ford's employees upon ratification.

20.    The proposed new CBA provided that, if the CBA were ratified, Ford would pay $2,000 to each UAW employee on Ford's active employment roll on September 30, 1996 (*i.e.,* on the date the CBA, if approved by the employees, would become effective).  The employees ultimately ratified the CBA, and Ford made the $2,000 payments to each employee as provided in that agreement.

21.    Ford agreed to make and made the $2,000 payments to induce Ford's employees to ratify the new CBA. The payments were not made as remuneration for services. Indeed, the payments were not conditioned on the performance of services and bore no relationship to services or to any of the factors used to determine compensation for services.

22.    In 1999, Ford once again made lump-sum payments to induce UAW-represented employees to ratify a new CBA. These payments (collectively referred to in this Complaint, together with the 1996 payments, as the "Payments") were similar in all respects to the 1996 Payments described above, except that the 1999 Payments were $1,350 to each employee (other than temporary part-time employees) on the active employment roll as of the effective date of the 1999 CBA.

23.    FICA taxes do not apply to all payments or other benefits an employer provides to its employees in the course of the employer/employee relationship. *See, e.g., Rowan Cos., Inc. v. United States*, 452 U.S. 247 (1981) (meals and lodging provided to offshore drilling platform employees were not FICA wages; also explaining that because wages is a narrower concept than income, employer provided reimbursements can be income to employees without necessarily being wages for withholding tax purposes).

24.    Numerous Court of Claims decisions stress the divergence between "income" and "remuneration for services" or "wages." *See, e.g., Allstate Ins. Co. v. United States*, 209 Ct. Cl. 1 (1976) (employer payments or reimbursements for employee indirect moving expenses were not remuneration for services performed and thus were not wages for income tax withholding purposes); *Humble Pipe Line Co. v. United States*, 194 Ct. Cl. 944, 950 (1971) (same holding; stating that "The term 'wages' has a much narrower meaning than the term 'income' . . . ."); *Humble Oil & Refining Co. v. United States*, 194 Ct. Cl. 920, 930 (1971)

(same holding; stating that not every payment, or other economic gain, flowing from an employer to an employee constitutes compensation for services performed upon which withholding is required); *Peoples Life Ins. Co. v. United States*, 179 Ct. Cl. 318, 332 (1967) (employer paid expenses for attending employee conventions were not remuneration for services; stating that "There is no necessary correlation between what constitutes 'wages' or 'remuneration' paid by an employer within the meaning of the employment or withholding tax sections, and what constitutes 'income' to the employee within the meaning of the 'gross income' sections.").

25.     The Service has long recognized that a payment made to induce agreement to an employment contract is not remuneration for services and thus is not wages, where the payment is not conditioned on the performance of services or on continuing employment. Rev. Rul. 58-145, 1958-1 C.B. 360, *revoked*, Rev. Rul. 2004-109, 2004-2 C.B. 958, considered signing bonuses paid to baseball players for signing their first contracts. Rev. Rul. 58-145 concluded that, where the bonus payments were not predicated on the performance of services by the player or otherwise contingent on continuing employment, the bonuses were not remuneration for services and thus were not wages for income tax withholding purposes. By contrast, where the bonus payments were contingent on the performance of services or continued employment, Rev. Rul. 58-145 concluded that the bonuses were remuneration for services and thus wages.

26.     Rev. Rul. 58-145 remained the published position of the Service on the status of contract signing bonuses as wages or non-wages for over 45 years. In 1999 and 2000, the President proposed changing the non-wage status of contract signing bonuses not conditioned

on the performance of services,[1] as recognized by Rev. Rul. 58-145, but Congress declined to change this longstanding law.  The Joint Committee Staff summarized the law in effect at the time of the President's proposals as follows:[2]

> Under present law, the line between whether a signing bonus or similar payment negotiated as part of an employment contract is includible in wages for FICA and FUTA tax purposes and is subject to income tax withholding is determined by whether the payment is contingent upon the performance of future services. If an individual is not required to perform future services after receipt of the signing bonus or other type of payment, then such bonus or payment is not considered remuneration for employment.

27.    Because the 1996 and 1999 Payments were not contingent on the performance of services and bore no relationship to services or to any of the factors used to determine compensation for services, they were not remuneration for services and were not wages for FICA purposes.  Accordingly, no FICA tax was due with respect to the Payments and Ford is entitled to a refund of the taxes paid.

**Count Two:  Rev. Rul. 58-145's Longstanding Conclusion that Contract Signing Bonuses Not Conditioned on the Performance of Services Are Not Wages Continues to Control Ford's Case, Because the Service's Partially Retroactive Change of Position During Ford's Pursuit of its Refund Claims Irrationally Discriminates Against Ford**

28.    In support of this alternative ground supporting Ford's claims for refund, Ford repeats the allegations in paragraphs 1-27 above and in addition alleges the following:

29.    In Rev. Rul. 58-145, *supra*, the Service recognized that a contract signing bonus, not conditioned on the performance of services, was not remuneration for employment

---

[1] *See* Joint Committee on Taxation, Description of Revenue Provisions Contained in the President's Fiscal Year 2000 Budget Proposal, JCS-1-99 (Feb. 22, 1999) ("2000 Proposal"), at 317-319; Joint Committee on Taxation, Description of Revenue Provisions Contained in the President's Fiscal Year 2001 Budget Proposal, JCS-2-00 (March 6, 2000) ("2001 Proposal"), at 470-473.
[2] *See* the 2000 Proposal at 318; 2001 Proposal at 471.

and thus was not wages. Rev. Rul. 58-145 remained the Service's position on the non-wage status of such bonuses for 45 years and Congress did not act on proposals to change the law.

30.    In 2004, during Ford's pursuit of the administrative refund claims involved in this action, the Service issued Rev. Rul. 2004-109, *supra*. Rev. Rul. 2004-109 considered two fact situations. The first situation involved the precise facts of Rev. Rul. 58-145, *i.e.*, a contract signing bonus paid to a baseball player pursuant to an employment contract that was not contingent on the performance of services. The second situation involved the facts of Ford's case, *i.e.*, a bonus paid to employees to induce the ratification of a CBA, where all employees on the CBA's effective date received the same amount, the payment was not contingent on the performance of past or future services, and the payment bore no relationship to seniority or any other factor used to determine compensation.

31.    Rev. Rul. 2004-109 asserted that Rev. Rul. 58-145 had erred by concluding that whether a signing or ratification bonus was wages depended on whether the bonus was conditioned on the performance of services. According to Rev. Rul. 2004-109, all payments received in connection with the "establishment, maintenance, furtherance, alteration, or cancellation of the employer-employee relationship or any of the terms and conditions thereof" are wages, unless the employee provides "clear, separate, and adequate consideration" for the payments that is not dependent on the employment relationship. Rev. Rul. 2004-109 thus applied a completely different legal analysis from the analysis applied by Rev. Rul. 58-145.

32.    The Service decided not to apply its change of position in Rev. Rul. 2004-109 equally to all similarly situated taxpayers. The ruling applies only prospectively to signing bonuses paid to employees who are entering into their *initial employment* (*i.e.*, their *first contracts*) under facts and circumstances substantially the same as those in Rev. Rul. 58-145.

The Service asserts that this relief from the retroactive application of Rev. Rul. 2004-109 does

not apply to Ford because the contracts were not for initial employment.

33.    Rev. Rul. 58-145 involved a ballplayer who was signing his first contract.

The principle recognized by that ruling, however, was that a signing bonus is not remuneration

for employment and thus is not wages where it is not conditioned on the performance of services.

Whether a contract is the employee's first contract simply is not relevant to the determination

whether that contract is conditioned on the performance of services.

34.    The changed position asserted by Rev. Rul. 2004-109 is that all payments

made in connection with the establishment or maintenance of the employer/employee

relationship are wages, unless the employee provides clear, separate, and adequate consideration

for the payments.  Whether a contract is the employee's first contract also is irrelevant to the

determination whether the employee has provided separate consideration for any payment

received from the employer.

35.    The Service's newly changed position set forth in Rev. Rul. 2004-109 is

erroneous.  Many payments made or benefits conferred in connection with the

employer/employee relationship are not remuneration for employment and thus are not wages,

even if no separate consideration is provided by the employee.  Whether or not the Service's

changed position is correct, however, the Service must apply that position equally to all similarly

situated taxpayers, absent a rational reason for disparate treatment.  *See, e.g., United States v.

Kaiser*, 363 U.S. 299, 308 (1960) (Frankfurter, J. concurring) ("The Commissioner cannot tax

one and not tax another without some rational basis for the difference."); *Oshkosh Truck Corp. v.

United States*, 123 F.3d 1477, 1481 (Fed. Cir. 1997) (concluding that the Service abused its

discretion by applying an excise tax markup to truck sales indistinguishable from sales the

Service had exempted from markup in regulations; stating that the Service's position was "inconsistent with the frequently expressed view that, unless there is a rational reason for different treatment, similarly-situated taxpayers should be treated similarly."); *International Business Machines Corp. v. United States*, 170 Ct. Cl. 357, 367 (1965) ("*IBM*") ("Equality of treatment is so dominant in our understanding of justice that discretion, where it is allowed a role, must pay the strictest heed."; "The Internal Revenue Service does not have *carte blanche*. Its choice [to make a ruling prospective or retroactive] must be a rational one, supported by relevant considerations.").

36.     The Service cannot apply a new Revenue Ruling prospectively to some taxpayers and retroactively to others without a rational reason for the disparate treatment. Where the Service's discriminatory application of the new ruling does not have a rational basis, all taxpayers are entitled to have the benefit of prospective application of the new position (and thus to continued application of the old position)—even if the position taken in the new ruling is a substantively correct interpretation of the law. *See Exchange Parts Co. of Fort Worth v. United States*, 150 Ct. Cl. 538 (1960) (taxpayer entitled to prospective application of new ruling changing Service's published position, and thus to benefit of the prior position, where Service used irrational factor to distinguish between prospective and retroactive application of the new ruling); *Connecticut Railway and Lighting Co. v. United States*, 135 Ct. Cl. 650 (1956) (same); *Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388 (2001) (same); *cf. IBM* (Service had issued private ruling that one computer manufacturer's machines were not subject to excise tax; Service then revoked that ruling prospectively, while issuing a private ruling that IBM's substantially similar machines were subject to the tax, effective retroactively; held, making

IBM's ruling effective retroactively was an abuse of discretion and IBM was entitled to the same prospective application of the Service's new position as IBM's competitor).

37.    As published, the retroactive or prospective application of Rev. Rul. 2004-109 depends on whether the payment is made in connection with an employee's first contract. Whether a contract is a first contract is irrelevant to the application of the longstanding legal principle recognized in Rev. Rul. 58-145 and is also irrelevant to the application of the Service's changed position in Rev. Rul. 2004-109. Thus, the fact that Ford's CBAs are not contracts of initial employment does not and cannot justify the discriminatory retroactive application of Rev. Rul. 2004-109 to Ford's case.

38.    The Service cannot apply a new position retroactively to Ford while applying it prospectively to similarly situated taxpayers. Under Rev. Rul. 58-145 and the principle long recognized by that ruling, the Payments are not wages because they were not conditioned on the performance of services. That principle must control Ford's case, so that Ford receives the equal treatment to which it is entitled.

**Demand for Judgment**

Wherefore, Ford respectfully asks this Court to enter a judgment that Ford is entitled to refunds of the $44,292,652 in FICA taxes Ford paid to the defendant with respect to the Payments, plus interest as provided by law.

Ford also requests such further and additional relief as may be proper.

Signed: _____

Date: _September 10, 2007_

Thomas D. Johnston
Counsel of Record
c/o Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone:  (202) 508-8022
Facsimile:  (202) 508-8100

Of Counsel:

Ian C. Friedman
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, DC 20004

Ronald A. Lang
Tami L. Lopez
Office of Tax Counsel
Ford Motor Company
The American Road
Dearborn, MI 48121

# EXHIBIT A

## 1996

## Original Claim for Refund

Form **843**

(Rev. January 1997)

Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ **See separate instructions.**

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*

**Do not** *use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund of fuel taxes;*
- *An overpayment of excise taxes reported on Form 720, 730, or 2290 (see* **General Instructions**).

| | |
|---|---|
| Name of claimant<br>**Ford Motor Company** | Your social security number |
| Address (number, street, and room or suite no.)<br>**P.O. Box 1899** | Spouse's social security number |
| City or town, state, and ZIP code<br>**Dearborn, Michigan 48121** | Employer identification number<br>38 :0549190 |
| Name and address shown on return if different from above<br>**Attention: Timithoy McGraw, Senior Tax Counsel**<br>**Ford World Headquarters, Room 626** | Daytime telephone number<br>( 313 ) 377-8085 |

| 1 | Period—prepare a separate Form 843 for each tax period | 2 | Amount to be refunded or abated |
|---|---|---|---|
| | From **January 1** , 19 **96** , to **December 31** , 19 **96** | | $ 30,600,000 |

**3a** Type of tax, penalty, or addition to tax:
- ☑ Employment  ☐ Estate  ☐ Gift  ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
- ☐ Penalty—IRC section ▶ _____

**b** Type of return filed (see instructions):
- ☐ 706  ☐ 709  ☐ 940  ☑ 941  ☐ 943  ☐ 945  ☐ 990-PF  ☐ 4720  ☐ Other (specify)

**4a** Request for abatement or refund of:
- ☐ Interest caused by IRS errors or delays (if applicable—see instructions).
- ☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.

Ford Motor Company paid and withheld FICA and FUTA taxes on a one time lump sum bonus payment to employees in 1996

Revenue Ruling 58-145 held that such bonuses, which are not for the performance of services, are not subject to employment taxes.

