SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700
John Wm. Butler, Jr.
Albert L. Hogan, III
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, D.C.  20006-4078
(202) 452-7080
Mary B. Hevener

Attorneys for Delphi Corporation, Delphi Automotive Systems LLC, and
Delphi Automotive Systems Services LLC, Respondents

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re | 08 Civ. 04487 (PKC) |
| DELPHI CORPORATION, <u>et. al.</u>, | Bankr. Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DELPHI CORPORATION, DELPHI AUTOMOTIVE SYSTEMS LLC, AND DELPHI AUTOMOTIVE SYSTEMS SERVICES LLC, | Adversary Proceeding No. 08-01038 |
| Plaintiffs, | |
| - against - | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' OPPOSITION TO
<u>GOVERNMENT'S MOTION FOR ORDER WITHDRAWING REFERENCE</u>

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ........................................................................................................ 2

A.    The Chapter 11 Cases .................................................................................. 2

B.    The Adversary Proceeding ........................................................................... 3

ARGUMENT ............................................................................................................. 5

THE ADVERSARY PROCEEDING SHOULD REMAIN IN THE BANKRUPTCY
COURT ...................................................................................................................... 5

A.    The Scope Of Bankruptcy Court Jurisdiction And The Standard For
      Withdrawal Of The Reference ...................................................................... 5

B.    This Court Should Not Withdraw The Reference As A Matter Of
      Discretion .................................................................................................... 7

      1.    The Adversary Proceeding Is A Core Matter ..................................... 8

      2.    Defendant Has Not Met Its Burden With Respect To The Existence
            Of Other Permissive Withdrawal Factors ........................................ 15

C.    The Adversary Proceeding Is Not Subject To Mandatory Withdrawal .......... 16

      1.    Whether FICA Taxation Applies To Payments Made On Signing
            Or Cancellation Of An Employment Contract Is Not A Question
            Of First Impression ......................................................................... 18

      2.    The Standard Applicable To Retroactive Revenue Rulings Is
            Settled Law ...................................................................................... 21

      3.    The Adversary Proceeding Requires Only Straightforward
            Application Of Non-Bankruptcy Law ............................................... 23

CONCLUSION ......................................................................................................... 25

TABLE OF AUTHORITIES

Cases                                                                                    Page

Allstate Insurance Co. v. United States, 530 F.2d 378 (Ct. Cl. 1976).........................................19

AMP, Inc. v. United States, 185 F.3d 1333 (Fed. Cir. 1999).......................................................22

ANC Rental Corp. v. Dallas County (In re ANC Rental Corp.), 316 B.R. 153
     (Bankr. D. Del. 2004).........................................................................................................9

Appoloni v. United States, 450 F.3d 185 (6th Cir. 2006)...........................................................21

Associated Bicycle Service, Inc. v. United States (In re Associated Bicycle Service, Inc.),
     128 B.R. 436 (Bankr. N.D. Ind. 1990) ...........................................................................23

Baker v. United States, 748 F.2d 1465 (11th Cir. 1984), acq., 1995-2 C.B. 1............................21

Becker v. Commissioner, 85 T.C. 291 (1985)............................................................................21

Ben Cooper, Inc. v. Ins. Co. of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394
     (2d Cir. 1990) ..................................................................................................................12

In re Best Payphones, Inc., 370 B.R. 532 (S.D.N.Y. 2007)..........................................................7

Brooks Fashion Stores, Inc. v. Michigan Employment Security Commission (In re
     Brooks Fashion Stores, Inc.), 124 B.R. 436 (Bankr. S.D.N.Y. 1991)...............................6

Burleson v. Commissioner, 68 T.C.M. (CCH) 288, T.C. Mem. 1994-364, 1994 WL
     395021 (1994)..................................................................................................................21

In re COM 21, No. C-04-03396 RMW, 2005 WL 1606357, 2005 U.S. Dist. LEXIS
     34339 (N.D. Cal. July 6, 2005).......................................................................................13

Central Illinois Public Service Co. v. United States, 435 U.S. 21 (1978) ...................................19

Chance Rides, Inc. v. New Jersey (In re Chance Rides, Inc.), No. 01-12000, Adv. No.
     015123, 2001 WL 34656216, 2001 Bankr. LEXIS 2168 (Bankr. D. Kan.
     Dec. 5, 2001)....................................................................................................................9

Cleveland Indians Baseball Co. v. United States,
     532 U.S. 200 (2001) ........................................................................................................22

Cluck v. United States (In re Cluck), 165 B.R. 1005 (W.D. Tex. 1993)..................................9, 16

Continental Engineering & Consultants, Inc. v. Lake County Assessor (In re Continental Engineering & Consultants, Inc.), No. 03-62669, Adv. No. 04-6068, 2005 Bankr. LEXIS 1794 (Bankr. N.D. Ind. Apr. 21, 2005) .................................................................. 9

Cottage Savings Association v. Commissioner, 499 U.S. 554 (1991) ........................................................................................................ 22

D'Alessio v. IRS (In re D'Alessio), 181 B.R. 756 (Bankr. S.D.N.Y. 1995).................................. 8

Dunmore v. United States, 358 F.3d 1107 (9th Cir. 2004) .............................................. 10, 12 13

Enron Corp. v. J.P. Morgan Securities, Inc. (In re Enron Corp.), Ch. 11 Case No. 01-16034, Adv. No. 03-92677, 07 Civ. 10527, 2008 WL 649770, 2008 U.S. Dist. LEXIS 18173 (S.D.N.Y. Mar. 10, 2008)......................................................................... 17

Erickson v. Commissioner (In re Erickson), 172 B.R. 900 (Bankr. D. Minn. 1994) ............... 9, 23

Fogarty v. United States, 780 F.2d 1005 (Fed. Cir. 1986) ............................................................ 21

French v. United States (In re French), 242 B.R. 369 (Bankr. N.D. Ohio 1999).......................... 9

Fribourg Navigation Co. v. Commissioner, 383 U.S. 272 (1966).................................................. 22

Frito-Lay, Inc. v. Chateaugay Corp. (In re Chateaugay Corp.), 99 B.R. 206 (S.D.N.Y. 1989)........................................................................................ 17

Gehl Co. v. Commissioner, 795 F.2d 1324 (7th Cir. 1986).......................................................... 21

General Dynamics Corp. v. Commissioner, 108 T.C. 107 (1997) .............................................. 22

Grant v. United States (In re Grant), No. 89-02131, 1990 Bankr. LEXIS 1993 (Bankr. W.D. Pa. Sept. 11, 1990)....................................................................................... 23

Grynberg v. United States (In re Grynberg), Ch. 11 Case No. 81 B 00821 C, Adv. No. 89 C 1371 1991 Bankr. LEXIS 783 (Bankr. D. Colo. May 28, 1991) .................................. 9

HAL, Inc. v. United States (In re HAL, Inc.), 122 F.3d 851 (9th Cir. 1997)............................... 11

Holywell Corp. v. Bank of New York (In re Holywell Corp.), 177 B.R. 991 (S.D. Fla. 1995)......................................................................................... 9, 15

Hospitality Ventures/La Vista v. Heartwood 11, L.L.C. (In re Hospitality Ventures/La Vista), 314 B.R. 843 (Bankr. N.D. Ga. 2004) ................................................................. 9

Humble Oil Refining Co. v. United States, 442 F.2d 1362 (Ct. Cl. 1971) ................................... 19

Humble Pipe Line Co. v. United States, 442 F.2d 1353 (Ct. Cl. 1971)........................................ 19

IRS v. CM Holdings, Inc. (In re CM Holdings, Inc.), 221 B.R. 715 (D. Del. 1998) ................... 17

Keene Corp. v. Williams Bailey & Wesner, LLP (In re Keene Corp.),
    182 B.R. 379 (S.D.N.Y. 1995)........................................................................................ 17

Kiesner v. IRS (In re Kiesner), 194 B.R. 452 (Bankr. E.D. Wis. 1996)..................................... 23

Klippel v. IRS (In re Klippel), No. 98-23315, 1999 Bankr. LEXIS 1598
    (Bankr. D.N.J. Nov. 18, 1999)....................................................................................... 23

Kramer v. Commissioner, 930 F.2d 975 (2d Cir. 1991) ............................................................. 13

Kreidle v. IRS (In re Kreidle), 146 B.R. 464 (Bankr. D. Colo. 1991)........................................ 24