Attached is Form 941c as well as a summary of legal principals in support of the refund claim.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

| | Date |
|---|---|
| *Diane P. Dossin*<br>Signature (Title, if applicable. Claims by corporations must be signed by an officer.)<br>**Diane P. Dossin,    Assistant Tax Officer**<br>Signature | April 14, 2000<br>Date |

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 10180R    Form **843** (Rev. 1-97)

Page **2**

Form 941c (Rev. 10-98)

### ▪ Medicare Tax Adjustment

| | (a)<br>Period Corrected (For quarterly<br>returns, enter date quarter ended.<br>For annual returns, enter year.) | (b)<br>Wages and Tips<br>Previously Reported<br>for Period | (c)<br>Correct Wages<br>and Tips for<br>Period | (d)<br>Medicare Tax<br>Adjustment |
|---|---|---|---|---|
| | | 1020390741.25 | 820390741.25 | (5,800,000) |
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | Totals. If more than one page, enter totals on first page only  ⋅ ▶ | | | (5,800,000) |
| 6 | Net Medicare tax adjustment. If more than one page, enter total of **ALL** columns (d) on first page only. Enter here and on the appropriate line of the return with which you file this form  ⋅ ⋅ ⋅ ▶ | | 6 | (5,800,000) |
| 7 | Net wage and tip adjustment. If more than one page, enter total of **ALL** lines 7 on first page only. If line 5(c) is smaller than line 5(b), enter difference in parentheses  ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ▶ | | 7 | (200,000,000) |

### ▪ Explanation of Adjustments

Please see attached.

## MEMORANDUM IN SUPPORT OF FICA
## AND FUTA TAX REFUND CLAIMS

of

FORD MOTOR COMPANY

**EIN: 38-0549190**

This memorandum sets forth the facts and legal arguments in support of the claims for refund reflected on the attached Forms 843 and accompanying Form filed by Ford Motor Company ("Ford" or the "Company").

In accordance with Reg. § 31.6402(a) 2(a)(2)(i) and Rev. Rul. 81-310, 1981-2 C.B. 241, Ford is working on soliciting and will retain as part of its records the written consents of the affected employees and required statements from the employees as to any claims or credits by the employees with respect to the employee share of FICA taxes.

In the last quarter of 1996, the Company paid to its represented employees a one time lump sum bonus and subjected the bonuses to FICA and FUTA taxes. The bonuses were paid as a consequence of the collective act of the employees in ratifying the applicable collective bargaining agreement that the Company had negotiated with the workers' unions. In connection with the ratification, a $2,000 bonus was paid to each represented employee on the active employment roll of the Company as of the effective date of the new agreement. The same bonus was paid to each such employee without regard to whether the employee actually voted for or against ratification, without regard to the employee's past services for the Company, and without regard to whether the employee continued performing services for the Company.

In order for amounts an employer pays its employees to be subject to FICA and FUTA taxes, the amounts must be wages paid for the performance of services by the employee.

Code section 3121(a) and section 3121(b); Code section 3306(b) and (c); Reg. § 31.3121(a)-1(b)

and § 31.3306(c)-2(b). The Internal Revenue Service has ruled that bonuses paid solely for

signing a contract, and not conditioned on the performance of future services or continued

employment, are not wages. Rev. Rul. 58-145, 1958-1 C.B. 360. The rationale of Rev. Rul. 58-

145 was that the signing bonus therein was not compensation for personal services, but was paid

for the promises made by the individual in agreeing to be bound by the contract. GCM 35396

(July 11, 1973).

  The bonuses paid by the Company were not paid in consideration for the

performance of services by the employees, but were paid for the promises implicit in the

ratification of the applicable collective bargaining agreement, i.e., the promises to be bound by

the wage, working condition, and other terms of the agreement. Like the signing bonuses in Rev.

Rul. 58-145, the Company's bonuses are not wages subject to FICA and FUTA taxes.

Consequently, Ford and its employees are entitled to a refund of the FICA taxes paid and

withheld with respect to the bonuses.

  The attached claims reflect a $200,000,000 wage adjustment (estimated 100,000

UAW employees receiving a $2,000 signing bonus) as a consequence of the corrected

characterization of the bonuses as not wages, but Ford requests a refund of a larger or lesser

amount than shown on the forms, as determined based on data to be submitted. First, Ford is

working to determine the precise wage adjustment that would result from the characterization of

the bonuses as not wages and will supplement this submission with that information. In addition,

Ford is working to determine what proportion of the employees who received the bonuses had

already reached the $62,700 social security wage base in 1996 so that the proper characterization

of the bonuses would not result in a refund of the social security taxes (as contrasted to the

Medicare taxes). The enclosed forms assume all individuals had not reached the wage base. Finally, even once these wage and wage base amounts are determined, the amount of the refund with respect to the collective employee share of FICA taxes will depend on the extent to which the affected employees consent to Ford seeking the refunds on their behalf.

# EXHIBIT B

## 1999

## Original Claim for Refund



Office of Tax Counsel
Tami Lopez, Room 629-A6

Ford Motor Company
P.O. Box 1899
Dearborn, Michigan 48121-1899

April 11, 2001

Ms. Peggy Harbaugh
Schaefer Building – Suite 203
13530 Michigan Ave.
Dearborn, MI 48126

### RE: IDR #31 Supplemental Response for 1999 UAW FICA Refund Claim

Dear Peggy:

This is a supplemental response to IDR #31 regarding whether there were any other employment tax claims in the process of being filed in the near future. Attached please find Form 843, Claim for Refund and Request for Abatement, for the 1999 UAW lump-sum bonus overpayment of FICA taxes.

Additionally, attached are the CD-ROM's with the 1996 and 1999 payroll reports for the UAW refund claims for the overpayment of FICA taxes.

As previously discussed Form 941C is not attached at this time because of the disruption that a "proposed" 941C causes to the payroll records. The amending of the 941C's should be coordinated with Kathie Watson in Ford Motor Company Payroll Department when appropriate.

If you have any further questions or require more information please contact me at the above address or at (313) 845-4114.

Respectfully,

Tami Lopez

Form **843**

(Rev. January 1997)

Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

► See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*

*Do not use Form 843 if your claim is for—*
- *An overpayment of income taxes;*
- *A refund of fuel taxes;*
- *An overpayment of excise taxes reported on Form 720, 730, or 2290 (see General Instructions).*

| Please type or print | | |
|---|---|---|
| Name of claimant **Ford Motor Company** | | Your social security number |
| Address (number, street, and room or suite no.) **PO BOX 1899** | | Spouse's social security number |
| City or town, state, and ZIP code **Dearborn, MI 48121** | | Employer identification number **38 : 0549190** |

| Name and address shown on return if different from above **Attention: Tami Lopez, Room 629-A6 (313) 845-4114 and Timothy McGraw, Room 626 (313) 377-8085 Ford World Headquarters Building, 1 The American Road** | Daytime telephone number ( **313** ) **377-8085** |
|---|---|

| 1 | Period—prepare a separate Form 843 for each tax period From    **January 1** , 19 **99** , to    **December 31** , 19 **99** | 2 | Amount to be refunded or abated $    **17,628,956.94** |
|---|---|---|---|

3a   Type of tax, penalty, or addition to tax:
☑ Employment    ☐ Estate    ☐ Gift    ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
☐ Penalty—IRC section ► _____

b   Type of return filed (see instructions):
☐ 706    ☐ 709    ☐ 940    ☑ 941    ☐ 943    ☐ 945    ☐ 990-PF    ☐ 4720    ☐ Other (specify)

4a   Request for abatement or refund of:
☐ Interest caused by IRS errors or delays (if applicable—see instructions).
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b   Dates of payment ►

5   **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.

Ford Motor Company paid and withheld FICA and FUTA taxes on a one-time lump sum bonus **payment to** employees in 1999.

Revenue Ruling 58-145 held that such bonuses, which are not held for the performances of **services, are not subject** to employment taxes.

Attached is (1) a summary of legal principals in support of the refund claim, (2) a CD-ROM containing **the list of UAW** employees receiving the lump sum bonus and the amount of FICA and FUTA taxes withheld, (3) a **summary** spreadsheet listing the first and last 10 employees illustrating the sum totals and (4) a copy of the **1999 UAW** contract language regarding the lump-sum bonus is also provided.

Form 941C will be provided when appropriate.  Due to the large number of employees, Ford Motor Company files numerous 941C's and any 941C filed at this point in time would soon be obsolete.

Signature. If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

*Diane P. Dossin*

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)
**Diane P. Dossin, Assistant Tax Officer**

Date  *4/10/01*
April    , 2001

Signature    Date

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 10180R    Form **843** (Rev. 1-97)

## MEMORANDUM IN SUPPORT OF FICA
## TAX REFUND CLAIMS
## UAW LUMP SUM BONUS 1999

### of

### Ford Motor Company
### EIN:  38 - 0549190

This memorandum sets forth the facts and legal arguments in support of the claims for refund reflected on the attached Forms 843 and accompanying Form 941c filed by Ford Motor Company ("Ford").

In accordance with Reg. § 31.6402(a) 2(a)(2)(i) and Rev. Rul. 81-310, 1981-2 C.B. 241, Ford is working on soliciting and will retain as part of its records the written consents of the affected employees and required statements from the employees as to any claims or credits by the employees with respect to the employee share of FICA taxes.

In the last quarter of 1999, Ford paid to its employees a one time lump sum bonus and subjected the bonuses to FICA and FUTA taxes.  The bonuses were paid as a consequence of the collective act of the employees in ratifying the agreement that the Company had negotiated with the workers' unions.  In connection with the ratification, a $1,350 bonus was paid to each employee on the active employment roll of the Company as of the effective date of the agreement.  The same bonus was paid to each such employee without regard to whether the employee actually voted for ratification, without regard to the employee's past services for the Company, and without regard to whether the employee continued to perform services for the Company.

In order for amounts an employer pays its employees to be subject to FICA and FUTA taxes, the amounts must be wages paid for the performance of services by the employee.

Code section 3121(a) and section 3121(b); Code section 3306(b) and (c); Reg. § 31.3121(a)-1(b) and § 31.3306(c)-2(b). The Internal Revenue Service has ruled that bonuses paid solely for signing a contract, and not conditioned on the performance of future services or continued employment, are not wages. Rev. Rul. 58-145, 1958-1 C.B. 360. The rationale of Rev. Rul. 58-145 was that the signing bonus therein was not compensation for personal services, but was paid for the promises made by the individual in agreeing to be bound by the contract. GCM 35396 (July 11, 1973).

The bonuses paid by Ford were not paid in consideration for the performance of services by the employees, but were paid for the promises implicit in the ratification of the agreement, i.e., the promises to be bound by the wage, working condition, and other terms of the agreement. Like the signing bonuses in Rev. Rul. 58-145, Ford's bonuses are not wages subject to FICA taxes. Consequently, Ford and its employees are entitled to a refund of the FICA taxes paid and withheld with respect to the bonuses.

The attached claims reflect a wage adjustment as a consequence of the corrected characterization of the bonuses as not wages.

FORD MOTOR COMPANY
FEIN: 38-0549190
FORM 843 - CLAIM FOR REFUND AND REQUEST FOR ABATEMENT
PERIOD 1/1/99 - 12/31/99

Due to the large size of the Ford's 1999 lump sum bonus report, this schedule includes the first and last ten recipients of the 1999 lump sum bonus.

| OBS | SOCIAL | NAME | ADDRESS | CITY | STATE | ZIPCODE | GROSS | FICATAX | MEDITAX | YTDGROS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 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 | INGERSOLL,M | 9339 HEMINGWAY | REDFORD | MI | 48239 | 1350 | 83.7 | 19.58 | 22634.09 |
| 2 | 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 | LEWIS,B R | 255 WILLIAMSBURG CT | MCDONOUGH | GA | 30253 | 1350 | 83.7 | 19.58 | 19776.92 |
| 3 | 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 | WHITE,J L | 1642 SEE AVE. | HAMILTON | OH | 45011 | 1350 | 83.7 | 19.57 | 24594.64 |
| 4 | 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 | SPRAGUE,T D | 3460 CO. RD. 5 | DELTA | OH | 43515 | 1350 | 83.7 | 19.57 | 20039.43 |
| 5 | 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 | KASTEN,T M | 4212 ASBURY DR. | TOLEDO | OH | 43612 | 1350 | 83.7 | 19.57 | 14654.44 |
| 6 | 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 | DICKMAN,P W | 654 PLEASANT PLACE | TOLEDO | OH | 43609 | 1350 | 83.7 | 19.58 | 14686.67 |
| 7 | 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 | LEHMAN,L D | 715 OAK PARK | TOLEDO | OH | 43617 | 1350 | 83.7 | 19.58 | 16465.44 |
| 8 | 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 | PATTON,T T | 28300 GRIX | NEW BOSTON | MI | 48164 | 1350 | 0 | 19.57 | 101089.68 |
| 9 | 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 | BROWN,R | 4937 WILLIAMS | DEARBORN HGTS | MI | 48125 | 1350 | 83.7 | 19.58 | 41616.4 |
| 10 | 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 | LAFATA,A M | 24737 CALVIN | DEARBORN | MI | 48124 | 1350 | 83.7 | 19.58 | 10544.13 |
| 101879 | 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 | PETIT,J J | 8700 S. STONEY CRK | CARLETON | MI | 48117 | 1350 | 83.7 | 19.58 | 76823.85 |
| 101880 | 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 | JOHNSON,M A | 25350 PLEASANT CREE | BROWNSTOWN | MI | 48134 | 1350 | 83.7 | 19.58 | 53718.02 |
| 101881 | 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 | BOROWICZ,T J | 41515 HAMLIN | BELLEVILLE | MI | 48111 | 1350 | 83.7 | 19.58 | 73040.54 |
| 101882 | 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 | VOSS,D | 3960 HOLLYHOCK | W. BLOOMFIEL | MI | 48322 | 1350 | 83.7 | 19.57 | 59906.41 |
| 101883 | 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 | BROWN,R A | 24773 BALSAM COURT | FLAT ROCK | MI | 48134 | 1350 | 83.7 | 19.57 | 76935.29 |
| 101884 | 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 | HAY,G W | 1450 ANN ARBOR RD6 | PLYMOUTH | MI | 48170 | 1350 | 83.7 | 19.58 | 64733.42 |
| 101885 | 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 | SANDERS,S E | 18678 GILL | LIVONIA | MI | 48152 | 1350 | 83.7 | 19.57 | 59703.2 |
| 101886 | 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 | O DONNELL,J T | 4436 ROOSEVELT | DEARBORN HTS | MI | 48125 | 1350 | 83.7 | 19.58 | 52702.51 |
| 101887 | 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 | VICK,L J | 1803 SUPERIOR ROAD | YPSILANTI | MI | 48198 | 1350 | 83.7 | 19.58 | 65947.5 |
| 101888 | 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 | | 36911 LADYWOOD | LIVONIA | MI | 48154 | 1350 | 83.7 | 19.58 | 36939.49 |

Employee Amount  6,819,493.45  1,994,985.02
Company Amount  6,819,493.45  1,994,985.02
Total  13,638,986.90  3,989,970.04

Total Refund  $17,628,956.94

October 9, 1999

Mr. Ron Gettelfinger
Vice President and Director
UAW, National Ford Department
8000 East Jefferson Avenue
Detroit, Michigan 48214

Mr. Gettelfinger:

Subject: Up Front Lump Sum Payment

During the present negotiations, the parties agreed to
provide an up front lump sum payment of $1,350 to each
employee (excluding temporary part-time employees) on
the active employment roll on September 30, 1999.