LTV Steel Co. v. Pennsylvania (In re Chateaugay Corp.), No. 90 Civ. 7713, 1992 U.S.
    Dist. LEXIS 15245 (S.D.N.Y. Oct. 7, 1992) ................................................................... 7

Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
    304 F.3d 233 (2d Cir. 2002) .......................................................................................... 14

Ludwig v. Commissioner, 68 T.C. 979 (1977)............................................................................ 22

North America Energy Conservation, Inc. v. Interstate Energy Resources, Inc. (In re N.
    America Energy Conservation, Inc.), No. 00-40563 (PCB), 00-2276,
    00CIV4302(SHS), 2000 WL 1614614 (S.D.N.Y. Oct. 12, 2000) ............................. 11-12

North Dakota State University v. United States, 255 F.3d 599 (8th Cir. 2001).......................... 20

Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982) ...............................................................................6, 12, 13, 14, 24

Oakridge Consulting, Inc. v. United States (In re Consolidated FGH Liquidating Trust),
    325 B.R. 564 (Bankr. S.D. Miss. 2005) ......................................................................... 23

Oneida Ltd. v. Pension Benefit Guaranty Corp., 372 B.R. 107 (S.D.N.Y. 2007)....................... 17

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d
    1095 (2d Cir. 1993) ............................................................................................. 7, 8, 14

People's Life Insurance Co. v. United States, 373 F.2d 924 (Ct. Cl. 1967)................................ 20

Prabel v. Commissioner, 91 T.C. 1101 (1988), aff'd, 882 F.2d 820 (3d Cir. 1989).................... 21

In re Pruitt, 910 F.2d 1160 (3d Cir. 1990) ................................................................................... 8

iv

Rowan Cos. v. United States, 452 U.S. 247 (1981).......................................................19

Royster Co. v. United States, 479 F.2d 387 (4th Cir. 1973) ........................................20

Shepard v. United States (In re Shepard), 253 B.R. 397 (Bankr. D.S.C. 2000)...........23

Shurgrue v. Air Line Pilots Association, International (In re Ionosphere Clubs, Inc.),
        922 F.2d 984 (2d Cir. 1990) ..............................................................................16

Shugrue v. Blackwall Green Ltd. (In re Ionosphere Clubs, Inc.), No. 93 Civ. 1260 (CSH),
        1994 U.S. Dist. LEXIS 4676 (S.D.N.Y. Apr. 14, 1994) ....................................8

Space Sys./Loral, Inc. v. Int'l Launch Servs., Inc. (In re Loral Space & Communications),
        No. 04 Civ. 04547 (PKC), 2004 U.S. Dist. LEXIS 13230
        (S.D.N.Y. July 14, 2004) ....................................................................................7

Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating
        LLC), 285 B.R. 822 (S.D.N.Y. 2002) ..........................................................11, 12

Stubbs, Overbeck & Associates v. United States, 445 F.2d 1142 (5th Cir. 1971)........19

Tandy Corp. v. Commissioner, 92 T.C. 1165 (1989) ...................................................22

In re Texaco, Inc., 84 B.R. 911 (S.D.N.Y. 1988) .........................................................17

In re Turchon, 62 B.R. 461 (Bankr. S.D.N.Y. 1986).....................................................23

Turner v. Small Business Administration (In re Turner), 84 F.3d 1294 (10th Cir. 1996)...........11

In re UAL Corp., 336 B.R. 370 (Bankr. N.D. Ill. 2006)..................................................8

In re US Airways Group, Inc., 296 B.R. 673 (E.D. Va. 2003).....................................16

United States Lines, Inc. v. American Steamship Owners Mutual Protection & Indemnity
        Association (In re United States Lines, Inc.), 197 F.3d 631 (2d Cir. 1999).....................12

United States v. Gordon Sel-Way, Inc. (In re Gordon Sel-Way, Inc.), 239 B.R. 741
        (E.D. Mich. 1999) ...............................................................................................9

United States v. Johns-Manville Corp. (In re Johns-Manville Corp.),
        63 B.R. 600 (S.D.N.Y. 1986)..............................................................................17

United States v. Walters (In re Walters), 176 B.R. 835 (Bankr. N.D. Ind. 1994)...................9, 16

United States v. Wilson, 974 F.2d 514 (4th Cir. 1992) ...............................................9

Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.),
    419 F.3d 83 (2d Cir. 2005) ............................................................... 6

University of Pittsburgh v. United States, 507 F.3d 165 (3d Cir. 2007) ..................................... 21

In re Venture Stores, Inc., 54 F. App'x 721 (3d Cir. 2002) ............................................. 9

In re Waters, Case No. 99-31833, 2008 Bankr. LEXIS 374
    (Bankr. D. Conn. Feb. 8, 2008) ..................................................... 9

In re Whimsy, Inc., 221 B.R. 69 (S.D.N.Y. 1998) ...................................................... 11

Wood v. Wood (In re Wood), 825 F.2d 90 (5th Cir. 1987) ........................................... 6

In re WorldCom, Inc., 371 B.R. 19 (Bankr. S.D.N.Y. 2007) ................................... 9, 23

## Statutes and Rules

11 U.S.C. §§ 101-1330 ............................................................................ 2

11 U.S.C. § 323 ..................................................................................... 10

11 U.S.C. § 505(a) ................................................................................. 8

11 U.S.C. § 541 ..................................................................................... 15

11 U.S.C. § 542(b) ................................................................................. 10

11 U.S.C. § 1107(a) ............................................................................... 10

26 U.S.C. § 3121(a) ..................................................................... 17, 18, 23

26 U.S.C. § 3121(b) ..................................................................... 17, 18, 23

26 U.S.C. § 6672 .................................................................................... 23

26 U.S.C. § 7805(b)(8) ........................................................... 17, 18, 21, 23

28 U.S.C. § 157 ..................................................................................... 13

28 U.S.C. § 157(a) ................................................................................. 5

28 U.S.C. § 157(b) ........................................................................ 6, 8, 9

28 U.S.C. § 157(b)(2) ................................................................................ 6, 14

28 U.S.C. § 157(b)(2)(A) ........................................................................ 14, 15

28 U.S.C. § 157(b)(2)(B), (O) ...................................................................... 12

28 U.S.C. § 157(b)(2)(C) .......................................................................... 11, 12

28 U.S.C. § 157(c)(1) ...................................................................................... 6

28 U.S.C. § 157(d) .............................................................. 1, 7, 16, 17, 23, 24

28 U.S.C. § 1334(a) ........................................................................................ 5

28 U.S.C. 1334(b) ................................................................................... 8, 9, 12

Fed. R. Civ. P. 13(b) ..................................................................................... 12

## Other Authorities

H.R. Rep. No. 74-615 (1935) ......................................................................... 18

S. Rep. No. 74-628 (1935) ............................................................................. 18

Rev. Proc. 89-14, 1989-1 C.B. 814 ............................................................... 21

Rev. Rul. 58-145, 1958-1 C.B. 360 ................................................................. 4

Rev. Rul. 2004-109, 2004-2 C.B. 958 ............................................................. 5

Rev. Rul. 2004-110, 2004-2 C.B. 960 ........................................................... 20

## Other Materials

Gen. Counsel Mem. 35396 (July 11, 1973) (explanatory memorandum prepared as background to Rev. Rul. 58-145) ........................................................................ 5

News Release, Dep't Of Treasury, Treasury And IRS Clarify Employment Tax Treatment Of Payments Made On The Signing Or Cancellation Of An Employment Contract (Nov. 23, 2004), available at Treas. JS-2114, 2004 WL 2669356 (Dep't Treas.) ............ 20

Respondents Delphi Corporation ("Delphi"), Delphi Automotive Systems LLC, and Delphi Automotive Systems Services LLC (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their opposition to the motion for withdrawal of the reference to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with respect to an adversary proceeding pursuant to 28 U.S.C. § 157(d) (the "Motion") filed by the Movant, the United States of America ("Defendant").

## PRELIMINARY STATEMENT

Plaintiffs commenced the adversary proceeding under section 505 of the Bankruptcy Code by filing a complaint (the "Complaint") in the Bankruptcy Court on January 18, 2008.  As set forth in the Complaint, Plaintiffs seek an order and judgment directing the return of $25,058,130 in overpayments of employment taxes paid under the Federal Insurance Contribution Act ("FICA") taxes plus interest.  The employment taxes relate to payments made by Plaintiffs to certain union members upon ratification of collective bargaining agreements in 1999 and 2003, regardless of whether the union members provided any services to Plaintiffs.