Very truly yours,

ROBERT H. MARCIN,
Executive Director
Labor Affairs
Human Resources

Concur: Ron Gettelfinger

262

# EXHIBIT C

## 2005 Supplemental Protest

## Supplementing Original Claims for Refund

*Ford Motor Company*

Office of Tax Counsel

Ford Motor Company
The American Road
Room 629
Dearborn, MI 48121
Ph: (313) 845-4114
Fax (313) 845-4294

February 28, 2005

Mr. Theodore J. Stein
IRS Appeals Team Leader
Room 470, McNamara Bldg., Stop 33
477 Michigan Avenue
Detroit, MI 48226

RECEIVED
MAR 0 2 2005
INTERNAL REVENUE SERVICE
GENERAL APPEALS-AREA 3
DETROIT, MI

Re: Claim for Refund – 1996 and 1999 UAW Signing Bonus
     Ford Motor Company   EIN: 38-0549190

Dear Mr. Stein:

Ford Motor Company ("Ford") is supplementing its August 2, 2002 protest of the proposed disallowance of the refund claims filed with respect to its 1996 and 1999 UAW signing bonuses.

<u>Statement of Facts</u>.

In April, 2000 Ford timely filed a claim requesting a refund of FICA taxes that Ford paid with respect to its 1996 UAW national labor contract's signing bonus.   In April, 2001 Ford timely filed a claim requesting refund of FICA taxes paid with respect to its 1999 UAW national labor contract's signing bonus.   In July 2002, LMSB proposed to disallow the refund claims with respect to both the 1996 and 1999 UAW signing bonuses.   On August 2, 2002, Ford filed a protest of the proposed claim disallowance.   After Ford filed the protest, the IRS issued Rev. Rul. 2004-109.   At the Appeals Office meeting with you on December 7, 2004,  Appeals provided several cases in support of the IRS's new position that signing bonuses constitute wages and further indicated that the new ruling position is to be applied retroactively unless the signing bonus was part of an initial employment.

In response to these arguments, Ford now supplements  its August 2, 2002 protest to (i) assert that the Commissioner abused  his discretion by applying Revenue Ruling 2004-109 in a disparate manner between similarly situated taxpayers without any rational basis for the disparate treatment and (ii) describe why the cases included in the list of twenty-three that you provided at our last meeting do not effectively support the position that Ford's signing bonuses are not wages for FICA tax purposes.

1

## Law and Argument.

### A.    The Commissioner Abused His Discretion.

On November 23, 2004, the IRS issued Rev. Rul. 2004-109 to reverse its long-held position with respect to the qualification of signing bonuses as wages. The IRS had established its position in Rev. Rul. 58-145 which considered whether a signing bonus paid to a ballplayer for signing his initial contract constituted wages. The 1958 ruling held that since the bonus did not constitute remuneration for services it did not constitute wages, without regard to whether the bonus was paid before the ballplayer's commencement of employment or in installments during the time he was an employee. The ruling's holding turned entirely on the question whether the signing bonus was contingent on the performance of future services. Because the bonus considered in the ruling was not contingent on the ballplayer's performance of future service, the IRS held it did not constitute wages. The ruling explicitly indicated that a bonus that was contingent on the provision of future services would be treated as wages.

In reversing the 1958 ruling, Revenue Ruling 2004-109 explicitly changed the test applicable to determine whether a signing bonus constitutes wages. The ruling abandoned the Rev. Rul. 58-145 test of whether or not the bonus was contingent on the performance of future services and replaced it with a test turning on whether the bonus recipient provides clear, separate and adequate consideration for the bonus apart from the employee-employer relationship. Thus, under Rev. Rul. 2004-109, a signing bonus would be considered wages without regard to whether or not it is contingent on the performance of future services.
The 2004 ruling evaluates two situations.

> Situation 1 dealt with the fact pattern of Rev. Rul. 58-145 -- a baseball club paying a signing bonus to a baseball player signing his initial contract with the club. The signing bonus was not contingent on the player's future performance of services.

> Situation 2 dealt with Ford's basics facts -- an employer paying a signing bonus for ratification of a collective bargaining agreement. The signing bonus was not contingent on past, present or future performance of services.

Rev. Rul. 2004-109 holds that the signing bonuses at issue in both situations 1 and 2 constitute wages for FICA purposes. In both situations, the IRS simply applies the test of whether the bonus recipient provides clear, separate and adequate consideration for the bonus apart from the employee-employer relationship. In neither situation was the fact that the bonus was not contingent on past, present or future services viewed as relevant. In neither situation was the fact that the ballplayer bonus relating to an initial contract mentioned as in any way important.

The "Application" section of Rev. Rul. 2004-109 provides:

> Under the authority of section 7805(b), the Service will not apply the position adopted in this ruling to any signing bonus, sign –on fee or similar amount paid to

2

an employee in connection with the employee's initial employment with the employer pursuant to a sign –on agreement or other contract entered into before January 12, 2005, provided the amount is paid under facts and circumstances that are substantially the same as in Rev. Rul. 58-145 or Rev. Rul. 74-108.

This Application section provision is curious in that, even though Rev. Rul, 2004-109 contains identical analyses and conclusions for each of situations 1 and 2, it refers to situation 1's particular (but unimportant) fact that the bonus is paid in connection with the employee's initial employment. Since in every important respect, situations 1 and 2 are effectively identical, it would be illogical to draw a distinction based on whether the bonus was paid in connection with an initial employment. Accordingly, the provision's reference to payment in connection with initial employment is best read as just a general statement as to the facts of the particular revenue ruling (Rev. Rul. 58-145) that Rev. Rul. 2004-109 reversed, as opposed to an attempt to intentionally limit the availability of prospective effect for situation 2 and other situations that are substantially similar. Unfortunately, however Appeals has, in fact, proposed to treat Rev. Rul. 2004-109 as having retroactive effect with respect situation 2.

Assuming arguendo that (i) the Commissioner's new position that signing bonuses constitute wages is correct and (ii) Appeals' assertion that Rev Rul. 2004-109 should be given retroactive effect for Ford is correct, Ford asserts that the Commissioner abused his discretion by applying the new position retroactively for situation 2 taxpayers but prospectively for other taxpayers. The Commissioner has some discretion to determine the extent to which a ruling will be applied retroactively. I.R.C. §7805(b). However, the Commissioner may be held to have abused his discretion where the circumstances reveal an unfair disparity in the treatment of similarly situated taxpayers. Exchange Parts Co. v. U.S., 279 F.2d 251 (Ct.Cl. 1960)(court found the IRS's distinction to be discriminatory when the IRS, in revoking its previous rulings, stated it would not seek to recover unpaid taxes but that it would not refund taxes that had been paid). The Commissioner's distinction will be held to have abused his discretion if the distinction is devoid of rational basis. Dixon v. U.S., 381 U.S. 68, 79 (1965).

The Eleventh Circuit, in Baker v. U.S., 748 F.2d 1465 (11th Cir. 1984) considered a similar discrimination situation as that presented in the instant situation. In Baker, the Commissioner had issued Rev. Rul. 62-213, 1962-2 C.B. 59 holding that educational expenses by veterans were deductible despite receiving nontaxable educational benefit payments from the Veterans Administration ("VA"). In 1980, the Commissioner issued Revenue Ruling 80-173, 1980-2 C.B. 60 holding that tuition and fees for flight training for which veterans receive nontaxable reimbursements from the VA were not deductible. With respect to all other VA educational benefits, however, the 1980 ruling reconfirmed that the prior 1962 ruling continued to apply. The Commissioner distinguished the flight-training allowances from the other educational benefit payments by characterizing the flight-training payments as direct reimbursements for tuition or fees whereas the other educational payments were in the nature of living stipends. In 1983, the Commissioner revoked the 1962 ruling and held that no veteran may deduct education expenses that are allocable to tax-exempt payments from the VA. The revocation was applied prospectively with respect to general VA educational allowances but applied retroactively with respect to flight-training allowances.

3

The taxpayer in Baker argued that the Commissioner abused his discretion by drawing an unfair distinction between the two types of payments. The 11th Circuit Court of Appeals held that the Commissioner had created an arbitrary distinction devoid of any rational basis. The court noted that "by adopting Revenue Ruling 83-3, which holds that no veteran may deduct from taxable income education expenses allocable to VA benefits, the IRS has apparently recognized that all veterans who received education benefits should be taxed similarly." The court was "not persuaded that [the Commissioner's] distinction permits retroactive denial of a deduction for some veterans receiving certain educational benefits, while allowing others who received similar educational benefits to retain the advantage of the deduction." But see, Becker v. Commissioner, 85 T.C. 291 (3rd Cir. 1985)(distinction not irrational). The Commissioner ultimately acquiesced in the Baker decision and chose to apply Revenue Ruling 80-173 on a prospective basis for all taxpayers, regardless of the circuit they resided in. Action on Decision Baker v. Commissioner, AOD 1995-05, (August 7, 1995).

In any event, in order to justify the disparate treatment, there must be some rational basis for the difference in treatment. In the instant case, the attempt to distinguish between a signing bonus paid in situation 1 and a signing bonus paid in situation 2 is completely devoid of any rational basis. Appeals purports to draw a distinction by noting that the signing bonus paid in situation 1 was part of an initial contract but the IRS has not articulated why it is in any way relevant whether the signing bonus was paid as part of an initial signing or whether it was paid in an existing employer-employee situation. The rationale for the holding in Rev. Rul. 58-145 turned solely on whether the bonus was contingent on the performance of services. It did not turn on whether there was a pre-existing employer-employee relationship. In fact it was the very fact that the 1958 ruling didn't even consider the employer-employee relationship that provided the basis for revoking the 1958 ruling:

> Specifically, it failed to apply the correct definition of wages and to consider whether the bonus was paid in connection with establishing the employer-employee relationship.    Accordingly, Rev. Rul 58-145 is revoked.
> Rev. Rul 2004-109

Furthermore, the idea that the conclusion in Rev. Rul. 58-145 hinged on whether the signing bonus was paid by an employer to an existing employee was expressly rejected not just in the 1958 ruling itself but in GCM 35396 (1973)(revoking an earlier GCM concurrence because the earlier GCM erroneously inferred that Rev. Rul. 58-145 turned on whether there was an existing employer-employee relationship). Since there is no difference between a signing bonus paid in situation 1 and a signing bonus paid in situation 2, Appeal's attempt to apply the IRS's new ruling position prospectively to situation 1 but retroactively to situation 2 is clearly an abuse of discretion.

B.    The Cases Provided to us do not Support the Position that Ford's Signing
       Bonuses are not Wages for FICA Tax Purposes.

Ford continues to maintain that the signing bonuses in the instant case are not wages for FICA tax purposes. We have reviewed the list of twenty-three cases you provided at our last meeting

and note that twelve of these cases actually support Ford's position either because they support the proposition that the definition of wages is dependent on the provision of services or because taxpayers are entitled to rely on previously published rulings. Specifically, the following cases applied a provision of services standard in determining whether the payment constituted wages. Central Illinois Public Service Co. v. United States, 435 U.S. 21 (1978)(rejecting government's argument that all reimbursements in employer-employee relationship are subject to withholding); Old Colony Trust v. Commissioner, 279 U.S. 716 (1929)(payment of employees taxes are wages because they were paid in consideration of services rendered); North Dakota State University v. United States, 255 F.3d 599 (8th Cir. 2001)(payment to give up tenure rights not wages because it was for relinquishment of a contractual right and not for services rendered); Royster Co. v. United States., 479 F.2d 387 (4th Cir. 1973)(meal reimbursements not wages because not for services rendered); Stubbs, Overbeck & Associates, Inc. v. United States, 445 F.2d 1142 (5th Cir. 1971)(per diem payments not wages since not for services rendered and not all payments by employers are wages); Donnel v. United States, 50 Fed. Cl. 375 (2001)(termination payments are wages because they were for past services rendered); Humble Oil Pipe Line Co. v. United States, 442 F.2d 1353 (Ct.Cl. 1971); and Humble Oil Pipe Line Co. v. United States, 442 F.2d 1362 (Ct. Cl. 1971)(moving expenses not wages because not for services rendered). The following cases state that taxpayers should be able to rely on previously published rulings. Estate of McLendon v. Commissioner, 135 F.3d 1017 (5th Cir. 1998)(taxpayers can rely on previously rulings where facts are substantially similar); Silco Inc. v. U.S., 779 F.2d 282 (5th Cir. 1986)(taxpayers can rely on previous rulings); The Travelers Insurance Co. v. U.S. 35 Fed Cl. 138 (1996)(taxpayers can rely on previous rulings); Beneficial Foundation, Inc. v. U.S. 8 Cl. Ct. 639(1985)(education grants not subject to excise tax because IRS cannot point to distinctions without difference to avoid their rulings).

Seven of the cases cited were simply not dispositive because their holdings were based on unrelated grounds, e.g., People's Life Insurance Co v. united States, 373 F.2d 924 (Ct. Cl. 1967)(meal and entertainment expenses not wages because they fall within one of the enumerated exceptions); Acacia Mutual Life Insurance Co. v. United States, 272 F. Supp. 188 (D. Md 1967)(meal and entertainment expenses not wages because they fall within one of the enumerated exceptions); Commissioner v. LoBou, 351 U.S. 243 (1956)(gain in taxable income at time of exercise). Included in this latter grouping is Social Security Board v. Nierotko, 327 U.S. 358 (1946) which was not an employment tax case but instead applied a broad definition of wages for social security benefit purposes. It is important to note that in a subsequent case, the Supreme Court did not adopt the same broad definition of wages for employment tax purposes. See, Central Illinois, infra.