Defendant seeks withdrawal of the reference with respect to the adversary proceeding largely on the basis of two erroneous contentions.  Defendant asserts that, primarily because the adversary proceeding does not fall within the Bankruptcy Court's "core" jurisdiction, this Court should withdraw the reference as a matter of discretion.  In fact, however, as discussed below, the adversary proceeding is plainly a core matter arising under section 505 of the Bankruptcy Code, and Defendant has not met its burden of proof for establishing that cause exists for discretionary withdrawal of the reference.

Defendant also alleges that because the adversary proceeding gives rise to material issues of "first impression" and will require the adjudication of "substantial questions"

under non-bankruptcy federal law, mandatory withdrawal of the reference applies. As set forth herein, however, the adversary proceeding presents no issues of first impression, and its adjudication will require only a straightforward application of non-bankruptcy federal law to determine that the payments were not in exchange for services and thus not wages for FICA purposes. Accordingly, mandatory withdrawal of the reference does not apply.

BACKGROUND

A.    The Chapter 11 Cases

On October 8 and 14, 2005, Delphi and certain of its subsidiaries and affiliates (including the two additional Plaintiffs identified above), debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Bankruptcy Court has ordered joint administration of the chapter 11 cases under In re Delphi Corporation, Case No. 05-44481 ("Bankr. Case"). (Bankr. Case Docket Nos. 28, 404.)

On September 6, 2007, the Debtors filed with the Bankruptcy Court a joint plan of reorganization and related disclosure statement. (Bankr. Case Docket Nos. 9263-9264.) Subsequently, on December 10, 2007, the Debtors filed an amended reorganization plan (the "Plan") and an amended disclosure statement (the "Disclosure Statement"). (Bankr. Case Docket Nos. 11386, 11388.) The Bankruptcy Court approved the adequacy of the Disclosure Statement and granted the related solicitation procedures motion with respect to the Plan on December 10, 2007. (Bankr. Case Docket No. 11389.) On January 25, 2008, the Bankruptcy Court entered an

2

order confirming the Plan (as modified), which became a final order on February 4, 2008. (Bankr. Case Docket No. 12359.)

On April 4, 2008, the Debtors announced that although they had met the conditions required to substantially consummate the Plan, including obtaining $6.1 billion of exit financing, certain investors under the Plan (the "Plan Investors") refused to participate in a closing that was commenced but not completed. The Plan Investors also refused to fund their investments with Delphi. The Plan Investors delivered written notices purporting to terminate the Investment Agreement based on both alleged breaches by the Debtors and the failure of the Plan's effective date to occur by April 4, 2008. On May 16, 2008, Delphi filed complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their equity financing commitments and refused to participate in the closing that would have led to Delphi's successful emergence from chapter 11. (Bankr. Case Docket Nos. 13622-13623.) The Debtors nevertheless are working with their stakeholders to evaluate their options to move forward with emerging from chapter 11 as soon as reasonably practicable.

B.     The Adversary Proceeding

On January 18, 2008, Plaintiffs commenced the FICA adversary proceeding by filing the Complaint in the Bankruptcy Court. Defendant filed an answer to the Complaint in the Bankruptcy Court on May 13, 2008. The same day, Defendant moved to withdraw the reference and filed various exhibits and a supporting memorandum of law ("Defendant's Memorandum").

The material facts underlying the adversary proceeding are easily summarized. In 1999, pursuant to a tentative three-year national labor agreement, Delphi agreed to pay $1,350 to each of its employees who was a union member in a certain "specified status" (including employees on temporary layoff or various forms of short-terms leave of absence, in addition to active employees), upon ratification of the 1999 collectively bargained national labor agreement

3

was ratified by the union membership.  In 2003, Delphi agreed to make a payment of $3,000 to each union member employee subject to similar conditions, again payable upon ratification of the 2003 national labor agreement by the union membership.  In each instance the payments were made without regard to whether the union member had voted to ratify the agreement, without regard to the union member's historic length of service or rate of pay, and without regard to whether the union member had performed or continued to perform services for Delphi. (Compl. ¶¶ 14-15, 18, 19.)  Plaintiffs timely filed refund claims with respect to both the 1999 and 2003 payments (the 1999 Refund Claims" and the "2003 Refund Claims").  (Compl. ¶¶ 24, 33.)

As set forth in the Complaint, nearly 50 years ago, the Internal Revenue Service ("IRS") issued a ruling that an employer's payments made to an individual solely for signing an employment contract, and not conditioned on the performance of future services or continued employment, did not constitute "wages."  See Rev. Rul. 58-145, 1958-1 C.B. 360.  While Plaintiffs' 1999 Refund Claims were pending before the IRS, and with full knowledge of the 1999 Refund Claims and similar claims by other taxpayers, the IRS revoked Revenue Ruling 58-145.  The revocation was announced in Revenue Ruling 2004-109, 2004-2 C.B. 958, published on November 23, 2004, in which the IRS set forth a previously unstated principle for analyzing the wage treatment of a "ratifying bonus pursuant to a collective bargaining agreement."

In Revenue Ruling 58-145, the IRS noted that whether or not the payment was in respect of a new employee or a new contract for an existing employee, the determining consideration was whether the payment was "predicated on continued employment."  If not, the amount was not to be treated as wages and therefore was not subject to FICA withholding.  The rationale behind Revenue Ruling 58-145 (as explained by the IRS attorneys who drafted the ruling) was that a signing bonus is simply not compensation for personal services, but is paid for

the promises made by the individual in agreeing to be bound by the employment contract that the bonus served as an inducement to sign.  See Gen. Counsel Mem. 35396 (July 11, 1973) (explanatory memorandum prepared as background to Rev. Rul. 58-145).

In contrast, the IRS took the unprecedented position in Revenue Ruling 2004-109, without the benefit of public notice and comment, that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship."  Revenue Ruling 2004-109 provides that the IRS will not apply the position taken in that ruling to any signing bonus, sign-on fee, or similar amount paid to an employee in connection with the employee's initial employment with the employer under a sign-on agreement or other contract entered into before January 12, 2005 if the amount is paid under facts and circumstances that are substantially the same as those of Revenue Ruling 58-145.  By contrast, the IRS applies Revenue Ruling 2004-109 on a retroactive basis to any signing bonus, sign-on fee, or similar amount paid to an employee that is not incurred in connection with the employee's initial employment.

## ARGUMENT

### THE ADVERSARY PROCEEDING SHOULD REMAIN IN THE BANKRUPTCY COURT

A.    The Scope Of Bankruptcy Court Jurisdiction And The Standard For Withdrawal Of The Reference

Federal district courts have original and non-exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11, of the United States Code, 28 U.S.C. § 1334(a), and may refer these bankruptcy civil proceedings to the bankruptcy courts.  See 28 U.S.C. § 157(a).  In this district, the reference of bankruptcy civil proceedings to the bankruptcy courts is made automatically by standing order.  See Standing Order of Reference signed by Acting Chief Judge Robert J. Ward, dated July 10, 1984.

Bankruptcy courts may "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b). Section 157(b)(2) of title 28 does not define "core proceeding" but contains a non-exclusive list of core proceedings under section 157(b). "A proceeding is core pursuant to § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Brooks Fashion Stores, Inc. v. Mich. Employment Sec. Comm'n (In re Brooks Fashion Stores, Inc.), 124 B.R. 436, 441 (Bankr. S.D.N.Y. 1991) (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). In addition, a bankruptcy court may "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). In such matters, however, absent the parties' consent, the bankruptcy court submits to the district court proposed findings of fact and conclusions of law, which are reviewed de novo. Id.

Congress established this jurisdictional structure in 1984 following the Supreme Court's ruling in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), which held that the previous grant of jurisdiction to the bankruptcy courts was overly expansive and unconstitutional. In response to Marathon, "Congress reshaped the jurisdictional relationship between the district courts and the bankruptcy courts . . . by making the bankruptcy courts delegated adjuncts of the district courts." Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 419 F.3d 83, 96 (2d Cir. 2005).