Of the twenty-three cases cited, only arguably support the Commissioner's new position that wages include any payment within the employee-employer relationship but even here the four cases are distinguishable. Ritter v. U.S. 183 Ct. Cl. 875 (1968)(moving expenses held to be taxable income to employee – not a withholding case where definition of wages is narrower); Associated Electric Cooperative v. U.S., 42 Fed. Cl. 867 (1999)(termination payments were wages because based on length of service and employer didn't establish it was paid for securing a promise not to strike); Abrahamsen v. U.S., 44 Fed. Cl. 260 (1999)(downsizing payment in settlement of lawsuit held to be taxable income because payment was for remuneration); and

General Elevator Corp. V. U.S., 20 Cl. Ct 345 (1990)(per diem payments held to be wages because taxpayer didn't show payments were reasonable reimbursements of business expense).

Given this amalgamation of case law, it can scarcely be maintained that the Service's new position is incontrovertible or that Ford's position is completely without merit, particularly given the fact that there was the 1958 ruling directly on point. As a general matter, revenue rulings "are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose." Rev. Proc. 89-14, 1989-1 C.B. 814, §7.01(4).

### Summary

The assertion that employer-employee relationship standard has always been the legal standard for purposes of withholding taxes is simply not supported by the case law and Ford should be able to rely on the 1958 ruling. The better reading of Rev. Rul. 2004-109 is that it is not intended to be given the broad retroactive application proposed by Appeals but if it is to be given such a construction, providing for retroactive application in certain situations while providing prospective application on indistinguishable fact is an abuse of discretion. Accordingly, Ford requests that the signing bonuses paid with respect to its 1996 and 1999 collective bargaining agreements be accorded the same prospective relief as that granted to taxpayer's in situation 1 and its refund claims be allowed in full.

Please call and we can discuss this further.

Respectfully,

Tami Lopez

# ORIGINAL

RECEIVED

SEP 10 2007

OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

## In The United States Court of Federal Claims

### Cover Sheet

Plaintiff(s) or Petitioner(s)

Ford Motor Company

EIN 38-0549190

If this is a multi-plaintiff case, pursuant to RCFC 20(a), please attach an alphabetized, numbered list of all plaintiffs.

Name of the attorney of record (See RCFC 83.1(c)):    Thomas D. Johnston

Firm Name:    Shearman & Sterling LLP

Post Office Box:    N/A    07 - 658 T

Street Address:    801 Pennsylvania Avenue, NW - #900

City-State-Zip:    Washington, DC  20004-2634

Telephone & Facsimile Numbers:    Tel: 202-508-8022; Fax: 202-508-8100

Is the attorney of record admitted to the Court of Federal Claims Bar?    ■ Yes  □ No

Does the attorney of record have a Court of Federal Claims ECF account?    □ Yes  ■ No

If not admitted to the court or enrolled in the court's ECF system, please call (202) 357-6406 for admission papers and/or enrollment instructions.

Nature of Suit Code:    2 2 6

Select only one (three digit) nature-of-suit code from the attached sheet.  If 213, identify partnership or partnership group.  If numbers 118, 134, 226, 312, 356, or 528 are used, please explain.    FICA tax refund suit - employer's and employees' portions of tax

Agency Identification Code:    T R E

See attached sheet for three-digit codes.

Amount Claimed:    $44,292,652

Use estimate if specific amount is not pleaded.

Disclosure Statement:

Is a RCFC 7.1 Disclosure Statement required?  ■ Yes  □ No

If yes, please note that two copies are necessary.

Bid Protest:

Indicate approximate dollar amount of procurement at issue: $ _____ N/A _____

Is plaintiff a small business?  □ Yes  □ No

Vaccine Case:

Date of Vaccination: _____ N/A _____

Related Cases:

Is this case directly related to any pending or previous case?  □ Yes  ■ No

If yes, you are required to file a separate notice of directly related case(s).  See RCFC 40.2.

# SHEARMAN & STERLING LLP

801 PENNSYLVANIA AVENUE, NW I WASHINGTON, DC I 20004-2634

WWW.SHEARMAN.COM I T +1.202.508.8000 I F +1.202.508.8100

thomas.johnston@shearman.com                                      April 25, 2008
(202) 508-8022


Via Email jason.bergmann@usdoj.gov
Original to Follow by Express Mail


Jason Bergmann, Esq.
Trial Attorney
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044


Re:    **Plaintiff's First Discovery Requests in <u>Ford Motor Company v. United
       States</u>, No. 07-658 T (Fed. Cl. filed September 10, 2007)**

Dear Mr. Bergmann:

Please find enclosed Plaintiff Ford Motor Company's First Request for Production and First Set
of Interrogatories to Defendant the United States of America.

Please do not hesitate to contact me if you have any questions.

Best regards,

Thomas D. Johnston


Enclosures


ABU DHABI  I  BEIJING  I  BRUSSELS  I  DÜSSELDORF  I  FRANKFURT  I  HONG KONG  I  LONDON  I  MANNHEIM  I  MENLO PARK
MUNICH  I  NEW YORK  I  PARIS  I  ROME  I  SAN FRANCISCO  I  SÃO PAULO  I  SINGAPORE  I  TOKYO  I  TORONTO  I  WASHINGTON, DC

SHEARMAN & STERLING LLP IS A LIMITED LIABILITY PARTNERSHIP ORGANIZED IN THE UNITED STATES UNDER THE LAWS OF THE STATE OF DELAWARE, WHICH LAWS LIMIT THE PERSONAL LIABILITY OF PARTNERS.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

_____

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

_____

PLAINTIFF FORD MOTOR COMPANY'S
FIRST SET OF INTERROGATORIES TO THE UNITED STATES OF AMERICA

_____

Plaintiff Ford Motor Company ("Ford"), pursuant to Rules 26 and 33 of the Rules

of the United States Court of Federal Claims, requests that Defendant the United States of

America ("Defendant") answer the following interrogatories separately and fully in writing

under oath.  Under Rules 26 and 33 of the Rules of the United States Court of Federal Claims,

the answers shall be returned to Plaintiff's attorney, Thomas D. Johnston, at the offices of

Shearman & Sterling LLP, 801 Pennsylvania Avenue NW, Suite 900, Washington, D.C. 20004,

on or before May 25, 2008.

## INSTRUCTIONS

1.    Each interrogatory shall be preceded by the interrogatory to which it

responds and shall be answered separately and fully in writing under oath, unless it is objected

to, in which event the reason(s) for the objection shall be stated in lieu of that portion of the

answer to which the objection applies.

1

2.    All interrogatory answers are to be signed by the person making them and all objections signed by the attorney making them under the standards set forth in Rule 33 of the Rules of the United States Court of Federal Claims.  No part of an interrogatory shall be left unanswered merely because an objection has been interposed to another part of that interrogatory.

3.    Where the answer to any interrogatory may be contained in a document, it will be sufficient to answer that interrogatory by identifying that document by bates-number.

4.    If any document responsive to any request is withheld on ground of privilege, the Defendant shall submit a schedule at the time of production pursuant to Rule 26(b)(5) of the Rules of the United States Court of Federal Claims setting forth for each document withheld the following information:  (a) the type of document (e.g., letter, memorandum, account statement, etc.);  (b) the date the document was prepared and the date of any meeting or conversation reflected or referred to in the document; (c) the name of each author, co-author, or preparer of the document; (d) the name of each recipient or addressee, including each recipient of a copy of the document; (e) if the document reflects or refers to a meeting or conversation, the name of each person who was present at or was a party to the meeting or conversation; (f) the subject matter of the information contained in the document; (g) the nature of the privilege or immunity asserted; and (h) a brief explanation of why the document is believed to be privileged or immune from production.

5.    Under Rule 26(e)(2) of the Rules of the United States Court of Federal Claims, the Defendant is required to supplement its interrogatory answers as additional information becomes available.

2

6.    Unless otherwise stated, the time period for these requests is 1996 to the present.

## DEFINITIONS

A.    "Answer" means Defendant's Answer filed in the United States Court of Federal Claims on January 9, 2008.

B.    "Any" includes the word "all" and "all" includes the word "any."

C.    "Code" means the Internal Revenue Code of 1986, as amended.

D.    "Complaint" means Plaintiff's Complaint filed in the United States Court of Federal Claims on September 10, 2007.

E.    "Document" and "documents" are used in their broadest possible sense within the meaning of Rule 34(a) of the Rules of the United States Court of Federal Claims and shall include, without limitation, any written, printed, typed, spoken, computerized, or other graphic, phonic, or recorded matter of any kind or nature, however produced or reproduced, whether sent or received or neither, including drafts and copies bearing notations or marks not found on the original.

F.    "Ford" means Ford Motor Company, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

G.    "IRS" means the Internal Revenue Service, a bureau of the United States Department of the Treasury, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

H.    "Identify" when referring to a document means to state: (1) the type or nature of document (e.g., letter, handwritten notes, memorandum, e-mail), or other means of identification of such document; (2) the date of each such document; (3) the author and addressee(s) of each

such document; (4) the recipient(s) of each such document, including each person to whom a copy was furnished; and (5) the present location or custodian of each such document.

I.    "Identify" when referring to a person or other entity means to state: (1) the full name of the person or entity; (2) the present residence or business address of the person or entity; (3) the telephone number of the person or entity; and (4) in the case of a natural person, the person's present or last known position of employment.

J.    "Include," "includes," and "including" shall be construed broadly and shall be construed to mean "without limitation."

K.    "Ratification Payments" means the payments made by Ford in connection with collective bargaining agreements ratified in 1996 and 1999, as further specified in the Complaint, including in paragraphs 20 and 22 thereof.

L.    "Refund Claims" means the claims filed by Ford for refunds of FICA taxes, as specified in paragraph 11 of the Complaint.

M.    "Relating to" shall mean associated with, connected to, relevant to, referring to, pertaining to, concerning, describing, depicting, evidencing, supporting, contradicting, constituting, mentioning, alluding to, consisting of, embodying, reflecting, identifying, touching on, bearing on, or being legally or factually connected in any way, directly or indirectly.

N.    "Treasury" means the United States Department of the Treasury.

O.    "You" or "your" shall refer to the Defendant.

P.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Request all responses that might otherwise be construed to be outside of its scope.

Q.    The use of the singular form of any word shall include the plural and vice versa.

4

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify the persons who considered, drafted, reviewed, revised, approved, or otherwise participated in the preparation and/or publication of Rev. Rul. 2004-109, 2004-2 C.B. 958, and all documents relating to the IRS's or Treasury's consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 2004-109.

**INTERROGATORY NO. 2:**

Identify the persons who discussed, evaluated, made, approved, reviewed, or otherwise participated in the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and consequently revoke Rev. Rul. 58-145, 1958-1 C.B. 360) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments, and all documents relating to the IRS's or Treasury's discussion, evaluation, making, approval, or review of, or other participation in, such decision.

**INTERROGATORY NO. 3:**

Identify the persons who discussed, evaluated, made, approved, reviewed, or otherwise participated in the IRS's decision to deny the Refund Claims and all documents regarding or reflecting the IRS's or Treasury's discussion, evaluation, making, approval or review of, or other participation in, such decision.

**INTERROGATORY NO. 4:**

Identify the persons who drafted, reviewed, revised, approved, or otherwise participated in the preparation and/or publication of the proposals included in President Clinton's Fiscal Year 2000 and 2001 Budgets to "subject signing bonuses to employment taxes," and all documents

relating to the drafting, review, revision, approval, preparation, and/or publication of such proposals.

**INTERROGATORY NO. 5:**

State and explain the rationale and reasoning underlying Rev. Rul. 2004-109 and the revocation of Rev. Rul. 58-145.

**INTERROGATORY NO. 6:**

State and explain the rationale and reasoning underlying the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments.

Dated:  April 25, 2008

Respectfully submitted,

Thomas D. Johnston
Counsel of Record
c/o Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, DC  20004
Telephone:  (202) 508-8022
Facsimile:  (202) 508-8100

Of Counsel:

Ian C. Friedman
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, DC  20004

Ronald A. Lang
Tami L. Lopez
Office of Tax Counsel
Ford Motor Company
The American Road
Dearborn, MI  48121

## CERTIFICATE OF SERVICE

Thomas D. Johnston, one of the attorneys for Plaintiff Ford Motor Company, certifies that, on April 25, 2008, he did cause a true and correct copy of the foregoing *Plaintiff Ford Motor Company's First Set of Interrogatories to the United States of America* to be served upon:

JASON BERGMANN
Trial Attorney
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-3425
Fax: (202) 514-6440
jason.bergmann@usdoj.gov

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

———————

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

———————

## PLAINTIFF FORD MOTOR COMPANY'S
## FIRST REQUEST FOR PRODUCTION TO THE UNITED STATES OF AMERICA

———————

Plaintiff Ford Motor Company ("Ford"), pursuant to Rules 26 and 34 of the Rules of the United States Court of Federal Claims, requests Defendant the United States of America ("Defendant") produce and permit the inspection and copying of the documents and things described below, on or before May 25, 2008, at the offices of Shearman & Sterling LLP, 801 Pennsylvania Avenue NW, Suite 900, Washington, D.C,. 20004 at 10 a.m. or at such other place, date, and time as may be mutually agreed upon, and continuing thereafter until examination and photocopying are complete.

## INSTRUCTIONS

1.    Pursuant to Rule 34(b) of the Rules of the United States Court of Federal Claims, the Defendant shall produce the requested documents as they are kept in the usual course

of business. Documents should be marked to indicate the identity of the individual party producing such documents.

2.     If any document responsive to any request is withheld on ground of privilege, the Defendant shall submit a schedule at the time of production pursuant to Rule 26(b)(5) of the Rules of the United States Court of Federal Claims setting forth for each document withheld the following information:   (a) the type of document (e.g., letter, memorandum, account statement, etc.);  (b) the date the document was prepared and the date of any meeting or conversation reflected or referred to in the document; (c) the name of each author, co-author, or preparer of the document; (d) the name of each recipient or addressee, including each recipient of a copy of the document; (e) if the document reflects or refers to a meeting or conversation, the name of each person who was present at or was a party to the meeting or conversation; (f) the subject matter of the information contained in the document; (g) the nature of the privilege or immunity asserted; and (h) a brief explanation of why the document is believed to be privileged or immune from production.