Under limited conditions, the district court may withdraw the reference to the bankruptcy court with respect to a civil proceeding (or any part thereof), as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding

> requires consideration of both title 11 and other laws of the United States
> regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).  Thus, in some circumstances, a district judge has discretion to withdraw the

reference, whereas in others, withdrawal of the reference is mandatory.  In other words, although

"[a]n application to withdraw the reference <u>may</u> be granted 'for cause shown.'  The reference

<u>shall</u> be withdrawn 'if the court determines that resolution of the proceeding requires

consideration of both title 11 and other laws of the United States regulating organizations or

activities affecting interstate commerce.'"  <u>Space Sys./Loral, Inc. v. Int'l Launch Servs., Inc.</u> (In

re Loral Space & Commc'ns), No. 04 Civ. 04547(PKC), 2004 U.S. Dist. LEXIS 13230, at *2-3,

2004 WL 1586466, at *1 (S.D.N.Y. July 14, 2004) (citations omitted) (emphasis in original).

Defendant asserts that the reference should be withdrawn with respect to this adversary

proceeding under the discretionary and the mandatory standards set forth in section 157(d).

B.    <u>This Court Should Not Withdraw The Reference As A Matter Of Discretion</u>

        Under the discretionary withdrawal standard, "for cause shown" a district court

may withdraw the reference to a bankruptcy court.  "Although section 157(d) does not define

cause, the Second Circuit has identified a number of relevant factors, including 'whether the

claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of

efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy

law.'"  <u>In re Best Payphones, Inc.</u>, 370 B.R. 532, 536 (S.D.N.Y. 2007) (quoting <u>Orion Pictures</u>

<u>Corp. v. Showtime Networks, Inc.</u> (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir.

1993)).  The proponent of a motion to withdraw the reference bears the burden of showing

requisite cause for the relief requested.  <u>See, e.g.</u>, <u>LTV Steel Co. v. Pennsylvania</u> (In re

Chateaugay Corp.), No. 90 Civ. 7713, 1992 U.S. Dist. LEXIS 15245, at *13 (S.D.N.Y. Oct. 7,

1992) (citing In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990)).  Here, Defendant has not met its burden.

      1.     <u>The Adversary Proceeding Is A Core Matter</u>

      The "first task" for a court presented with a motion for discretionary withdrawal of the reference "is to decide whether the [proceeding] is core or non-core, since this determination will significantly affect questions of economy [and] uniformity." <u>Shugrue v. Blackwall Green Ltd.</u> (In re Ionosphere Clubs, Inc.), No. 93 Civ. 1260 (CSH), 1994 U.S. Dist. LEXIS 4676, at *5 (S.D.N.Y. Apr. 14, 1994) (citing <u>Orion Pictures Corp.</u>, 4 F.3d at 1101). Notwithstanding Defendant's assertions to the contrary, the adversary proceeding is plainly a core matter because it arises under the Bankruptcy Code.

      Indeed, a statutory predicate for the adversary proceeding is section 505 of the Bankruptcy Code.  (<u>See</u> Compl. ¶ 1.)  Section 505 grants bankruptcy courts "broad authority to review any kind of tax attributable to the estate, both federal and state." <u>D'Alessio v. IRS</u> (In re D'Alessio), 181 B.R. 756, 759 (Bankr. S.D.N.Y. 1995).  This section provides in relevant part that, subject to certain narrow exceptions not applicable here, a bankruptcy court "may determine the amount or legality of any tax, . . . whether or not previously assessed [and] whether or not paid."  11 U.S.C. § 505(a).

      A debtor which commences a proceeding under section 505 invokes a "substantive right" that "arises under" title 11, consistent with case law interpretations of 28 U.S.C. §§ 157(b) and 1334(b).  <u>See, e.g.</u>, <u>In re UAL Corp.</u>, 336 B.R. 370, 371 (Bankr. N.D. Ill. 2006) ("The determination of tax liability provided for by § 505(a) 'arises under' the Bankruptcy Code.").  As a result, the vast majority of courts to have addressed the question (including courts in this district) have determined that actions under section 505 (whether brought by motion or by

commencement of a separate adversary proceeding) constitute core matters under 28 U.S.C.

§§ 157(b) and 1334(b) because they "arise under title 11."[1]

---

[1]   Courts that have come to this conclusion include the Courts of Appeal in the Third and Fourth Circuits and lower courts in the Second, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits.  See, e.g.:

Second Circuit:  In re WorldCom, Inc., 371 B.R. 19, 22 (Bankr. S.D.N.Y. 2007) (court had core jurisdiction over debtor's motion for determination of refund rights); In re Waters, No. 99-31833, 2008 Bankr. LEXIS 374, at *2 (Bankr. D. Conn. Feb. 8, 2008) (contested matter commenced by United States under section 505(a)(1) and Fed. R. Bankr. P. 9014 was core proceeding);

Third Circuit:  In re Venture Stores, Inc., 54 F. App'x 721, 722 (3d Cir. 2002) (district court sitting in bankruptcy had jurisdiction over section 505 dispute under 28 U.S.C. § 157(b) "because this was a core proceeding arising under the Bankruptcy Code"); ANC Rental Corp. v. Dallas County (In re ANC Rental Corp.), 316 B.R. 153, 157 (Bankr. D. Del. 2004) (section 505 proceeding was core matter "because it invokes a right given to the Debtor under title 11");

Fourth Circuit:  United States v. Wilson, 974 F.2d 514, 517 (4th Cir. 1992) (debtor's challenge under section 505 to chapter 7 trustee's settlement of tax dispute with United States was core matter "[u]nder 28 U.S.C. § 157(b), and more specifically under 11 U.S.C. § 505(a)(1)");

Fifth Circuit:  Cluck v. United States (In re Cluck), 165 B.R. 1005, 1009 (W.D. Tex. 1993) (bankruptcy court properly denied debtor's request for proposed findings of facts and conclusions of law and entered final order in estate tax dispute under section 505 because matter was core proceeding (as both litigants appear to have conceded)), aff'd mem., 20 F.3d 1170 (5th Cir. 1994);

Sixth Circuit:  United States v. Gordon Sel-Way, Inc. (In re Gordon Sel-Way, Inc.), 239 B.R. 741, 747 (E.D. Mich. 1999) (debtor's federal employment tax refund claim was core matter), aff'd, 270 F.3d 280 (6th Cir. 2001); French v. United States (In re French), 242 B.R. 369, 374 (Bankr. N.D. Ohio 1999) ("A determination of a debtor's tax liability under 11 U.S.C. § 505(a) involves a right afforded to a debtor by virtue of the Bankruptcy Code, and is therefore a core proceeding pursuant to 28 U.S.C. § 157(b)(2).");

Seventh Circuit:  Cont'l Eng'g & Consultants, Inc. v. Lake County Assessor (In re Cont'l Eng'g & Consultants, Inc.), No. 03-62669, Adv. No. 04-6068, 2005 Bankr. LEXIS 1794, at *17 (Bankr. N.D. Ind. Apr. 21, 2005) ("as has been routinely determined, proceedings under § 505(a)(1) do in fact constitute core proceedings"); United States v. Walters (In re Walters), 176 B.R. 835, 867 (Bankr. N.D. Ind. 1994) ("Section 505 involves a substantive right provided by title 11, and it is a proceeding that, by its nature, could only arise in the context of a bankruptcy case, and thus this proceeding is a core proceeding.") (citations omitted);

Eighth Circuit:  Erickson v. Commissioner (In re Erickson), 172 B.R. 900, 905-08 (Bankr. D. Minn. 1994) (dispute under section 505 over debtor's tax liability (including that related to employment taxes) was core matter);

Tenth Circuit:  Chance Rides, Inc. v. New Jersey (In re Chance Rides, Inc.), No. 01-12000, Adv. No. 015123, 2001 WL 34656216, 2001 Bankr. LEXIS 2168, at *13 (Bankr. D. Kan. Dec. 5, 2001) ("Because § 505(a) specifically provides bankruptcy courts with jurisdiction to hear tax liability matters, most courts have held that a § 505(a) proceeding 'arises under' the Bankruptcy Code and is a 'core proceeding.'"); Grynberg v. United States (In re Grynberg), Ch. 11 Case No. 81 B 00821 C, Adv. No. 89 C 1371, 1991 Bankr. LEXIS 783, at *19 (Bankr. D. Colo. May 28, 1991) ("Section 505 of the Bankruptcy Court provides this Court with the authority to adjudicate [debtors'] pre-petition gift tax liability as a core matter.");

*(cont'd)*

Defendant's only support for its contention that this adversary proceeding is a non-core matter consists of a Ninth Circuit opinion concerning a chapter 7 proceeding in which an individual debtor (appearing pro se) sought to pursue tax claims the chapter 7 trustee had abandoned as worthless, for his own benefit rather than for the benefit of the estate.  (See Defendant's Mem. at 31 (citing Dunmore v. United States, 358 F.3d 1107 (9th Cir. 2004)).  Even assuming that the Ninth Circuit is correct that a debtor's non-estate refund claim under section 505 is non-core, the Dunmore decision is distinguishable because it did not involve the determination of the chapter 7 estate's rights under sections 505 or 542(b)[2] or the allowance or disallowance of claims against the estate, which would have been core proceedings.  Here, Plaintiffs seek refunds under section 505 and section 542(b) in their capacity as representatives of their respective chapter 11 estates as debtors-in-possession, which under sections 323[3] and 1107(a)[4] have the powers of a chapter 11 trustee to sue and invoke section 505 jurisdiction to determine the estates' rights to a refund and to enforce payment under 542(b).