3.     Produce the originals of any document requested and all copies thereof if any copy is other than identical with the original.

4.     If, for any reason, any document to be produced pursuant to this Request has been destroyed, lost, or otherwise disposed of, state for each document the following information: (a) the date the document was lost, destroyed or disposed of; (b) all witnesses who have knowledge of the loss, destruction or disposal; (c) all documents which relate or refer to the loss, destruction, or disposal; and (d) the details concerning the loss of the document.

5.     Under Rule 26(e)(2) of the Rules of the United States Court of Federal Claims, the Defendant is required to supplement its responses and produce promptly any new or additional documents that may become available.

## TIME PERIOD

Unless otherwise stated in a request, the time period for these requests is 1996 to the present.

## DEFINITIONS

A.     "Answer" means Defendant's Answer filed in the United States Court of Federal Claims on January 9, 2008.

B.     "Any" includes the word "all" and "all" includes the word "any."

C.     "Code" means the Internal Revenue Code of 1986, as amended.

D.     "Complaint" means Plaintiff's Complaint filed in the United States Court of Federal Claims on September 10, 2007.

E.     "Document" and "documents" are used in their broadest possible sense within the meaning of Rule 34(a) of the Rules of the United States Court of Federal Claims and shall include, without limitation, any written, printed, typed, spoken, computerized, or other graphic, phonic, or recorded matter of any kind or nature, however produced or reproduced, whether sent or received or neither, including drafts and copies bearing notations or marks not found on the original.

F.     "Ford" means Ford Motor Company, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

3

G.    "IRS" means the Internal Revenue Service, a bureau of the United States Department of the Treasury, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

H.    "Identify" when referring to a document means to state: (1) the type or nature of document (e.g., letter, handwritten notes, memorandum, e-mail, etc.), or other means of identification of such document; (2) the date of each such document; (3) the author and addressee(s) of each such document; (4) the recipient(s) of each such document, including each person to whom a copy was furnished; and (5) the present location or custodian of each such document.

I.    "Identify" when referring to a person or other entity means to state: (1) the full name of the person or entity; (2) the present residence or business address of the person or entity; (3) the telephone number of the person or entity; and (4) in the case of a natural person, the person's present or last known position of employment.

J.    "Include," "includes," and "including" shall be construed broadly and shall be construed to mean "without limitation."

K.    "Ratification Payments" means the payments made by Ford in connection with collective bargaining agreements ratified in 1996 and 1999, as further specified in the Complaint, including in paragraphs 20 and 22 thereof.

L.    "Refund Claims" means the claims filed by Ford for refunds of FICA taxes, as specified in paragraph 11 of the Complaint.

M.    "Relating to" shall mean associated with, connected to, relevant to, referring to, pertaining to, concerning, describing, depicting, evidencing, supporting, contradicting, constituting, mentioning, alluding to, consisting of, embodying, reflecting,

identifying, touching on, bearing on, or being legally or factually connected in any way, directly or indirectly.

N.    "Treasury" means the United States Department of the Treasury.

O.    "You" or "your" shall refer to the Defendant.

P.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Request all responses that might otherwise be construed to be outside of its scope.

Q.    The use of the singular form of any word shall include the plural and vice versa.

## REQUESTS

### DOCUMENT REQUEST NO. 1:

All documents relating to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 2004-109, 2004-2 C.B. 958.

### DOCUMENT REQUEST NO. 2:

All documents relating to the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and consequently revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments.

### DOCUMENT REQUEST NO. 3:

For the time period dating from the publication of Rev. Rul. 58-145 to the date of its revocation, all documents relating to the IRS's and/or Treasury's examination, assessment, analysis, or consideration of the modification, revision, or revocation of Rev. Rul. 58-145.

**DOCUMENT REQUEST NO. 4:**

All documents relating to the drafting, review, revision, approval, preparation, and/or publication of the proposals included in President Clinton's Fiscal Year 2000 and 2001 Budgets to "subject signing bonuses to employment taxes."

**DOCUMENT REQUEST NO. 5:**

The IRS's administrative file relating to the review, evaluation, consideration, and denial of the Refund Claims.

**DOCUMENT REQUEST NO. 6:**

All documents constituting, relating to, or reflecting communications (a) within the IRS, (b) within Treasury, (c) between the IRS and Treasury, (d) between the IRS and/or Treasury and any other instrumentality of the United States, and (e) between the IRS and/or Treasury and any other party, with respect to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 2004-109, including the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments.

**DOCUMENT REQUEST NO. 7:**

All affidavits, declarations, or sworn statements you have prepared or obtained regarding facts alleged in the Complaint, defenses asserted in the Answer, or that are otherwise relevant to or discoverable in this action and the date of each such document.

## DOCUMENT REQUEST NO. 8:

To the extent not covered by the preceding requests, all documents responsive to any of Plaintiff's First Interrogatories to Defendant, or referred to in your responses to those interrogatories.

Dated: April 25, 2008

Respectfully submitted,

Thomas D. Johnston
Counsel of Record
c/o Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 508-8022
Facsimile: (202) 508-8100

Of Counsel:

Ian C. Friedman
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004

Ronald A. Lang
Tami L. Lopez
Office of Tax Counsel
Ford Motor Company
The American Road
Dearborn, MI 48121

## CERTIFICATE OF SERVICE

Thomas D. Johnston, one of the attorneys for Plaintiff Ford Motor Company, certifies that, on April 25, 2008, he did cause a true and correct copy of the foregoing *Plaintiff Ford Motor Company's First Request for Production to the United States of America* to be served upon:

JASON BERGMANN
Trial Attorney
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-3425
Fax: (202) 514-6440
jason.bergmann@usdoj.gov

3/

RECEIPT # 563222

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| General Motors Corporation and Saturn Corporation, | ) ) ) | **ORIGINAL** |
| Plaintiffs, | ) ) | Case: 2:07-cv-14464 Assigned To: Roberts, Victoria A Referral Judge: Pepe, Steven D Filed: 10-19-2007 At 03:20 PM CMP GENERAL MOTORS CORP, ET AL V USA (EW) |
| v. | ) ) | |
| United States of America, | ) ) | Demand for Jury Trial |
| Defendant. | ) ) | |

Attorneys for Plaintiffs:

Todd F. Maynes (IL Bar #6272725)
Natalie Hoyer Keller (IL Bar #6243228)
Pratibha J. Shenoy (IL Bar #6275909)
KIRKLAND & ELLIS LLP
200 E. Randolph Dr.
Chicago, IL 60601
Telephone: (312) 861-2000

Local Counsel:
David M. Davis (P24006)
HARDY, LEWIS & PAGE, P.C.
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
Telephone: (248) 645-0800

## **COMPLAINT**

On behalf of themselves and certain of their current and former employees, General

Motors Corporation ("General Motors") and Saturn Corporation ("Saturn") (collectively

"Plaintiffs" or "GM"), by their counsel, bring this action to recover $128,703,777 or such other

amount as is legally recoverable, plus applicable interest, which sum represents an amount improperly retained by the United States of America ("Defendant"). In support of this action, Plaintiffs allege as follows:

## NATURE OF CLAIM

1.    This action is brought to recover an overpayment of employer and employee Federal Insurance Contributions Act ("FICA") taxes (*i.e.*, Social Security and Medicare taxes) and applicable interest, paid by Plaintiffs and certain of Plaintiffs' current and former employees, pursuant to relevant provisions of the Internal Revenue Code of 1986, as amended (the "Code"), Title 26, United States Code. The FICA taxes relate to payments made by Plaintiffs to union-member employees upon ratification of collective bargaining agreements by the employees' respective unions. The time periods at issue are the fourth quarters of 1996, 1999 and 2003, and each quarter of 2000.

## PARTIES

2.    Plaintiff General Motors, E.I.N. 38-0572515, has its principal place of business at 300 Renaissance Center, Detroit, Michigan 48265-3000.

3.    Plaintiff Saturn, E.I.N. 38-2577506, a wholly owned subsidiary of General Motors, has its principal place of business at 300 Renaissance Center, Detroit, Michigan 48265-3000.

4.    The claims at issue for the Plaintiffs arise out of the same transaction or occurrence or series of transactions or occurrences, and common questions of law and/or fact will be determinative of the action.

5.      Additional parties to this suit, represented by Plaintiffs, are current and former union-member employees who received payments from GM as a result of their labor unions' ratification of certain collective bargaining agreements. GM withheld FICA taxes from the payments to the employees, and thus any refund granted by this Court would be apportioned as between GM and eligible current and former employees. The specific identities of eligible employees, and the amount of refund apportioned to each employee, will be determined following resolution of the legal issues in this suit, by obtaining consents from relevant employees pursuant to applicable Treasury Regulations. *See* Treas. Reg. § 31.6402(a)-2.

6.      Defendant is the United States of America.

## JURISDICTION

7.      Jurisdiction is conferred upon this Court by section 1346(a)(1) of Title 28, United States Code, and by sections 6413(b), 6532 and 7422 of the Code, 26 U.S.C. §§ 6413(b), 6532 and 7422.

## FACTS

### 1996, 1999 and 2003 Labor Union Negotiations and Agreements

8.      In late 1996, GM negotiated a tentative three-year national labor agreement (the "1996 Agreement") with hourly employees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). If ratified by the union membership, the 1996 Agreement required GM to make an upfront lump-sum payment of $2,000 to each union-member employee who was in a "specified status" with GM as of the effective date of the 1996 Agreement, *i.e.*, active status, protected status, temporary layoff status, various forms of short-term leave of absence, including sick leave

and military leave, or retirement effective as of October 1, 1996 or November 1, 1996 (a "specified status"). The 1996 Agreement was to be effective when ratified.

9.     During the negotiation process, union employees at several of GM's most profitable plants went on strike after the prior labor agreement expired on October 27, 1996. Protracted negotiations between GM and the UAW resulted in a tentative version of the 1996 Agreement in the last quarter of 1996, subject to ratification by the UAW's members.

10.     As an inducement to ratification and to secure a contract that would keep its facilities operating, GM agreed to make a lump-sum payment of $2,000 upon ratification of the 1996 Agreement to all union-member employees in a specified status, without regard to (i) whether the employee voted to ratify the 1996 Agreement (*i.e.*, it was paid to those who voted for or against ratification or did not vote at all), (ii) how long or at what rate of pay the employee had performed services for GM, and (iii) whether the employee continued in the future to perform services for GM.

11.     The only conditions for an employee to receive the lump-sum payment from GM were that (i) the 1996 Agreement be ratified, and (ii) the employee be in a specified status with GM as of the effective date of the 1996 Agreement. For example, an employee on temporary layoff status (a specified status) on the effective date of the 1996 Agreement would receive the payment even if the employee thereafter terminated his employment without performing any further services. In addition, an employee who retired as of October 1, 1996 (also a specified status) and who performed no further services after his retirement date would be entitled to the payment.

12.     The 1996 Agreement was ratified by the UAW membership and became effective on November 18, 1996. Pursuant to the 1996 Agreement, General Motors and Saturn paid $2,000 in the fourth quarter of 1996 to each union-member employee in a specified status on the effective date.

13.     General Motors and Saturn made similar payments in the fourth quarter of 1996 to hourly employees represented by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America ("IUE-CWA"), the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("United Steelworkers") and certain other unions, pursuant to collective bargaining agreements entered into with such unions.

14.     The 1996 Agreement expired at 11:59 p.m. on September 14, 1999. Prior to the expiration of the 1996 Agreement, strikes in the second quarter of 1998 at GM facilities had idled most of GM's production in North America. The 1999 negotiations, like the 1996 negotiations, were protracted and highly contested by negotiators for the UAW and GM.

15.     On September 29, 1999, the UAW and GM announced that a tentative four-year agreement had been reached. As an inducement to ratification, the 1999 national labor agreement (the "1999 Agreement") provided for an upfront lump-sum payment of $1,350 under terms and conditions identical in material part to the 1996 Agreement.

16.     The 1999 Agreement was ratified by the UAW membership and became effective as of October 18, 1999.

17.    Pursuant to the 1999 Agreement, in the fourth quarter of 1999 General Motors paid $1,350 to each union-member employee in a specified status. In the first quarter of 2000, Saturn paid $1,350 to each union-member employee in a specified status.

18.    General Motors and Saturn made similar payments in the fourth quarter of 1999 and the first quarter of 2000, respectively, to hourly employees represented by the IUE-CWA, the United Steelworkers and certain other unions, pursuant to collective bargaining agreements entered into with such unions. In addition, General Motors made similar payments to union-member employees during each quarter of 2000 in connection with the ratification of various local collective bargaining agreements.

19.    The 1999 Agreement expired at 11:59 p.m. on September 14, 2003. Negotiators for the UAW and GM began discussing a new agreement in July 2003, taking over two months to come to mutually satisfactory terms. On September 18, 2003, the UAW and GM announced that a tentative four-year agreement had been reached. GM was the last of the Big Three automakers to resolve its differences with the UAW and reach an agreement.

20.    Consistent with prior negotiations, as an inducement to ratification, the 2003 national labor agreement (the "2003 Agreement") provided for an upfront lump-sum payment of $3,000 under terms and conditions identical in material part to the 1996 Agreement and 1999 Agreement.

21.    The 2003 Agreement was ratified by the UAW membership and became effective on October 6, 2003. Pursuant to the 2003 Agreement, General Motors and Saturn paid $3,000 in the fourth quarter of 2003 to each union-member employee in a specified status.

22.     General Motors and Saturn made similar payments in the fourth quarter of 2003 to hourly employees represented by the IUE-CWA, the United Steelworkers and certain other unions, pursuant to collective bargaining agreements entered into with such unions.

### Nature of the Ratification Payments

23.     Unless otherwise specified, the 1996 Agreement, the 1999 Agreement and the 2003 Agreement, together with the corresponding local collective bargaining agreements and collective bargaining agreements entered into with the IUE-CWA, the United Steelworkers and certain other unions, are referred to collectively herein as the "Agreements." The payments by GM of $2,000 made pursuant to the 1996 Agreement, $1,350 made pursuant to the 1999 Agreement, and $3,000 made pursuant to the 2003 Agreement (together with the corresponding payments made pursuant to the local collective bargaining agreements and collective bargaining agreements entered into with the IUE-CWA, the United Steelworkers and certain other unions) are referred to collectively herein as the "Ratification Payments."