In addition, Defendant has filed various proofs of claim, some which assert setoff rights (including the right to offset FICA penalties against the Plaintiffs' claims), and Plaintiffs

---

(cont'd from previous page)

Eleventh Circuit:  Holywell Corp. v. Bank of New York (In re Holywell Corp.), 177 B.R. 991, 998-99 (S.D. Fla. 1995) (bankruptcy court had core jurisdiction over disputes over federal tax settlement under section 505(a) and 11 U.S.C. § 157(b)(2)(A) and (O); United States filed amicus brief in support of bankruptcy court ruling); Hospitality Ventures/La Vista v. Heartwood 11, L.L.C. (In re Hospitality Ventures/La Vista), 314 B.R. 843, 847 (Bankr. N.D. Ga. 2004) ("The Court has jurisdiction under 28 U.S.C. § 1334(b) over Debtor's complaint for § 505(a) relief as a core proceeding under 28 U.S.C. § 157(b).").

[2]    Section 542(b) provides that "an entity that owes a debt that is property of the estate and that is matured . . . shall pay such debt to . . . the trustee." 11 U.S.C. § 542(b).

[3]    Section 323 provides:  "(a) The trustee in a case under this title is the representative of the estate.  [¶]  (b) The trustee in a case under this title has capacity to sue and be sued." 11 U.S.C. § 323.

[4]    Section 1107(a) provides:  "Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."  11 U.S.C. § 1107(a).

have objected to those claims and have similarly preserved their rights to offset estate claims, including the refund claims, against the claims of the United States.  (Gershbein Decl. ¶ 3, Exs. 1-12.)   Under 28 U.S.C. § 157(b)(2)(C), "where a creditor of the estate files a proof of claim and the estate counterclaims against him, or where the estate brings an action against a creditor and the creditor counterclaims asserting a set-off, it is entirely appropriate for the action to be classified as a core proceeding."  Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC), 285 B.R. 822, 831 (S.D.N.Y. 2002).  Moreover, "claims in an adversary proceeding are tantamount to counterclaims against a creditor who filed a claim against the estate under § 157(b)(2)(C)."  Id.

Furthermore, even though Defendant's setoff claims were filed by multiple agencies and departments of the United States, Defendant has a unitary right to setoff.  See In re Whimsy, Inc., 221 B.R. 69, 72 (S.D.N.Y. 1998) (agencies, departments, and subdivisions of United States constitute single, unitary creditor for purposes of setoff in bankruptcy); HAL, Inc. v. United States (In re HAL, Inc.), 122 F.3d 851, 852-54 (9th Cir. 1997); Turner v. Small Bus. Admin. (In re Turner), 84 F.3d 1294, 1299 (10th Cir. 1996) (en banc).  Because Plaintiffs' FICA refund claims are tantamount to counterclaims against Defendant who filed multiple proofs of claim (or Defendant's multiple claims asserting setoff,[5] regardless of which federal agency has

---

[5] Although Defendant notes in its Memorandum that it has not formally asserted setoff rights in its answer to the Complaint (Def.'s Mem. At 31, n. 11), the fact remains that Defendant has asserted setoff rights in various of its proofs of claim (see Gershbein Decl. ¶ 3, Exs. 1-11 (setoff expressly preserved at pp. 6, 36, 40-41, 44-45, 47-48, 50-51, 53-54, 57-58)) and has not otherwise waived any setoff rights, which prepetition setoff rights are generally preserved under section 553(a) of the Bankruptcy Code and which under section 506(a) of the Bankruptcy Code would secure Defendant's claims against the estates.  Thus, the Bankruptcy Court's adjudication of the adversary proceeding will determine whether each side can exercise its setoff rights against the other (assuming that any of Defendant's proofs of claim are ultimately allowed by the Bankruptcy Court) and whether any of Defendant's claims constitute secured claims under the Bankruptcy Code.  The adversary proceeding in this respect is core to the process of allowing and disallowing claims against the Delphi estates, to a determination of whether Defendant's claims are secured, and to the adjustment of the debtor-creditor relationship.  See 28 U.S.C. § 57(b)(2)(B), (O); N. Am. Energy Conversation, Inc. v. Interstate Energy Res., Inc.

*(cont'd)*

asserted them, constitute counterclaims[6] to the estates' refund adversary proceeding), the adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2)(C).

No court in this circuit appears to have relied on Dunmore in considering jurisdictional issues remotely comparable to those presented here, and the decision is rarely cited in published opinions by courts outside the Ninth Circuit. The reluctance of courts from other jurisdictions to rely on Dunmore in this context may result from the Ninth Circuit's interpretation of "core" in 28 U.S.C. § 1334(b), which is considerably more constrained than that adopted by most other circuits, including the Second Circuit. In the Second Circuit, the term 'core proceeding' is "given a broad interpretation that is close to or congruent with constitutional limits as set forth in Marathon, and that Marathon is to be construed narrowly." United States Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n (In re United States Lines, Inc.), 197 F.3d 631, 637 (2d Cir. 1999); Ben Cooper, Inc. v. Ins. Co. of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394, 1398-99 (2d Cir.), vacated, 498 U.S. 964 (1990), opinion reinstated, 924 F.2d 36 (2d Cir. 1991). By contrast, "the Ninth Circuit has adopted a relatively narrow interpretation,"

_____
*(cont'd from previous page)*

    (In re N. Am. Energy Conservation, Inc.), No. 00-40563 (PCB), 00-2276, 00CIV4302(SHS), 2000 WL 1614614, at *2 (S.D.N.Y. Oct. 12, 2000) (adversary proceeding on estate's prepetition contract is core because defendant's setoff claim against estate "elevates an unsecured claim to secured statues").

6    Some case law concludes that an estate's core counterclaim referred to in section 157(b)(2)(C) must be compulsory (i.e., arise out of the same transaction or occurrence), as opposed to merely permissive (i.e., unrelated), with respect to the creditor's proof of claim. See, e.g., Iridium Operating LLC, 285 B.R. at 832. The statute, however, does not make such a distinction. Cf. Fed. R. Civ. P. 13(b) (defining permissive counterclaim as any claim unrelated to primary claim). Nor do the cases limiting core matters to compulsory counterclaims explain why an estate's permissive counterclaim implicates the constitutional right to an Article III judge at issue in Marathon. These cases provide no rationale for why a creditor who has invoked bankruptcy court jurisdiction, by filing a proof of claim so as to share in the distribution of estate assets, retains the constitutional right to have an Article III judge adjudicate one of the estate's assets, i.e., the estate's permissive counterclaim. In any event, Defendant has expressly asserted setoff rights with respect to FICA penalties for tax year 2005 (and section 553(a) of the Bankruptcy Code generally preserves all prepetition setoff rights, whether asserted in a proof of claim or not). The 2005 FICA penalties on their face would appear sufficiently related to the Plaintiffs' FICA refund claims for tax years 1999 and 2003 so that the refund adversary falls within the definition of a core matter under section 157(b)(2)(C). Moreover, Defendant's rights to contest the estates' FICA refund claims are public rights, which as discussed below do not give rise to the constitutional issues present in Marathon.

holding that "core proceeding administrative matters that only arise in bankruptcy and would have no existence outside of bankruptcy." In re COM 21, No. C-04-03396 RMW, 2005 WL 1606357, at *4-5, 2005 U.S. Dist. LEXIS 34339, at *13, *15 (N.D. Cal. July 6, 2005). In any case, the Ninth Circuit's limited reading of "core" does not apply in the Second Circuit, and Dunmore has no bearing on this adversary proceeding.