24.     The Ratification Payments were lump-sum payments conditioned solely on ratification of the relevant Agreement.

25.     The Ratification Payments were not predicated on continuing employment and were not contingent on the performance of future services by the employees.

26.     The Ratification Payments did not take into account seniority, job classification or any other factor of employment, and were paid without regard to whether an employee continued to work for GM for even one day after the date the relevant Agreement was ratified.  If the Agreement was ratified, that employee received the Ratification Payment for the relevant Agreement, whether or not that employee ever worked again for GM.

7

## GM's Refund Claims

27.     GM withheld and paid FICA taxes with respect to the Ratification Payments. If GM had not withheld FICA taxes, a risk existed that GM would be exposed to secondary liability if the Internal Revenue Service ("IRS") later determined that GM erroneously failed to withhold.

28.     Section 6402 of the Code provides for a refund of any overpaid internal revenue taxes, and Section 6413(b) of the Code specifically provides for a refund of overpaid FICA taxes.

29.     On or about April 14, 2000, GM timely filed refund claims for the FICA taxes paid with respect to the 1996 Ratification Payments. On or about December 6, 2001, GM timely filed refund claims for the FICA taxes paid with respect to the 1999 and 2000 Ratification Payments. On or about February 14, 2006, GM timely filed refund claims for the FICA taxes paid with respect to the 2003 Ratification Payments.

30.     As the basis for the claims for refund, the claims explained that the Ratification Payments were not predicated on continuing employment, and that the historic guidance published by the IRS in Revenue Ruling 58-145, 1958-1 C.B. 360, established that such payments were not wages subject to FICA taxes.

31.     The IRS ruled in Revenue Ruling 58-145 that a signing bonus paid to a baseball player for signing a contract, and "not predicated on continuing employment," was not wages. The IRS also held in that ruling that a signing bonus that was "dependent upon subsequent service by the player or upon his being retained by the club after a specified date" was considered wages.

32.     In July 2002, more than two years after GM filed its first refund claims,

the IRS stated in its Treasury Department-IRS Priority Guidance Plan for 2002-2003 that it

would consider "Guidance on the employment tax treatment of bonuses paid to employees on the

signing of a collectively bargained agreement." Representatives of GM and other automotive

companies met with IRS and Treasury Department officials in April 2003 to discuss the

guidance.

33.     On June 23, 2003, the IRS Examiner auditing GM's 1996 refund claims

proposed to disallow the claims.

34.     On September 17, 2003, GM filed a Protest seeking administrative review

of the Examiner's denial of the 1996 refund claims, on the basis that the Ratification Payments

were not predicated on continuing employment and that the IRS' historical guidance in Revenue

Ruling 58-145 provided that such payments were not subject to FICA taxes.

35.     In November 2004, the IRS retroactively revoked Revenue Ruling 58-145

when it issued Revenue Ruling 2004-109, 2004-2 C.B. 958. In Revenue Ruling 2004-109, the

IRS took the new position that bonuses paid to employees for signing or ratifying a contract were

wages unless "the employee provides clear, separate, and adequate consideration for the

employer's payment that is not dependent upon the employer-employee relationship." One of

the examples discussed in Revenue Ruling 2004-109 mirrors the facts of this case -- a payment

made by an employer to employees in connection with the ratification of a collectively bargained

union contract.

36.     The IRS stated that the new position announced in Revenue Ruling 2004-

109 would not apply to any signing bonus, sign-on fee, or similar amount paid to an employee in

connection with the employee's <u>initial</u> employment with the employer pursuant to a sign-on agreement or other contract entered into before January 12, 2005, if the amount were paid under facts and circumstances that were "substantially the same" as those in Revenue Ruling 58-145. In all other cases, Revenue Ruling 2004-109 was to be applied retroactively.

37.     On April 12, 2005, the IRS Examiner proposed to disallow GM's 1999 and 2000 refund claims.

38.     On May 11, 2005, GM filed a Protest seeking administrative review of the Examiner's denial of the 1999 and 2000 refund claims, on the basis that the Ratification Payments were not predicated on continuing employment and that the IRS' historical guidance in Revenue Ruling 58-145 provided that such payments were not subject to FICA taxes. As additional bases for this Protest, GM asserted that Revenue Ruling 2004-109 (i) was an incorrect interpretation of the law, (ii) was not entitled to deference, as it constituted the litigating position of the IRS in a pre-existing dispute, and (iii) constituted an abuse of discretion by the IRS due to its retroactive effect. GM also contended that, in any event, its facts were "substantially similar" to the facts in Revenue Ruling 58-145 in all material respects (thus meeting the carve-out in Revenue Ruling 2004-109), and accordingly the Ratification Payments should not be considered wages under the holdings of such rulings.

39.     On October 26, 2005, the IRS issued a statutory notice of claim disallowance with regard to GM's refund claims for the FICA taxes paid with respect to the 1996 Ratification Payments.

40.     On November 8, 2005, the IRS issued a statutory notice of claim disallowance with regard to GM's refund claims for the FICA taxes paid with respect to the 1999

and 2000 Ratification Payments.  On February 26, 2007, the IRS issued a 30-day letter disallowing GM's refund claims for the FICA taxes paid with respect to the 2003 Ratification Payments.  The IRS has not yet issued a statutory notice of claim disallowance with respect to such claims.

41.   This Complaint seeks a refund of the FICA taxes paid by GM and its employees in connection with the Ratification Payments made in 1996, 1999, 2000 and 2003, in an amount equal to $128,703,777, or such other amount as finally determined.

42.   This Complaint also seeks interest under Code § 6611 on the overpayment of FICA taxes.

43.   If the relief sought by Plaintiffs in this Complaint is granted by the Court, thousands of GM's current and former union-member employees will receive refunds of the employees' share of the FICA taxes withheld from the Ratification Payments.

## APPLICABLE LEGAL PRINCIPLES

### The Ratification Payments Are Not Wages for FICA Tax Purposes.

44.   Amounts paid by an employer to its employees are subject to FICA taxes only if such amounts are "wages."  Code §§ 3101, 3111.  The FICA tax statute defines the term "wages" as remuneration paid by an employer for the performance of services by an employee.  Code § 3121(a)-(b).

45.   The published position of the IRS for nearly 50 years was that payments made for signing a contract, and not predicated on continuing employment or the performance of future services, are not wages.  Rev. Rul. 58-145.  This position is entirely consistent with the statutory definition of wages for FICA tax purposes.

11

46. The Ratification Payments were conditioned solely on ratification of the Agreements and the employees being in a specified status as of the date of ratification. For example, an employee on temporary layoff status (a specified status) on the date an Agreement was ratified would still be entitled to the Ratification Payment related to that Agreement, even if he terminated his employment immediately after the effective date (the ratification date) and never again performed services for GM.

47. The Ratification Payments were not predicated on continuing employment and were not contingent on the performance of future services by the union-member employees.

48. The employees received the Ratification Payments in their capacity as members of the unions, not in their capacity as employees.

49. Because the Ratification Payments were not remuneration for the performance of services, the payments are not wages and thus are not subject to FICA taxes under the plain language of the FICA tax statute and the long-standing IRS guidance interpreting the term wages.

### The Defendant Has Twice Failed to Obtain Legislation Overturning Revenue Ruling 58-145

50. In connection with President Clinton's Fiscal Year 2000 and 2001 Budgets, Defendant sought to overturn Revenue Ruling 58-145. Both of these attempts failed.

51. On February 1, 1999, President Clinton's Fiscal Year 2000 Budget included a proposal to "subject signing bonuses to employment taxes." The Joint Committee on Taxation issued an explanation of the proposal on February 22, 1999, stating that "under present law," specifically, Revenue Ruling 58-145, a bonus paid for signing a contract did not constitute wages if the bonus was not "contingent upon the performance of future services." The proposal

-- which "would provide that signing bonuses are subject to income tax withholding and are included in the definition of wages for FICA and FUTA purposes" and "would apply without regard to whether the signing bonus is conditioned upon the performance of services by the recipient" -- did not become law.

52. On February 7, 2000, President Clinton's Fiscal Year 2001 Budget was issued, containing the same proposal. The proposal did not become law.

53. The Joint Committee and Treasury explanations of the Fiscal Year 2000 and 2001 Budgets stated that the proposal to subject signing bonuses to FICA taxes would apply only to "signing bonuses paid after the date of enactment."

54. Significantly, Defendant expressed its view in the explanations that Revenue Ruling 58-145 was the prevailing law of the land. Defendant also expressed its intention to apply any change only prospectively, thus implying that taxpayers were entitled to rely on Revenue Ruling 58-145 until and unless it was overturned.

> Revenue Ruling 2004-109 Is Not Entitled to Deference Because it
> Is Inconsistent with the Statutory Definition of Wages and Was
> Issued While GM's Refund Claims Were Pending with the IRS

55. The IRS issued Revenue Ruling 2004-109 nearly five years after GM filed its first refund claims, and more than one year after the IRS Examiner proposed to disallow GM's refund claims related to the 1996 Ratification Payments. Moreover, Revenue Ruling 2004-109 was issued only after two previous attempts to legislatively overturn Revenue Ruling 58-145 had failed.

56. At the time it set forth its new position in Revenue Ruling 2004-109, the IRS had met with GM and other automotive companies that were relying on the long-standing

IRS precedent set forth in Revenue Ruling 58-145, and the IRS had full knowledge of the position such taxpayers had taken.

57.     The IRS cited no authority in Revenue Ruling 2004-109 for its new, overly broad interpretation of the term "wages," and its only explanation for revoking Revenue Ruling 58-145 was that the ruling "failed to apply the correct definition of wages and [failed] to consider whether the [signing] bonus was paid in connection with establishing the employer-employee relationship."

58.     The deference accorded a revenue ruling is based on "the thoroughness evident in [the ruling's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Office Max, Inc. v. United States, 428 F.3d 583, 595 (6th Cir. 2005) (internal citations omitted). A "revenue ruling issued at a time when the IRS is preparing to litigate is often self-serving and not generally entitled to deference by the courts." AMP v. United States, 185 F.3d 1333, 1338-39 (Fed. Cir. 1999).

59.     Revenue Ruling 2004-109 lacks any power to persuade because it is inconsistent with the statutory definition of wages and is inconsistent with nearly 50 years of established IRS precedent.   In addition, the ruling was issued when the IRS reasonably anticipated litigation with taxpayers -- including GM -- who relied on Revenue Ruling 58-145 to govern the tax treatment of payments to their employees. For these reasons, Revenue Ruling 2004-109 should be viewed as merely the IRS' litigating position and should not be accorded deference.

60.    In any event, GM's facts are "substantially similar" to the facts in Revenue Ruling 58-145 in all material respects (thus meeting the carve-out under Revenue Ruling 2004-109), and accordingly the Ratification Payments should not be considered wages under the holdings of such rulings.

### The IRS Abused its Discretion by Applying Revenue Ruling 2004-109 Retroactively in Certain Cases

61.    Regardless of whether Revenue Ruling 2004-109 is a correct interpretation of the law (which it is not), the IRS abused its discretion under Section 7805(b) of the Code by making the ruling retroactive in certain cases.

62.    The IRS's own regulations provide that "[w]here Revenue Rulings revoke or modify rulings previously published in the Bulletin the authority of section 7805(b) of the Code ordinarily is invoked to provide that the new rulings will not be applied retroactively to the extent that the new rulings have adverse tax consequences to taxpayers." Treas. Reg. § 601.601(d)(2)(v)(c) (emphasis added).

63.    In determining whether the IRS has abused its discretion under Section 7805(b), courts consider, among other things, whether retroactive application alters settled law that was justifiably relied on by taxpayers and whether retroactivity creates a distinction between taxpayers that has no rational basis.

64.    Revenue Ruling 58-145, which had been outstanding for nearly 50 years when the IRS retroactively revoked it, had essentially acquired the force and effect of law. See United States v. Cleveland Indians Baseball, 532 U.S. 200, 219 (2001) ("Treasury regulations and interpretations long continued without substantial change, applying to unamended or

substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." (internal quotations omitted)). GM justifiably relied on the ruling in concluding that the Ratification Payments were not wages subject to FICA taxes. Accordingly, the IRS' retroactive revocation of Revenue Ruling 58-145, which completely reversed settled law, constituted an abuse of discretion.

65. The IRS also abused its discretion by applying Revenue Ruling 2004-109 prospectively as to certain taxpayers and retroactively as to other taxpayers, including GM. The IRS' basis for this distinction -- whether the contract at issue was the <u>initial</u> contract -- is a non-material fact that has no bearing on the legal analysis, and thus has no rational basis. Indeed, this distinction has been implicitly rejected by the IRS in prior administrative pronouncements.

66. In effect, the IRS discriminatorily targeted GM (and other automotive companies) for retroactive application of Revenue Ruling 2004-109 at a time when its refund claims were pending with the IRS, thus treating GM (and other automotive companies) differently from similarly situated taxpayers. The IRS' specific application of retroactivity in this case constitutes an abuse of discretion.

<u>COUNT ONE – GENERAL MOTORS: FOURTH QUARTER</u>
<u>1996</u>

67. The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

68. On or before January 31, 1997, General Motors timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended December 31, 1996.

16

69.     General Motors timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended December 31, 1996.

70.     On or about April 14, 2000, General Motors timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended December 31, 1996.

71.     By letter dated October 26, 2005, the IRS disallowed the claim in full.

72.     Based on its most current calculations, General Motors and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended December 31, 1996 in the amount of $56,023,780. General Motors and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

73.     The IRS erroneously failed to allow General Motors' claim for refund and failed to pay the overpayment of FICA tax in the amount of $56,023,780, or such other amount as finally determined.

## COUNT TWO – GENERAL MOTORS: FOURTH QUARTER 1999

74.     The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

75.     On or before January 31, 2000, General Motors timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended December 31, 1999.

76.     General Motors timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended December 31, 1999.

77.    On or about December 6, 2001, General Motors timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended December 31, 1999.