Finally, Plaintiffs' FICA refund claim simply is not comparable to the proceeding at issue in Marathon that led to the enactment of 28 U.S.C. § 157. In Marathon, because the dispute involved two private parties (a chapter 11 debtor and a non-debtor contract counterparty), the Supreme Court held that it fell within the sole authority of courts established under Article III of the United States Constitution. The adjudication of "public rights," on the other hand, is not subject to this limitation. "[A] matter of public rights must at a minimum arise between the government and others. In contrast, the liability of one individual to another . . . is a matter of private rights. Our . . . controversies in the former category may be removed from Art. III courts to legislative courts [which include bankruptcy courts and] administrative agencies for their determination." Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 69-70 (1982) (internal quotations and citations omitted). The Second Circuit has defined "public rights" as "rights which arise between governmental agencies and the citizens subject to the authority of these bodies." Kramer v. Comm'r, 930 F.2d 975, 988 (2d Cir. 1991). By definition, public rights encompass rights arising between a taxing authority and a taxpayer. "The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum." Id. at 992.

The refund adversary proceeding falls squarely within the following statutory definitions of core matters at 28 U.S.C. § 157(b)(2): subpart (A) ("matters concerning the administration of the estate"); subpart (B) ("allowance or disallowance of claims against the estate"); subpart (C) ("counterclaims by the estate against persons filing claims against the estate"); subpart (E) ("orders to turn over property of the estate"); and subpart (O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship").  The section 157(b)(2) categories, however, are broad enough to capture the type of lawsuits which <u>Marathon</u> holds must be deemed non-core (i.e., subject to a final decision only by an Article III judge).  Courts, therefore, will find <u>Marathon</u>-type lawsuits to be non-core even though they otherwise fall within the literal terms of section 157(b)(2), especially subpart (A)'s "matters concerning the administration of the estate" and subpart (O)'s "other proceedings."  <u>See, e.g.</u>, <u>Orion Pictures Corp.</u>, 4 F.3d at 1102 (estate's prepetition contract actions are not core matters, notwithstanding they would inure to benefit of estate and thus concern estate's administration under section 157(b)(2)(A)).  As noted above, however, the Plaintiffs' public rights adversary proceeding against the government is not a private rights proceeding that must be deemed non-core in accordance with <u>Marathon</u>.   <u>See</u> <u>Luan Inv. S.E. v. Franklin 145 Corp.</u> (In re Petrie Retail, Inc.), 304 F.3d 233, 229 (2d Cir. 2002) ("we construe <u>Marathon</u> narrowly and give core proceedings 'a broad interpretation that is "close to or congruent with constitutional limits"'").

For the foregoing reasons, the adversary proceeding falls squarely within the Bankruptcy Court's core jurisdiction.

2.     Defendant Has Not Met Its Burden With Respect To The Existence
       Of Other Permissive Withdrawal Factors

Having failed even to acknowledge that it bears the burden of establishing the

existence of cause for discretionary withdrawal, it is perhaps not surprising that Defendant has

failed to meet its burden.  Three of Defendant's arguments in support of discretionary withdrawal

rely expressly on the mistaken assertion that this adversary proceeding is not a core matter.  (See

Def.'s Mem. at 31, 33, 34.)  Absent the jurisdictional foundation asserted, Defendant's arguments

concerning judicial economy, cost and delay, and forum shopping simply fall away.  And

because the Bankruptcy Court plainly has the authority to issue a final ruling in the adversary

proceeding, all of these factors weigh against discretionary withdrawal.

Defendant's only remaining point in support of discretionary withdrawal appears

to be that the dollar amount at issue in this adversary proceeding is insufficient to affect

"meaningfully" the administration of the Debtors' estates.  (Def.'s Mem. at 34.)  Defendant cites

no authority purporting to establish a minimum threshold of the amount in dispute for a

controversy to be deemed to have a meaningful effect on a debtor's estate.  Plaintiffs are aware of

no such authority.  Even if the amount in dispute were relevant in determining whether to grant

Defendant's request for relief, the value of Plaintiffs' claims is hardly negligible by any standards.

Plaintiffs' claims against Defendant and any proceeds thereof indisputably

constitute property of the Debtors' estates under 11 U.S.C. § 541, the disposition of which falls

squarely within a bankruptcy court's jurisdictional purview.  Indeed, core matters include all

matters concerning the administration of the estate.  See 28 U.S.C. § 157(b)(2)(A).  Courts

routinely have recognized the resolution of tax disputes as core proceedings concerning the

administration of a debtor's estate or the liquidation of assets therein under section 157(b)(2)(A)

and (O).  See, e.g., Holywell Corp. v. Bank of New York (In re Holywell Corp.), 177 B.R. 991,

15

998-99 (S.D. Fla. 1995); <u>United States v. Walters</u> (In re Walters), 176 B.R. 835, 867 (Bankr. N.D.

Ind. 1994); <u>Cluck</u>, 165 B.R. at 1009.

   In sum, because the adversary proceeding is a core matter, and because Defendant

has failed to meet its burden to show requisite cause under applicable law, this Court has solid

grounds for denying the request to withdraw the reference as a matter of discretion.

C.  <u>The Adversary Proceeding Is Not Subject To Mandatory Withdrawal</u>

   Section 157(d) of title 28 of the United States Code provides that a district court

"shall" withdraw the reference concerning a proceeding that "requires consideration of both

title 11 and other laws of the United States regulating organizations or activities affecting

interstate commerce."  28 U.S.C. § 157(d).  As with discretionary withdrawal, the movant bears

the burden of establishing that mandatory withdrawal is warranted.  <u>In re US Airways Group,</u>

<u>Inc.</u>, 296 B.R. 673, 677 (E.D. Va. 2003) ("[T]he burden of demonstrating both mandatory and

discretionary withdrawal is on the movant.") (citations omitted).

   Although the term "consideration" is not defined, courts in this circuit have

stressed that section 157(d) should "not become an 'escape hatch' for matters properly before [the

bankruptcy] court."  <u>Oneida Ltd. v. Pension Benefit Guar. Corp.</u>, 372 B.R. 107, 110 (S.D.N.Y.

2007) (quoting <u>United States v. Johns-Manville Corp.</u> (In re Johns-Manville Corp.), 63 B.R. 600,

603 (S.D.N.Y. 1986)).  "The Second Circuit Court of Appeals construes this provision

'narrowly,' requiring withdrawal of the reference only if 'substantial and material consideration of

non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding.'"  <u>Enron</u>

<u>Corp. v. J.P. Morgan Secs., Inc.</u> (In re Enron Corp.), Ch. 11 Case No. 01-16034, Adv. No. 03-

92677, 07 Civ. 10527 (SAS), 2008 WL 649770, at *4, 2008 U.S. Dist. LEXIS 18173, at *13

( S.D.N.Y. Mar. 10, 2008) (quoting <u>Shurgrue v. Air Line Pilots Ass'n, Int'l</u> (In re Ionosphere

Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990)).

The phrase "substantial and material consideration" is understood to mean "significant interpretation of federal laws that [C]ongress would have intended to have decided by a district judge rather than a bankruptcy judge." Enron Corp., 2008 U.S. Dist. LEXIS 18173, at *13-14 (quoting In re Texaco, Inc., 84 B.R. 911, 921 (S.D.N.Y. 1988) (in turn quoting United States v. Johns-Manville Corp. (In re Johns-Manville Corp.), 63 B.R. 600, 602 (S.D.N.Y. 1986))). Mandatory withdrawal applies only "where 'issues arising under non-title 11 laws dominated those arising under title 11,'" Enron Corp., 2008 U.S. Dist. LEXIS 18173, at *14 (quoting In re Texaco, Inc., 84 B.R. at 921 (in turn quoting Johns-Manville Corp., 63 B.R. at 602)), or where the substantial and material consideration of non-bankruptcy federal law "is necessary for the resolution of a case or proceeding." Frito-Lay, Inc. v. Chateaugay Corp. (In re Chateaugay Corp.), 99 B.R. 206, 208 (S.D.N.Y. 1989) (citations omitted).  "[T]he mandatory withdrawal standard is more easily satisfied when complicated issues of first impression are implicated under non-bankruptcy federal laws." Keene Corp. v. Williams Bailey & Wesner, LLP (In re Keene Corp.), 182 B.R. 379, 382 (S.D.N.Y. 1995).  "[W]ithdrawal is not mandatory where a case requires the 'straightforward application of a federal statute to a particular set of facts.'" Oneida Ltd. v. Pension Benefit Guar. Corp., 372 B.R. at 110 (quoting In re Johns-Manville Corp., 63 B.R. at 602).