78.    By letter dated November 8, 2005, the IRS disallowed the claim in full.

79.    Based on its most current calculations, General Motors and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended December 31, 1999 in the amount of $23,165,144.  General Motors and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

80.    The IRS erroneously failed to allow General Motors' claim for refund and failed to pay the overpayment of FICA tax in the amount of $23,165,144, or such other amount as finally determined.

### COUNT THREE – GENERAL MOTORS: FIRST QUARTER 2000

81.    The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

82.    On or before April 30, 2000, General Motors timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended March 31, 2000.

83.    General Motors timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended March 31, 2000.

84.    On or about December 6, 2001, General Motors timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes

estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended March 31, 2000.

85. By letter dated November 8, 2005, the IRS disallowed the claim in full.

86. Based on its most current calculations, General Motors and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended March 31, 2000 in the amount of $26,701. General Motors and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

87. The IRS erroneously failed to allow General Motors' claim for refund and failed to pay the overpayment of FICA tax in the amount of $26,701, or such other amount as finally determined.

<u>COUNT FOUR – GENERAL MOTORS: SECOND QUARTER</u>
<u>2000</u>

88. The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

89. On or before July 31, 2000, General Motors timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended June 30, 2000.

90. General Motors timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended June 30, 2000.

91. On or about December 6, 2001, General Motors timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended June 30, 2000.

92.   By letter dated November 8, 2005, the IRS disallowed the claim in full.

93.   Based on its most current calculations, General Motors and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended June 30, 2000 in the amount of $26,701. General Motors and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

94.   The IRS erroneously failed to allow General Motors' claim for refund and failed to pay the overpayment of FICA tax in the amount of $26,701, or such other amount as finally determined.

### COUNT FIVE – GENERAL MOTORS: THIRD QUARTER 2000

95.   The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

96.   On or before October 31, 2000, General Motors timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended September 30, 2000.

97.   General Motors timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended September 30, 2000.

98.   On or about December 6, 2001, General Motors timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended September 30, 2000.

99.   By letter dated November 8, 2005, the IRS disallowed the claim in full.

100.    Based on its most current calculations, General Motors and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended September 30, 2000 in the amount of $26,702. General Motors and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

101.    The IRS erroneously failed to allow General Motors' claim for refund and failed to pay the overpayment of FICA tax in the amount of $26,702, or such other amount as finally determined.

### COUNT SIX – GENERAL MOTORS: FOURTH QUARTER 2000

102.    The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

103.    On or before January 31, 2001, General Motors timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended December 31, 2000.

104.    General Motors timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended December 31, 2000.

105.    On or about December 6, 2001, General Motors timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended December 31, 2000.

106.    By letter dated November 8, 2005, the IRS disallowed the claim in full.

107. Based on its most current calculations, General Motors and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended December 31, 2000 in the amount of $26,702. General Motors and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

108. The IRS erroneously failed to allow General Motors' claim for refund and failed to pay the overpayment of FICA tax in the amount of $26,702, or such other amount as finally determined.

## COUNT SEVEN – GENERAL MOTORS: FOURTH QUARTER 2003

109. The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

110. On or before January 31, 2004, General Motors timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended December 31, 2003.

111. General Motors timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended December 31, 2003.

112. On or about February 14, 2006, General Motors timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended December 31, 2003.

113. In a 30-day letter dated February 26, 2007, the IRS disallowed the claim in full.

114. Based on its most current calculations, General Motors and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended December 31, 2003 in the amount of $45,081,547. General Motors and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

115. The IRS erroneously failed to allow General Motors' claim for refund and failed to pay the overpayment of FICA tax in the amount of $45,081,547, or such other amount as finally determined.

COUNT EIGHT – SATURN: FOURTH QUARTER 1996

116. The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

117. On or before January 31, 1997, Saturn timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended December 31, 1996.

118. Saturn timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended December 31, 1996.

119. On or about April 14, 2000, Saturn timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended December 31, 1996.

120. By letter dated October 26, 2005, the IRS disallowed the claim in full.

121. Based on its most current calculations, Saturn and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended

December 31, 1996 in the amount of $972,066. Saturn and its employees are entitled to a refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

122. The IRS erroneously failed to allow Saturn's claim for refund and failed to pay the overpayment of FICA tax in the amount of $972,066, or such other amount as finally determined.

## COUNT NINE – SATURN: FIRST QUARTER 2000

123. The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

124. On or before April 30, 2000, Saturn timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended March 31, 2000.

125. Saturn timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended March 31, 2000.

126. On or about December 6, 2001, Saturn timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended March 31, 2000.

127. By letter dated November 8, 2005, the IRS disallowed the claim in full.

128. Based on its most current calculations, Saturn and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended March 31, 2000 in the amount of $1,154,702. Saturn and its employees are entitled to a refund

24

and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

129.    The IRS erroneously failed to allow Saturn's claim for refund and failed to pay the overpayment of FICA tax in the amount of $1,154,702, or such other amount as finally determined.

## COUNT TEN – SATURN: FOURTH QUARTER 2003

130.    The foregoing paragraphs are hereby incorporated by reference as though set forth fully herein.

131.    On or before January 31, 2004, Saturn timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ended December 31, 2003.

132.    Saturn timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ended December 31, 2003.

133.    On or about February 14, 2006, Saturn timely filed Form 843, Claim for Refund and Request for Abatement, in which it requested a refund of FICA taxes estimated at the time to be overpaid, "or such other amount as finally determined," for the calendar quarter ended December 31, 2003.

134.    In a 30-day letter dated February 26, 2007, the IRS disallowed the claim in full.

135.    Based on its most current calculations, Saturn and its employees have overpaid FICA taxes in connection with the Ratification Payments for the calendar quarter ended December 31, 2003 in the amount of $2,199,732. Saturn and its employees are entitled to a

25

refund and abatement of such taxes, or such other amount as finally determined, and any interest as provided by law.

136. The IRS erroneously failed to allow Saturn's claim for refund and failed to pay the overpayment of FICA tax in the amount of $2,199,732, or such other amount as finally determined.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs hereby demand a jury trial on each count and pray that the Court enter an order and final judgment for each Plaintiff against the Defendant as to each count as follows:

**For General Motors Corporation:**

On Count One: the amount of $56,023,780, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Two: the amount of $23,165,144, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Three: the amount of $26,701, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Four: the amount of $26,701, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Five: the amount of $26,702, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Six: the amount of $26,702, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Seven:  the amount of $45,081,547, or such other amount as may be legally refundable, plus interest as provided by law;

**For Saturn Corporation**:

On Count Eight:  the amount of $972,066, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Nine:  the amount of $1,154,702, or such other amount as may be legally refundable, plus interest as provided by law;

On Count Ten:  the amount of $2,199,732, or such other amount as may be legally refundable, plus interest as provided by law;

And as to all Counts: attorneys' fees, costs, applicable interest and such further

relief as the Court may deem appropriate.

DATED:  October 19 , 2007                    Respectfully submitted,

_____

Todd F. Maynes (IL Bar #6272725)

_____

Natalie Hoyer Keller (IL Bar #6243228)

_____

Pratibha J. Shenoy (IL Bar #6275909)

KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

*Local Counsel*:

_____

David M. Davis (MI Bar #P24006)
HARDY, LEWIS & PAGE, P.C.
401 S. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
Telephone: (248) 645-0800
Facsimile: (248) 645-2602

₳JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

County in which this action arose   Wayne

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
GENERAL MOTORS CORPORATION
SATURN CORPORATION

**DEFENDANTS**
UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff   Wayne
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Todd F. Maynes, Kirkland & Ellis LLP, 200 E. Randolph Dr., Chicago, IL 60601
(312.861.2000).   Local Counsel: David M. Davis, Hardy, Lewis & Page, 401 S. Old
Woodward Ave., Suite 400, Birmingham, MI 48009 (248.645.0800). (See Attachment).

Attorneys (If Known)

Case: 2:07-cv-14464
Assigned To: Roberts, Victoria A
Referral Judge: Pepe, Steven D
Filed: 10-19-2007 At 03:20 PM
CMP GENERAL MOTORS CORP, ET AL V USA (EW)

## II. BASIS OF JURISDICTION   (Select One Box Only)

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☐ 3   Federal Question (U.S. Government Not a Party) |
| Ⓧ 2   U.S. Government Defendant | ☐ 4   Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITI (F

| | PTF | DEF |
|---|---|---|
| Citizen | | ☐ 4 |
| Citizen or | | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 Foreign Nation ☐ 6 ☐ 6 |

## IV. NATURE OF SUIT (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | Ⓧ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Select One Box Only)

| | | | | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|
| Ⓧ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation | ☐ 7 |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
26 U.S.C. Secs. 6532 and 7422.
Brief description of cause:
Civil action by taxpayer for recovery of internal revenue tax.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $   128,703,777
CHECK YES only if demanded in complaint:
JURY DEMAND:   Ⓧ YES   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   October 19, 2007

SIGNATURE OF ATTORNEY OF RECORD   Todd F. Maynes

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?      ☐ Yes  ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which    ☐ Yes  ☑ No
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

# ATTACHMENT TO CIVIL COVER SHEET

(General Motors Corporation and Saturn Corporation v. United States of America)

Additional Attorneys for Plaintiffs:

Natalie Hoyer Keller
Pratibha J. Shenoy
KIRKLAND & ELLIS LLP
200 E. Randolph Dr.
Chicago, IL 60601
(312.861.2000)

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Natalie Hoyer Keller
To Call Writer Directly:
312 861-2229
nkeller@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200

April 15, 2008

**By Electronic Mail**
**Original to Follow by Express Mail**

Jason Bergmann, Esq.
Trial Attorney
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

> **Re:**   **Plaintiffs' First Discovery Requests in <u>General Motors Corp. and
> Saturn Corp. v. United States</u>, No. 2:07-cv-14464 (E.D. Mich. filed
> Oct. 19, 2007)**

Dear Mr. Bergmann:

Enclosed please find Plaintiffs General Motors Corporation's and Saturn Corporation's First Request for Production and First Set of Interrogatories to the United States of America.

Please do not hesitate to contact me should you have any questions.

Very truly yours,

*Natalie Hoyer Keller /KAD*

Natalie Hoyer Keller

enclosures

Hong Kong    London    Los Angeles    Munich    New York    San Francisco    Washington, D.C.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| General Motors Corporation and Saturn Corporation, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:07-cv-14464 |
| v. | ) ) | Judge Victoria A. Roberts |
| United States of America, | ) ) | Magistrate Judge Steven D. Pepe |
| Defendant. | ) ) | |

### PLAINTIFFS GENERAL MOTORS CORPORATION'S
### AND SATURN CORPORATION'S
### FIRST REQUEST FOR PRODUCTION TO THE UNITED STATES OF AMERICA

Plaintiffs General Motors Corporation ("General Motors") and Saturn Corporation ("Saturn," and together with General Motors, "GM") serve the following requests for production upon Defendant the United States of America ("Defendant"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, subject to the following instructions and definitions.

### INSTRUCTIONS

1.    Documents should be produced on or before May 15, 2008, at the offices of Kirkland & Ellis LLP, 200 East Randolph, Chicago, IL 60601.

2.    With respect to any documents withheld on a claim of attorney/client privilege, attorney work product privilege, or any other privilege, provide an express statement of the privilege that describes the nature of the documents, information, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable GM to assess the applicability of the privilege or protection. Specifically, provide a privilege log identifying each such document for which the privilege is claimed together with the

following information: (a) the date of the document; (b) the name of its author(s) and/or preparer(s) and an identification by employment and title of each such person; (c) the name of each person who was sent or furnished with the document, together with an identification of such person; (d) a brief description of the document; and (e) a statement of the basis for the claim of privilege. In the case of privileged documents relating to meetings or to other conversations, all participants in the meeting or conversation are to be identified.

3.    Unless otherwise stated, the time period for these requests is 1996 to the present.

## DEFINITIONS

A.    "Answer" means Defendant's Answer filed in this action.

B.    "Code" means the Internal Revenue Code of 1986, as amended.

C.    "Complaint" means Plaintiffs' Complaint, filed by GM in this action.

D.    "Document" has the same meaning as that term is used in Fed. R. Civ. P. 34. Without limitation, the term "document" expressly encompasses every non-identical copy of a document, and documents in electronic form.

E.    "GM" means, collectively, General Motors and Saturn and their respective employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on their behalf.

F.    "General Motors" means General Motors Corporation, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

G.    "IRS" means the Internal Revenue Service, a bureau of the United States Department of the Treasury, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

2

H.    "Identify" when referring to a document means to state: (1) the type or nature of document (e.g., letter, handwritten notes, memo, e-mail), or other means of identification of such document; (2) the date of each such document; (3) the author and addressee(s) of each such document; (4) the recipient(s) of each such document, including each person to whom a copy was furnished; and (5) the present location or custodian of each such document.

I.    "Identify" when referring to a person or other entity means to state:  (1) the full name of the person or entity; (2) the present residence or business address of the person or entity; (3) the telephone number of the person or entity; and (4) in the case of a natural person, the person's present or last known position of employment.

J.    "Ratification Payments" means the payments made by GM in connection with collective bargaining agreements ratified in 1996, 1999, 2000 and 2003, as further specified in the Complaint, including in paragraph 23 thereof.

K.    "Refund Claims" means the claims filed by GM for refunds of FICA taxes, as specified in paragraph 29 of the Complaint.

L.    "Saturn" means Saturn Corporation, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

M.    "Treasury" means the United States Department of the Treasury.

## REQUESTS

## DOCUMENT REQUEST NO. 1:

All documents relating to the drafting, review, revision, approval, preparation and/or publication of Rev. Rul. 2004-109, 2004-2 C.B. 958.

**DOCUMENT REQUEST NO. 2:**

All documents relating to the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and consequently revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments.

**DOCUMENT REQUEST NO. 3:**

For the time period dating from the publication of Rev. Rul. 58-145 to the date of its revocation, all documents relating to the IRS's and/or Treasury's examination, assessment, analysis or consideration of the modification, revision or revocation of Rev. Rul. 58-145.