Defendant portrays this adversary proceeding as ground-breaking litigation that will give rise to multiple issues of first impression and require "substantial interpretation" of the federal tax laws.[7]  In fact, however, Defendant's discussion of the tax law authorities is

---

[7]  Defendant effectively asks this Court to assume that the sections of the Internal Revenue Code that are relevant to the adversary proceeding (26 U.S.C. §§ 3121(a) and (b) and 7805(b)(8)) constitute "other laws of the United States regulating organizations or activities affecting interstate commerce" for purposes of 28 U.S.C. § 157(d). (Def.'s Mem. at 12-13.)  Such an assumption would be improper.

*(cont'd)*

egregiously incomplete and gives the erroneous impression that the relevant law is highly unsettled and unusually complex.  On the contrary, as discussed below, this adversary proceeding raises no issues of first impression and will require only a straightforward application of existing law.  Moreover, the legal issues in the adversary proceeding are considerably simpler than those in other tax matters routinely adjudicated by bankruptcy courts.

1.      Whether FICA Taxation Applies To Payments Made On Signing Or
        Cancellation Of An Employment Contract Is Not A Question Of First Impression

FICA taxes apply to "all remuneration for employment."  26 U.S.C. § 3121(a). "Employment" is defined to include "any service . . . performed . . . by an employee for the person employing him."  26 U.S.C. § 3121(b).  The term "wages" was similarly described in the Congressional committee reports accompanying enactment of the statute.  See H.R. Rep. No. 74-615, at 32-33 (1935); S. Rep. No. 74-628, at 44-45 (1935).  When an employer makes a payment to an employee as compensation for something other than services, that payment, by the terms of the statute, is not subject to FICA taxes.  Defendant glosses over this critical statutory exemption

---

*(cont'd from previous page)*

Strictly speaking, these Internal Revenue Code provisions do not "regulate" conduct.  They simply impose particular tax consequences and resulting tax liability for activities and operations freely undertaken by taxpayers; the statutes do not regulate the activities themselves.  By contrast, other provisions of the Internal Revenue Code (such as those concerning eligibility for tax exempt status under 26 U.S.C. § 502(c)(3)) do in fact regulate conduct in a manner comparable to other federal statutes that regulate organizations and activities for purposes of 28 U.S.C. § 157(d), such as the federal civil rights, environmental protection, and labor laws. Those sections of the Internal Revenue Code, however, are not at issue in the adversary proceeding.

In IRS v. CM Holdings, Inc. (In re CM Holdings, Inc.), 221 B.R. 715 (D. Del. 1998), the only authority cited by Defendant in support of the proposition that the tax laws at issue here regulate organizations or activities affecting interstate commerce, the court concluded, with no reference to either statutory or common law authority, that "[i]t cannot be gainsaid that the federal Tax Code must be consulted in order to determine the validity of the IRS' claims and federal tax law regulates organizations or activities affecting interstate commerce, as required under 28 U.S.C. § 157(d).").  Id. at 721.  This decision shed no light on whether statutory authority to assess tax liability constitutes regulation for purposes of section 157(d).  The legislative history of section 157(d) appears to provide no pertinent guidance.

As a consequence, Defendant has failed to meet its burden that mandatory withdrawal of the reference applies to a dispute implicating 26 U.S.C. §§ 3121(a) and (b) and 7805(b)(8).

18

in its attempt to assert that this matter should simply be resolved under a 2004 revenue ruling (apparently to be applied without regard to the statute or the case law).  (See Def.'s Mem. at 14.)

Whether compensation constitutes wages for FICA purposes has been litigated with considerable frequency, and courts in dozens of cases have rejected the government's assertions that all payments by employers to employees are subject to payroll taxes.  In Central Illinois Public Service Co. v. United States, 435 U.S. 21 (1978), a case not cited in Defendant's Memorandum, the Supreme Court held that employee lunch allowances were not wages subject to payroll taxes and categorically rejected the government's persistent contention that all reimbursements in an employer-employee relationship are subject to withholding.

Other cases both before and after Central Illinois have similarly held that where payments are made by an employer to an employee for something other than services, those payments are simply not subject to employment taxes (including, specifically, FICA taxes).  For example, Central Illinois cited as authority both Humble Oil Refining Co. v. United States, 442 F.2d 1362 (Ct. Cl. 1971), and Humble Pipe Line Co. v. United States, 442 F.2d 1353 (Ct. Cl. 1971).  In the Humble cases, the Federal Court of Claims held that, where the employer required an employee to change job locations, the employer's reimbursement of the employee's moving expenses did not constitute wages.  The Humble Oil court acknowledged that the moving expense reimbursements were income to the employee but held the reimbursements were not wages because they were not meant by the employer to be paid "for services performed."  See also Allstate Ins. Co. v. United States, 530 F.2d 378 (Ct. Cl. 1976) (also concluding that moving expenses were not wages); Rowan Cos. v. United States, 452 U.S. 247 (1981) (meals and lodging provided to offshore oil rig workers were not wages for FICA and Federal Unemployment Tax Act purposes); Stubbs, Overbeck & Assocs. v. United States, 445 F.2d 1142

19

(5th Cir. 1971) (per diem living allowances paid to employees sent to remote temporary work locations were not wages); Royster Co. v. United States, 479 F.2d 387 (4th Cir. 1973) (meal reimbursements paid on day trips were not wages because not paid as remuneration for services, i.e., paid for employer's own business purposes and regardless of performance of employee); People's Life Ins. Co. v. United States, 373 F.2d 924 (Ct. Cl. 1967) (amounts paid to send employees to convention were not wages, but legitimate expenses of employer). This principle of Central Illinois has also been followed in North Dakota State University v. United States, 255 F.3d 599, 603 (8th Cir. 2001), addressing the wage characterization of payments made to tenured faculty in exchange for relinquishment of their tenure rights.

Even the revenue rulings directly at issue here have been the subject of several court decisions. In November 2004, the IRS released Revenue Ruling 2004-109 (concerning FICA taxation of payments to sign employment contracts) simultaneously with another revenue ruling (Rev. Rul. 2004-110, 2004-2 C.B. 960, addressing the FICA taxation of payments for breach of employment contracts). The government formally acknowledged the correlation between these two revenue rulings at the time of their release. See News Release, Dep't Of Treasury, Treasury And IRS Clarify Employment Tax Treatment Of Payments Made On The Signing Or Cancellation Of An Employment Contract (Nov. 23, 2004), available at Treas. JS-2114, 2004 WL 2669356 (Dep't Treas.). Indeed, Defendant acknowledges that Revenue Ruling. 2004-110 is "consistent with the IRS's view that 'wages' for FICA purposes encompasses any [payments by an employer to an employee]." (See Def.'s Mem. at 18.)

In straining to characterize as a case of "first impression" any matter dealing with the FICA taxation of signing bonuses, Defendant neglects to make it sufficiently clear in its Memorandum that Revenue Ruling 2004-110 (which was paired upon its issuance with Revenue

Ruling 2004-109) has already been the subject of several court decisions.  See, e.g., Appoloni v. United States, 450 F.3d 185 (6th Cir. 2006); Univ. of Pittsburgh v. United States, 507 F.3d 165 (3d Cir. 2007).  If a ruling closely related to the issues addressed in Revenue Ruling 2004-109 has already been addressed by several courts, Plaintiffs' refund claim can hardly be said to be a matter of first impression.

>        2.        The Standard Applicable To Retroactive Revenue Rulings Is Settled Law

>        Defendant makes much of the jurisprudence concerning the deference due to revenue rulings in the abstract.  (See Def.'s Mem. at 21-25.)  More to the point, however, Defendant devotes comparatively little attention to the standard that courts apply when examining whether a revenue ruling should be applied retroactively during pending litigation, a standard that is routinely applied and hardly controversial.