**DOCUMENT REQUEST NO. 4:**

All documents relating to the drafting, review, revision, approval, preparation and/or publication of the proposals included in President Clinton's Fiscal Year 2000 and 2001 Budgets to "subject signing bonuses to employment taxes."

**DOCUMENT REQUEST NO. 5:**

The IRS's administrative file relating to the review, evaluation, consideration and denial of the Refund Claims.

**DOCUMENT REQUEST NO. 6:**

All documents constituting, relating to or reflecting communications (a) within the IRS, (b) within Treasury, (c) between the IRS and Treasury, (d) between the IRS and/or Treasury and any other instrumentality of the United States and (e) between the IRS and/or Treasury and any other party, with respect to the drafting, review, revision, approval, preparation and/or publication of Rev. Rul. 2004-109, including the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or

similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments.

## DOCUMENT REQUEST NO. 7:

All affidavits, declarations or sworn statements you have prepared or obtained regarding facts alleged in the Complaint, defenses asserted in the Answer, or that are otherwise relevant to or discoverable in this action and the date of each such document.

## DOCUMENT REQUEST NO. 8:

To the extent not covered by the preceding requests, all documents responsive to any of Plaintiffs' First Interrogatories to Defendant, or referred to in your responses to those interrogatories.

Dated: April 15, 2008

Respectfully submitted,

Todd F. Maynes, P.C.
Natalie Hoyer Keller
Thomas J. Morel
Pratibha J. Shenoy
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601-6636
Telephone: 312-861-2000
Facsimile: 312-861-2200

David M. Davis (MI Bar #P24006)
HARDY, LEWIS & PAGE, P.C.
401 S. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
Telephone: (248) 645-0800
Facsimile: (248) 645-2602

*Attorneys for Plaintiffs*
*General Motors Corporation and*
*Saturn Corporation*

5

## CERTIFICATE OF SERVICE

Todd F. Maynes, one of the attorneys for Plaintiffs General Motors Corporation and Saturn Corporation, certifies that, on April 15, 2008, he did cause a true and correct copy of the foregoing *Plaintiffs General Motors Corporation's and Saturn Corporation's First Request for Production to the United States of America* to be served upon:

> JASON BERGMANN
> Trial Attorney
> U.S. Department of Justice, Tax Division
> Post Office Box 26
> Ben Franklin Station
> Washington, D.C. 20044
> Tel: (202) 616-3425
> Fax: (202) 514-6440
> jason.bergmann@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| General Motors Corporation and Saturn Corporation, | ) ) ) | |
| Plaintiffs, | ) ) | No.  2:07-cv-14464 |
| v. | ) ) | Judge Victoria A. Roberts |
| United States of America, | ) ) | Magistrate Judge Steven D. Pepe |
| Defendant. | ) ) | |

## PLAINTIFFS GENERAL MOTORS CORPORATION'S
## AND SATURN CORPORATION'S
## FIRST SET OF INTERROGATORIES TO THE UNITED STATES OF AMERICA

Plaintiffs General Motors Corporation ("General Motors") and Saturn Corporation ("Saturn," and together with General Motors, "GM") serve the following interrogatories upon Defendant, the United States of America ("Defendant"), pursuant to Rule 33 of the Federal Rules of Civil Procedure, subject to the following instructions and definitions.

## INSTRUCTIONS

1.    Responses should be provided on or before May 15, 2008, at the offices of Kirkland & Ellis LLP, 200 East Randolph, Chicago, IL 60601.

2.    With respect to any information withheld on a claim of attorney/client privilege, attorney work product privilege, or any other privilege, provide an express statement of the privilege that describes the nature of the documents, information, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable GM to assess the applicability of the privilege or protection.  To the extent you withhold documents related to the interrogatories set forth herein, provide a privilege log identifying each

such document for which the privilege is claimed together with the following information: (a) the date of the document; (b) the name of its author(s) and/or preparer(s) and an identification by employment and title of each such person; (c) the name of each person who was sent or furnished with the document, together with an identification of such person; (d) a brief description of the document; and (e) a statement of the basis for the claim of privilege. In the case of privileged documents relating to meetings or to other conversations, all participants in the meeting or conversation are to be identified.

3.    Unless otherwise stated, the time period for these requests is 1996 to the present.

4.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

5.    The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

6.    The term "including" does not limit the response to the interrogatory.

7.    The terms "relating to" or "relative to" mean, in whole or in part, constituting, containing, embodying, reflecting, identifying, stating, referring to, dealing with, or in any way pertaining to.

8.    Where any interrogatory set forth below cannot be answered in full, state, in detail, the reasons for your inability to answer.

## DEFINITIONS

A.    "Code" means the Internal Revenue Code of 1986, as amended.

B.    "Complaint" means Plaintiffs' Complaint, filed by GM in this action.

2

C.    "Document" has the same meaning as that term is used in Fed. R. Civ. P. 34. Without limitation, the term "document" expressly encompasses every non-identical copy of a document, and documents in electronic form.

D.    "GM" means, collectively, General Motors and Saturn and their respective employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on their behalf.

E.    "General Motors" means General Motors Corporation, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

F.    "IRS" means the Internal Revenue Service, a bureau of the United States Department of the Treasury, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

G.    "Identify" when referring to a document means to state: (1) the type or nature of document (e.g., letter, handwritten notes, memo, e-mail), or other means of identification of such document; (2) the date of each such document; (3) the author and addressee(s) of each such document; (4) the recipient(s) of each such document, including each person to whom a copy was furnished; and (5) the present location or custodian of each such document.

H.    "Identify" when referring to a person or other entity means to state:  (1) the full name of the person or entity; (2) the present residence or business address of the person or entity; (3) the telephone number of the person or entity; and (4) in the case of a natural person, the person's present or last known position of employment.

I.    "Ratification Payments" means the payments made by GM in connection with collective bargaining agreements ratified in 1996, 1999, 2000 and 2003, as further specified in the Complaint, including in paragraph 23 thereof.

J.    "Refund Claims" means the claims filed by GM for refunds of FICA taxes, as specified in paragraph 29 of the Complaint.

K.    "Saturn" means Saturn Corporation, and its employees, agents, representatives, attorneys, officers, independent contractors, and/or anyone otherwise acting on its behalf.

L.    "Treasury" means the United States Department of the Treasury.


## INTERROGATORIES

## INTERROGATORY NO. 1:

Identify the persons who drafted, reviewed, revised, approved or otherwise participated in the preparation and/or publication of Rev. Rul. 2004-109, 2004-2 C.B. 958, and all documents relating to the IRS's or Treasury's drafting, review, revision, approval, preparation and/or publication of Rev. Rul. 2004-109.

## INTERROGATORY NO. 2:

Identify the persons who discussed, evaluated, made, approved, reviewed or otherwise participated in the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and consequently revoke Rev. Rul. 58-145, 1958-1 C.B. 360) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments, and all documents relating to the IRS's or Treasury's discussion, evaluation, making, approval or review of, or other participation in, such decision.

4

**INTERROGATORY NO. 3:**

Identify the persons who discussed, evaluated, made, approved, reviewed or otherwise participated in the IRS's decision to deny the Refund Claims and all documents regarding or reflecting the IRS's or Treasury's discussion, evaluation, making, approval or review of, or other participation in, such decision.

**INTERROGATORY NO. 4:**

Identify all communications (a) within the IRS, (b) within Treasury, (c) between the IRS and Treasury, (d) between the IRS and/or Treasury and any other instrumentality of the United States and (e) between the IRS and/or Treasury and any other party, with respect to the drafting, review, revision, approval, preparation and/or publication of Rev. Rul. 2004-109, including the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments, including in your response the documents reflecting those communications or upon which you rely to support your response.

**INTERROGATORY NO. 5:**

For the time period dating from the publication of Rev. Rul. 58-145 to the date of its revocation, identify all communications (a) within the IRS, (b) within Treasury, (c) between the IRS and Treasury, (d) between the IRS and/or Treasury and any other instrumentality of the United States and (e) between the IRS and/or Treasury and any other party, relating to the examination, assessment, analysis or consideration of the modification, revision or revocation of Rev. Rul. 58-145, including in your response the documents reflecting those communications or upon which you rely to support your response.

**INTERROGATORY NO. 6:**

Identify the persons who drafted, reviewed, revised, approved or otherwise participated in the preparation and/or publication of the proposals included in President Clinton's Fiscal Year 2000 and 2001 Budgets to "subject signing bonuses to employment taxes," and all documents relating to the drafting, review, revision, approval, preparation and/or publication of such proposals.

**INTERROGATORY NO. 7:**

State and explain the rationale and reasoning underlying Rev. Rul. 2004-109 and the revocation of Rev. Rul. 58-145.

**INTERROGATORY NO. 8:**

State and explain the rationale and reasoning underlying the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments.

Dated: April 15, 2008

Respectfully submitted,

Todd F. Maynes, P.C.
Natalie Hoyer Keller
Thomas J. Morel
Pratibha J. Shenoy
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601-6636
Telephone: 312-861-2000
Facsimile: 312-861-2200

6

David M. Davis (MI Bar #P24006)
HARDY, LEWIS & PAGE, P.C.
401 S. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
Telephone: (248) 645-0800
Facsimile: (248) 645-2602

*Attorneys for Plaintiffs*
*General Motors Corporation and*
*Saturn Corporation*

## **CERTIFICATE OF SERVICE**

Todd F. Maynes, one of the attorneys for Plaintiffs General Motors Corporation and Saturn Corporation, certifies that, on April 15, 2008, he did cause a true and correct copy of the foregoing *Plaintiffs General Motors Corporation's and Saturn Corporation's First Set of Interrogatories to the United States of America* to be served upon:

> JASON BERGMANN
> Trial Attorney
> U.S. Department of Justice, Tax Division
> Post Office Box 26
> Ben Franklin Station
> Washington, D.C. 20044
> Tel: (202) 616-3425
> Fax: (202) 514-6440
> jason.bergmann@usdoj.gov



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

APR 1 3 2006

Jennifer B. Molnar
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006-4078

Re: Control Number 52-2005-00735

Dear Ms. Molnar:

This is in final response to your August 29, 2005, Freedom of Information Act (FOIA) received in our office on September 1, 2005, seeking the background file documents for Revenue Ruling 2004-109.

Enclosed are 32 pages of documents that are being released to you in reference to Revenue Ruling 2004-109. The deleted information is being withheld in accordance with subsection 5 U.S.C. 552(b)(3) and (b)(5) of the Freedom of Information Act (FOIA). The documents contain material of a predecisional and deliberative nature and taxpayer identifiers.

One hundred forty-eight pages are being withheld in their entirety in accordance with subsection (b)(5) and two pages are being withheld in their entirety in accordance with subsection (b)(3) of the FOIA. These documents contain internal documents that contain material of a predecisional and deliberative nature and taxpayer identifiers.

Enclosed is Notice 393, which describes the exemption asserted and provides information concerning your appeal rights.

Since you fall in the category of "commercial use requester", the chargeable fees are record searches at $17.00 per hour or fraction thereof, review of records at $21.00 per hour or fraction thereof and duplication cost at $.20 per page. Three hours search and twenty hours review were expended for the enclosed records.

We will await your payment of $477.40 to cover search, review and photocopying costs. Your check or money order payable to the Treasury of the United States should be sent with a copy of this letter to:

Internal Revenue Service
Disclosure Office 3 - FOIA, SE:S:CLD:GLD:D3
1111 Constitution Avenue, NW, Room 1565
Washington, DC 20224

GM 000217

Ms. Molnar
Page 2


If you have any questions, please reference the case number indicated above and contact
Janice Rudolph (Badge No. 50-06294) of my staff, at IRS, Disclosure Office 3 - FOIA,
1111 Constitution Avenue, NW, IR-1565, Washington, DC 20224 or call (202)622-3108.

Sincerely,

Joan D. McClean
Disclosure Manager
Disclosure Office 3 - FOIA


Enclosures (2)
Responsive documents
Notice 393

GM 000218

Information on an IRS Determination to Withhold Records Exempt From
The Freedom of Information Act – 5 U.S.C. 552

### Appeal Rights

You may file an appeal with the Internal Revenue Service (IRS) within 35 days after we (1) deny you access to a record in whole or in part; (2) have made an adverse determination as to your category as a requester; (3) deny your request for a fee waiver or reduction; or (4) have advised you that no records responsive to your request exist. You may file an appeal within 10 days when a request for expedited processing has been denied.

Your appeal **must** be in writing, must be signed by you, and must contain:

> Your name and address,
> Description of the requested records,
> Date of the request (and a copy, if possible),
> Identity of the office and contact on the response letter, and
> Date of the letter denying the request (and a copy, if possible)

Mail your appeal to:

> IRS Appeals
> Attention: FOIA Appeals
> 5045 E. Butler Ave,
> M/Stop 55201
> Fresno, California 93727-5136

### Judicial Review

If we deny your appeal, or do not address an issue raised in your appeal within 20 days (excluding Saturdays, Sundays, or legal public holidays) after the date we receive your appeal, you may file a complaint in United States District Court in the district in which (1) you reside; (2) your principal place of business is located; (3) the records are located; or (4) the District of Columbia. A complaint may be filed within 10 days (excluding Saturdays, Sundays, or legal public holidays) after the date we receive your appeal if your appeal is from an adverse determination of a request for expedited processing. If you choose to file suit before receipt of a final determination by the Appeals office, the administrative appeals process may cease.

The rule for effecting service of judicial process upon the Internal Revenue Service is set forth in Federal Rule of Civil Procedure 4(i). In addition to service upon the United States, as set forth in Rule 4(i)(1), service must be made upon the Internal Revenue Service by registered or certified mail as set forth in Rule 4(i)(2)(A). The address of the Internal Revenue Service is: Internal Revenue Service, Attention CC:PA ,1111 Constitution Avenue, N.W., Washington, D.C. 20224.

### Exemptions

The Freedom of Information Act, 5 U.S.C. 552, does not apply to matters that are:

(b)(1) • specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified under such executive order.

(b)(2) • related solely to the internal personnel rules and practices of an agency;

(b)(3) • specifically exempted from disclosure by statute (other than section 552b of this title), provided that the statute

Notice **393** (Rev. 04-2006) Cat. No. 45803X   Department of the Treasury – **Internal Revenue Service**

GM 000219