>        Internal Revenue Code section 7805(b)(8) provides that "[t]he Secretary may prescribe the extent, if any, to which any ruling . . . relating to the internal revenue laws shall be applied without retroactive effect."  26 U.S.C. § 7805(b)(8).  That authority, however, is reviewable for abuse of discretion.  See, e.g., Gehl Co. v. Comm'r, 795 F.2d 1324, 1332 (7th Cir. 1986); Becker v. Comm'r, 85 T.C. 291, 294 (1985); Prabel v. Comm'r, 91 T.C. 1101, 1112 (1988), aff'd, 882 F.2d 820 (3d Cir. 1989); Burleson v. Comm'r, 68 T.C.M. (CCH) 288, T.C. Mem. 1994-364, 1994 WL 395021 (1994).  As a matter of official policy, the revocation or modification of prior rulings are not applied retroactively to the extent that the new rulings have adverse tax consequences for taxpayers.  Rev. Proc. 89-14, 1989-1 C.B. 814 at §§ 7.01(4)-(5).  Abuse of the IRS's discretion to issue retroactive rulings may also be found where the retroactive withdrawal or modification of a prior revenue ruling creates a distinction between taxpayers that has no rational basis.  See, e.g., Fogarty v. United States, 780 F.2d 1005 (Fed. Cir. 1986); Baker v. United States, 748 F.2d 1465 (11th Cir. 1984), acq., 1995-2 C.B. 1; Prabel, 91 T.C. at 1112.

21

More importantly, "[a] revenue ruling issued at a time when the IRS is preparing to litigate is often self-serving and not generally entitled to deference by the courts." AMP, Inc. v. United States, 185 F.3d 1333, 1338-39 (Fed. Cir. 1999); see also Fribourg Navigation Co. v. Comm'r, 383 U.S. 272 (1966) (rejecting revenue ruling issued on eve of trial); Gen. Dynamics Corp. v. Comm'r, 108 T.C. 107, 120 (1997) ("revenue rulings are generally not afforded any more weight than . . . a position on brief . . . especially [when] not publish[ed] . . . prior to this controversy"); Tandy Corp. v. Comm'r, 92 T.C. 1165, 1170 (1989) ("We were well aware of respondent's position on this issue before the issuance of [the ruling at issue]; we think that the ruling is a thinly veiled attempt to influence this litigation, judging from the similarity of the facts and the timing of its issuance. This and other courts have routinely looked upon such bootstrapping revenue rulings with disfavor.") (citing Ludwig v. Comm'r, 68 T.C. 979, 986 n.4 (1977)).[8]

The 2004 revenue ruling at issue in this adversary proceeding was issued some eighteen months after the filing of the 1999 Refund Claims and after the IRS became aware of the refund claims filed by numerous other taxpayers in reliance on Revenue Ruling 58-145. A court examining whether the 2004 revenue ruling should govern retroactively will apply the abuse of discretion standard described above. This standard is routinely applied in many areas of the law, and the Bankruptcy Court is certainly no stranger to it.

---

[8]  In contrast, courts have given particular deference to long-standing revenue rulings and administrative guidance issued contemporaneously with the adoption of a statute or regulation. The Supreme Court has observed as a well-settled principle that "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." Cleveland Indians Baseball Co. v. United States, 532 U.S. 200, 219-20 (2001) (quoting Cottage Savs. Assn. v. Comm'r, 499 U.S. 554, 561 (1991)). Thus, the deference accorded to Revenue Ruling 58-145 would be greater than that accorded Revenue Ruling 2004-109 and would support not permitting the government to retroactively revoke the prior ruling. Here again, the proper amount of deference is certainly not a matter of "first impression" that could only be decided by a district court.

3.    The Adversary Proceeding Requires Only Straightforward Application Of
Non-Bankruptcy Law

The legal questions in the adversary proceeding bear little resemblance to the
skein of issues arising under non-bankruptcy law suggested in Defendant's Memorandum.  The
dispute here concerns whether or not certain identified payments are wages and whether the IRS
abused its discretion in applying a new revenue ruling retroactively.  Therefore, the adjudication
of the dispute will require the straightforward application of 26 U.S.C. §§ 3121(a) and (b) and
7805(b)(8) which does not require mandatory withdrawal of the reference under 28 U.S.C.
§ 157(d).

Bankruptcy courts routinely apply federal tax law in contested matters and
adversary proceedings that call for far more substantial and material interpretation of the Internal
Revenue Code than this adversary proceeding would require.  For example, numerous
bankruptcy courts have adjudicated disputes over whether debtors should be considered
responsible parties for FICA purposes under 26 U.S.C. § 6672.  See, e.g., Shepard v. United
States (In re Shepard), 253 B.R. 397 (Bankr. D.S.C. 2000); Klippel v. IRS (In re Klippel), No.
98-23315, 1999 Bankr. LEXIS 1598 (Bankr. D.N.J. Nov. 18, 1999); Erickson v. Comm'r (In re
Erickson), 172 B.R. 900 (Bankr. D. Minn. 1994); Associated Bicycle Serv., Inc. v. United States
(In re Associated Bicycle Serv., Inc.), 128 B.R. 436 (Bankr. N.D. Ind. 1990); Grant v. United
States (In re Grant), No. 89-02131, 1990 Bankr. LEXIS 1993 (Bankr. W.D. Pa. 1990 Sept. 11,
1990); In re Turchon, 62 B.R. 461 (Bankr. S.D.N.Y. 1986).  In addition, many bankruptcy courts
have adjudicated disputes arising in other areas of federal tax law as well.  See, e.g., WorldCom,
371 B.R. at 26 (determining federal telecommunications excise taxes); Oakridge Consulting, Inc.
v. United States (In re Consolidated FGH Liquidating Trust), 325 B.R. 564 (Bankr. S.D. Miss.
2005) (construing Internal Revenue Code consolidation provisions); Kiesner v. IRS (In re

23

Kiesner), 194 B.R. 452 (Bankr. E.D. Wis. 1996) (construing Internal Revenue Code partnership

tax provisions); Kreidle v. IRS (In re Kreidle), 146 B.R. 464 (Bankr. D. Colo. 1991) (construing

Internal Revenue Code net operating loss provisions).

           Defendant has offered no explanation for why this adversary proceeding should

require "substantial and material interpretation" of non-bankruptcy law when bankruptcy courts

regularly issue final rulings in disputes that give rise to issues of equal or greater complexity

under the Internal Revenue Code.  Because of the broad jurisdictional grant inherent in

Bankruptcy Code section 505, bankruptcy courts hear and adjudicate, as a routine matter, a wide

variety of disputes that implicate the federal tax laws.  Were Defendant's interpretation of

28 U.S.C. § 157(d) taken to its logical extreme, bankruptcy courts would never have occasion to

rule on federal tax disputes, notwithstanding Bankruptcy Code section 505.  Such a conclusion

certainly would be at odds with Marathon and the legislative intent behind 28 U.S.C. § 157(d).

           In light of the foregoing, Defendant has not, and cannot, carry its burden.

Because of the nature of the dispute, this adversary proceeding calls for only a straightforward

application of settled law.[9]  As a consequence, mandatory withdrawal of the reference under

28 U.S.C. § 157(d) is not applicable here.

---

[9]    Defendant incorrectly asserts that "counsel for Delphi recognized years ago that the 1958 ruling [Revenue Ruling 58-145] was shaky precedent in the CBA ratification payment context, especially with respect to FICA taxes."  (Def.'s Mem. at 28 (citing Mary B. Hevener & Anne G. Batter, When Are Payments From An Employer To An Employee Not "Wages" Subject To Employment Taxes, 95 J. Tax'n 349 (2001).)  Although the cited article discusses uncertainty in various other contexts, nowhere does the article suggest that Revenue Ruling 58-145 was wrongly decided or inapplicable to collective bargaining agreements.  To the contrary, the 2001 article explains that the IRS continued to adhere to Revenue Rule 58-145 in subsequent rulings and concludes that "consistent with Rev. Rul. 58-145, bonuses paid on ratification of a collective bargaining agreement should not be treated as wages.  Further, in all events, a signing bonus should not be treated as wages as long as the bonus is not conditioned on the performance of services."  Id. at 355-56.

CONCLUSION

The Court should deny Defendant's motion to withdraw the reference.

Dated: New York, New York
       June 9, 2008

BAKER & MCKENZIE LLP

Mary B. Hevener
815 Connecticut Avenue, N.W.
Washington, D.C. 20006-4078
(202) 452-7080

- and -

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:    /s/ Albert L. Hogan, III
       John Wm. Butler, Jr. (JB 4711)
       Albert L. Hogan, III (AH 8807))
       Ron E. Meisler (RM 3026)
       333 West Wacker Drive, Suite 2100
       Chicago, Illinois 60606
       (312) 407-0700

       - and -

Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, Delphi
Automotive Systems, LLC, and Delphi
Automotive Systems Services, LLC,
   Respondents

25